## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OLDAPCO, INC., et al., | Case No. 17-12082 (KJC) |
| Debtors. | (Jointly Administered) |
| ALAN D. HALPERIN AND EUGENE I. DAVIS, AS CO-TRUSTEES OF THE APPVION LIQUIDATING TRUST, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 18-50955 (KJC) |
| MARK R. RICHARDS, THOMAS J. FERREE, TAMI L. VAN STRATEN, JEFFREY J. FLETCHER, KERRY S. ARENT, STEPHEN P. CARTER, TERRY M. MURPHY, ANDREW F. REARDON, KATHI P. SEIFERT, MARK A. SUWYN, CARL J. LAURINO, DAVID A. ROBERTS, KEVIN GILLIGAN, ARGENT TRUST COMPANY, STOUT RISIUS ROSS, INC., STOUT RISIUS ROSS, LLC, JOHN/JANE DOES 1-40, | |
| Defendants. | |

## BRIEF IN SUPPORT OF THE FORMER DIRECTORS AND OFFICERS' MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE TRANSFER VENUE

Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino, Esq. (DE Bar No. 6027)
SAUL EWING ARNSTEIN & LEHR LLP
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6806
Facsimile: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

Craig C. Martin
David Jimenez-Ekman
Melissa M. Root
Michael T. Graham
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2776
Facsimile: (312) 527-0484
cmartin@jenner.com
djimenez-ekman@jenner.com
mroot@jenner.com
mgraham@jenner.com

*Counsel for Former Directors and Officers*

Dated: January 29, 2019

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND ............................................................................................2

    A.    Summary Of The Allegations Against The Former Directors And Officers........2

    B.    The First-Filed Wisconsin Action Over The Same Subject Matter.....................3

    C.    The Pre-Adversary Transfer Of The Debtors' Claims To The Trustees In The
        Confirmed Plan ..................................................................................................4

ARGUMENT ........................................................................................................................5

    A.    The Court Should Dismiss The State Law Counts (I Through VIII) For Lack Of
        Subject Matter Jurisdiction ................................................................................5

    B.    The Court Should Dismiss The State Law Counts (I Through VIII) Because
        They Are Preempted By ERISA And Thus Fail To State A Claim.....................9

    C.    Alternatively, The Court Should Transfer The State Law Counts (I Through
        VIII) To The Eastern District Of Wisconsin.....................................................11

    D.    The Court Should Dismiss The Preference Claim (Count IX) Because It Is
        Not Pled With The Requisite Particularity ........................................................15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)...........................................................................................10

*In re AmCad Holdings, LLC*,
No. 14-12168 (MFW), 2016 WL 3412289 (Bankr. D. Del. June 14, 2016) ..........................15

*Breland v. Liberty Life Assur. Co. of Boston*,
Case No. 14-cv-352, 2014 WL 5795681 (W.D. Pa. Nov. 6, 2014)....................................10, 11

*Buck v. Hampton Twp. School Dist.*,
452 F.3d 256 (3d Cir. 2006)...........................................................................................3

*Chavez v. Dole Food Co.*,
836 F.3d 205 (3d Cir. 2016).................................................................................... 12-13

*Durango-Georgia Paper Co. v. H.G. Estate, LLC*,
739 F.3d 1263 (11th Cir. 2014) ...................................................................................11

*Geruchat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*,
505 F.3d 237 (3d Cir. 2007)........................................................................................7, 9

*Glunk v. Noone*,
689 F. App'x 137 (3d Cir. 2017) ................................................................................13

*Grimes v. Graue (In re Haws)*,
158 B.R. 965 (Bankr. S.D. Tex. 1993) ...................................................................8

*Halper v. Halper*,
164 F.3d 830 (3d Cir. 1999)...........................................................................................6

*Harris v. Wooden*,
808 F. Supp. 2d 736 (D. Del. 2011)...........................................................................5

*I.R.S. v. CM Holdings, Inc.*,
No. CIV. A. 97-695 MMS, 1999 WL 459754 (D. Del. June 10, 1999) ................................12

*International Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union*
*No. 42 v. S. Jersey Insulation Servs., Inc.*,
No. 05-3143 RMB, 2007 WL 276137 (D.N.J. Jan. 26, 2007)................................................11

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)..........................................................................................12

33501730.1 01/29/2019

*Menkes v. Prudential Ins. Co. of Am.*,
   762 F.3d 285 (3d Cir. 2014)......................................................................................10, 11

*MoneyCat Ltd v. PayPal Inc.*,
   No. CV 1:13-1358, 2014 WL 2042699 (D. Del. May 15, 2014)............................................13

*In re New Century TRS Holdings, Inc.*,
   505 B.R. 431 (Bankr. D. Del. 2014) .........................................................................................6

*Pacor Inc. v. Higgins*,
   743 F.2d 984 (3d Cir. 1984).................................................................................................. 6-7

*Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*,
   No. CIV. A. 96-40-MMS, 1996 WL 328596 (D. Del. June 7, 1996) ......................................14

*In re Qualteq, Inc.*,
   No. 11-12572 KJC, 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012)...................................12

*Resort Holding, Inc. v. Price Waterhouse & Co., LLP (In re Resorts International)*,
   372 F.3d 154 (3d Cir. 2004)........................................................................................ *passim*

*Ross v. Institutional Longevity Assets LLC*,
   No. CV 12-102-LPS-CJB, 2013 WL 5299171 (D. Del. Sept. 20, 2013)................................13

*In re Semcrude, L.P.*,
   442 B.R. 258 (Bankr. D. Del. 2010) .......................................................................................13

*Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Technologies, Inc.)*,
   330 B.R. 512 (Bankr. D. Del. 2005) .............................................................................. 1-2, 5, 8

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)................................................................................................................ 9-10

*In re Solyndra, LLC*,
   Adv. Proc. No. 15-50268 (MFW), 2015 WL 6125246
   (Bankr. D. Del. Oct. 16, 2015)..................................................................................................6

*Southmark Prime Plus, L.P. v. Falzone*,
   776 F. Supp. 888 (D. Del. 1991)..............................................................................................3

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998)....................................................................................................................5

*Trosio v. Erickson (In re IMMC Corp.)*,
   No. 08-11178 KJC, 2011 WL 6832900 (Bankr. D. Del. Dec. 29, 2011) ..........................5, 8, 9

*Universal Secure Registry, LLC v. Apple Inc.*,
  No. CV 17-585-CFC-SRF, 2018 WL 4502062 (D. Del. Sept. 19, 2018)................................14

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*,
  288 B.R. 189 (Bankr. D. Del. 2003) ...................................................................................2, 15

*Washington Mutual, Inc. v. XL Specialty Ins. Co. (In re Washington Mutual, Inc.)*,
  2012 WL 4755209 (Bankr. D. Del. Oct. 4, 2012) ....................................................................6

*Zazzali v. Swenson*,
  852 F. Supp. 2d 438 (D. Del. 2012)................................................................................12, 14

## Statutes

6 Del. C. § 1301 *et seq.*...............................................................................................................15

11 U.S.C. § 544 ...........................................................................................................................15

11 U.S.C. § 547 ...........................................................................................................................15

11 U.S.C. § 550 ...........................................................................................................................15

28 U.S.C. § 157.....................................................................................................................1, 5, 6

28 U.S.C. § 1334...................................................................................................................1, 5, 9

28 U.S.C. § 1404...............................................................................................................2, 11, 12

28 U.S.C. § 1412.........................................................................................................................12

29 U.S.C. § 1132.........................................................................................................................11

29 U.S.C. § 1144.....................................................................................................................2, 9

Wisconsin Statutes, Ch. 242, *et seq.* ..........................................................................................15

## Other Authorities

Fed. R. Civ. P. 12..................................................................................................................5, 9, 10

33501730.1 01/29/2019

# INTRODUCTION

The Court should dismiss the Adversary Complaint against Appvion Inc.'s former directors and officers (the "D&Os") because the Court has no post-confirmation subject matter jurisdiction over its state law claims and those claims are preempted by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Alternately, the Court should transfer the action to the Eastern District of Wisconsin—a vastly more appropriate and convenient forum where a similar first-filed complaint is pending.

As the Court may recall, the Debtors were owned by the Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan (the "ESOP").  In this Adversary Complaint, the Liquidating Trust Trustees (the "Trustees") assert eight ESOP-related state law claims (Counts I to VIII) against the D&Os.  The Trustees allege that the D&Os breached state law fiduciary duties and violated state dividend laws by purportedly artificially inflating the ESOP's appraised stock price for their own benefit, and by mishandling intercompany loans and relationships.  The Trustees allege this ESOP-related conduct caused injuries for which they seek money damages. The Court should not hear these claims for three discrete reasons.

*First*, the Court has no subject matter jurisdiction over the Trustees' state law claims. These post-confirmation state law tort claims brought by a litigation trust plainly are not "core proceedings" that arise under or in a chapter 11 case pursuant to 28 U.S.C. §§ 1334(b) or 157. They also are not covered by 28 U.S.C. § 1334(b)'s "related to" jurisdictional grant because there is no "close nexus" to the chapter 11.  That nexus is lacking because the resolution of the Trustees' claims does not turn on or affect the Liquidation Plan's "interpretation, implementation, consummation, execution, or administration."  *Resort Holding, Inc. v. Price Waterhouse & Co., LLP (In re Resorts International)*, 372 F.3d 154, 167 (3d Cir. 2004);

*Shandler v. DLJ Merchant Banking, Inc. (In re Insilco Technologies, Inc.)*, 330 B.R. 512, 525 (Bankr. D. Del. 2005).

**Second**, the Trustees' Counts I-VIII should be dismissed because ERISA preempts them. ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA preempts all of the Trustees' state law claims because they each relate to or have a substantial connection with the ESOP's alleged mismanagement. Moreover, the Trustees failed to allege any ERISA claims because they cannot—they lack statutory standing to bring an ERISA claim.

**Third**, alternatively, the Trustees' state law claims should be transferred under 28 U.S.C. § 1404 and the Third Circuit's "first-filed" rule to the United States District Court for the Eastern District of Wisconsin, where an earlier-filed case by the ESOP's current named fiduciary (the "Wisconsin action") is pending. The Wisconsin action is against many of the same defendants, makes many nearly identical factual allegations, and asserts similar state law claims. If the Trustees' state law claims are not dismissed, the Court should exercise its discretion to send them to be heard with the first-filed case in Wisconsin.

**Finally**, the Trustees' preference claim (Count IX) against defendant Ferree should be dismissed because it lacks the required particularity; the Trustees fail to plead the amount, timing, and source of the purported preferential transfer. *See Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003).

## RELEVANT BACKGROUND

**A.    Summary Of The Allegations Against The Former Directors And Officers.**

The Trustees' Adversary Complaint alleges claims against sixteen named defendants, including the D&Os, as well as Argent Trust Company, as ESOP Trustee, and Stout Risius Ross, an ESOP service provider. All of the D&Os were either directors or officers (or employees who

reported to officers) of the Debtors (Appvion, Inc. and Paperweight Development Corporation ("PDC")) during the past decade.  (Comp. ¶¶ 23-38.)

The Trustees allege the D&Os breached their fiduciary duties by misrepresenting Appvion's stock value in order to enrich themselves as the Company collapsed thereby injuring the ESOP and its shareholders.  (*Id.* ¶¶ 1-10.)  The Trustees allege the D&Os overvalued Appvion's stock for purposes of ESOP transactions because doing so increased their incentive-based compensation and permitted them to cash out their personal stock holdings at inflated prices.  (*Id.* ¶¶ 3, 6-8.)  The Trustees further allege the D&Os breached their fiduciary duties by mismanaging the relationship between PDC and Appvion, and improperly forgiving intercompany debt.  (*Id.* ¶¶ 17-18.)  The Trustees plead eight state law causes of action for fiduciary breach (Counts I-VI) and illegal dividends (Counts VII-VIII).  They also plead one avoidable preference claim (Count IX).  The Trustees, acting as the Debtors' assignees, filed their Adversary Complaint on November 30, 2018.

**B.    The First-Filed Wisconsin Action Over The Same Subject Matter.**

Four days before this Adversary Complaint was filed, on November 26, 2018, the ESOP's named fiduciary filed a complaint in Wisconsin.  *Appvion Inc. Ret. Sav. and Emp. Stock Ownership Plan v. Buth et al.*, No. 1:18-cv-01861-WCG (E.D. Wis. filed Nov. 26, 2018).[1]  The ESOP's now-amended complaint (the "Wisconsin FAC," Ex. A.) names as defendants (among others) twelve of the sixteen defendants named in the Adversary Complaint here, and makes many of the same allegations the Trustees make in this Adversary Complaint.  (*Compare*

---

[1]    This Court may take judicial notice of the Liquidation Plan's and the Liquidation Trust Agreement's provisions, as well as the ESOP's Wisconsin FAC filed in the Eastern District of Wisconsin, attached as **Exhibit A**.  *See Buck v. Hampton Twp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991).

- 3 -

Wisconsin FAC, at 1-2 with Compl., at 1.)   Among other things, like the Trustees here, the

ESOP alleges in the Wisconsin complaint that:

- Appvion's stock value was improperly inflated from the ESOP's adoption in 2001 through Appvion's bankruptcy filing in 2017.  (*Compare* Wisconsin FAC ¶¶ 1, 4, 31, 38-39, 41 with Comp. ¶¶ 3-7.)

- Appvion's stock valuations repeatedly failed to take into account certain executive compensation and other corporate debt.  (*Compare* Wisconsin FAC ¶¶ 27, 44 with Comp. ¶¶ 14-19.)

- Appvion's valuations were not independent, despite the ESOP Trustee's and management's representations that they were.  (*Compare* Wisconsin FAC ¶¶ 6-12 with Comp. ¶¶ 7, 134, 147, 239.)

- Appvion's executive compensation structure drove the ESOP's Trustee to mis-value Appvion's stock.  (*Compare* Wisconsin FAC ¶¶ 34-36, 42, 54 with Comp. ¶¶ 128-34.)

- There were improprieties in intercompany loans between Appvion and PDC, which wholly owned Appvion, Inc. as a subsidiary.  (*Compare* Wisconsin FAC ¶¶ 168, 335-37 with Comp. ¶¶ 18, 96, 113-17.)

In the Wisconsin action, as here, the ESOP asserts state law fiduciary breach causes of action; it

also adds ERISA claims based on the same facts.  (*Compare* Wisconsin FAC ¶¶ 516-636, 754-792, 809-814 with Comp. ¶¶ 319-347.)

**C.     The Pre-Adversary Transfer Of The Debtors' Claims To The Trustees In The Confirmed Plan.**

On August 14, 2018, this Court entered an order confirming the Debtors' Liquidation

Plan (the "Liquidation Plan" or "Plan").  (Dkt. 970-1.)  The Plan's effective date is August 25,

2018.  (Dkt. 999.)   The Liquidation Plan transferred the claims asserted in the Adversary

Complaint—as "Litigation Claims and Litigation Proceeds"—from the Debtors to a post-

confirmation Liquidation Trust.  (Attached as **Exhibit B**, Liquidation Plan, Art. II.A.111; Art.

VIII.D).  After the transfer, on November 30, 2018, the Trustees filed this Adversary Complaint,

not on the Debtors' behalf, but on the Litigation Trust's behalf.

## ARGUMENT

**A.    The Court Should Dismiss The State Law Counts (I Through VIII) For Lack Of Subject Matter Jurisdiction.**

The Court should dismiss Counts I through VIII because it has no subject matter jurisdiction over the Trustees' state law claims asserted after the Plan's confirmation—they do not "arise under or in" the bankruptcy nor do they "relate to" the bankruptcy. *In re Resorts Int'l, Inc.*, 372 F.3d 154, 163, 169 (3d Cir. 2004); *Trosio v. Erickson (In re IMMC Corp.)*, No. 08-11178 KJC, 2011 WL 6832900, at *4 (Bankr. D. Del. Dec. 29, 2011) *aff'd* 909 F.3d 489 (3d Cir. 2018); *In re Insilco Techs., Inc.*, 330 B.R. 512, 525-26 (Bankr. D. Del. 2005), *aff'd,* 394 B.R. 747 (D. Del. 2008).   Under Rules 12(b)(1) and (h)(3) of the Federal Rules of Civil Procedure, and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, the Court must dismiss claims over which it lacks subject matter jurisdiction unless the proponent proves jurisdiction exists. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998); *Harris v. Wooden*, 808 F. Supp. 2d 736, 739 (D. Del. 2011).   As this Court well knows, by statute (28 U.S.C. §§ 1334 and 157), bankruptcy courts' jurisdiction is strictly limited to "four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *Resorts Int'l*, 372 F.3d at 162 (citation and internal quotations omitted).   As this Court recognized in *Insilco*, 330 B.R. at 525-26, and *Trosio*, 2011 WL 6832900, at *4, standard state law monetary relief claims asserted by litigation trustees after a plan has been confirmed do not fall into any of these categories, and cannot be prosecuted in bankruptcy court.

The Court therefore lacks jurisdiction over the Trustees' claims here for two reasons. ***First***, Counts I through VIII do not fall into any of the first three "core proceeding" jurisdictional

categories because they do not invoke a substantive right under title 11, and they can arise outside of the bankruptcy context. In *Halper v. Halper*, the Third Circuit explained that:

> To determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult [28 U.S.C.] § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." Second, the court must apply this court's test for a "core" proceeding. Under that test, a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.

164 F.3d 830, 836 (3d Cir. 1999) (citations and internal quotations omitted).

Counts I through VIII, which assert garden variety state law breaches of fiduciary duty and illegal dividends, flunk this test. These causes of action are not included in the claims enumerated as "core" in the illustrative list set forth in § 157(b)(2)(A)-(O). They also are not created by or based on a Bankruptcy Code provision, and therefore do not "invoke[] a substantive right provided by title 11." *Halper*, 164 F. 3d at 836; *see also In re Solyndra, LLC*, Adv. Proc. No. 15-50268 (MFW), 2015 WL 6125246 at * 4 (Bankr. D. Del. Oct. 16, 2015); *In re New Century TRS Holdings, Inc.*, 505 B.R. 431, 440-41 (Bankr. D. Del. 2014). Nor do the Trustees' claims exist only in title 11's context. Instead, they are "ordinary state law causes of action" that are routinely brought in litigation "with no connection to the Bankruptcy Code or a bankruptcy case." *Washington Mutual, Inc. v. XL Specialty Ins. Co. (In re Washington Mutual, Inc.)*, 2012 WL 4755209 at *2 (Bankr. D. Del. Oct. 4, 2012); *see also New Century TRS Holdings*, 505 B.R. at 441 (no "arising under" jurisdiction over claims that "[were] not claims that arise only in the context of a bankruptcy case").

**Second**, the state law claims pleaded in Counts I through VIII are not "related to" the bankruptcy case because the Plan has already been confirmed, and the relief the Adversary Complaint seeks does not turn on, and will not affect, the confirmed Plan. In *Pacor Inc. v.*

- 6 -

*Higgins*, the Third Circuit set forth the general test for "related to" jurisdiction, explaining that it turns on whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d 984, 994 (3d Cir. 1984), *overruled in part by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 (1995). But once a plan has been confirmed, the court explained in *Resorts Int'l*, "it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." 372 F.3d at 165. Under those circumstances, a post-confirmation dispute can only enjoy "related to" jurisdiction if there is a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement . . . ." *Id.* at 168-69; *see also Geruchat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 265 (3d Cir. 2007). Notably, the fact that success on a post-confirmation claim could increase a litigation trust's overall assets does *not* create otherwise lacking "related to" jurisdiction. *Resorts Int'l*, 372 F.3d at 170 ("if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant.").

There is no "related to" jurisdiction over the Trustees' claims here because those claims have no nexus to the now-confirmed Plan *other than* the potential to increase the amount the Litigation Trust will ultimately distribute. At confirmation, the Plan here transferred to the Liquidating Trust all "claims and Causes of Action related to or arising out of the ESOP" and the "Preserved D&O Claims," the latter of which includes causes of action that could be asserted against certain of the Debtors' former directors and officers. (Ex. B, Liquidation Plan, Art. II.A.114.) The Trustees now assert these claims on the Liquidating Trust's behalf—not the

Debtors'—and they have no potential to affect the Plan other than to increase the Liquidation Trust's overall distribution.  As this Court has held following *Resorts International*, 372 F.3d at 170, these kinds of claims brought post-confirmation by a liquidating trustee against the debtors' former directors lack the "close nexus" to the Plan required to confer "related to" jurisdiction. *Trosio*, 2011 WL 6832900 at *4; *accord Insilco,* 330 B.R. at 524.

In *Insilco*, after the plan's confirmation, the liquidating trustee sued the debtor's board of directors for fiduciary breach claims that had been assigned to the trust. 330 B.R. at 517.  This Court held that there was no "related to" jurisdiction over the trustee's claims because "their resolution [did] not require interpretation of the Plan and [would] not affect the bankruptcy estate or the Debtor." *Id.* at 524.  The Court acknowledged that "the outcome of this adversary proceeding could result in additional assets to distribute to creditors" but held that fact could not confer "related to" jurisdiction even though the plan specifically authorized the trust's creation and the trust's pursuit of causes of action.  *Id.*  Affirming on appeal, the district court explained that "the [bankruptcy] court correctly noted that jurisdiction cannot be created simply by preservation of a claim in a plan." *In re Insilco Techs., Inc.*, 394 B.R. 747, 750 (D. Del. 2008). Likewise, in *Trosio*, this Court held that it did not have "related to" jurisdiction over the liquidating trustee's claims against the former debtor's directors and officers because it "d[id] not perceive any 'unique bankruptcy-related issues.'"  2011 WL 6832900 at *4; *accord Resorts Int'l*, 372 F.3d at 168 (citing with approval *Falise v. Am. Tobacco Co.*, 241 B.R. 48 (E.D.N.Y. 1999), where the court found no "related to" jurisdiction in asbestos producer's bankruptcy over suit by litigation trust against tobacco companies for contribution to asbestos-related illnesses because "the resolution of the dispute would have had no impact on any integral aspect of the bankruptcy plan or proceeding"); *Grimes v. Graue (In re Haws)*, 158 B.R. 965, 971 (Bankr. S.D.

Tex. 1993) (no "related to" jurisdiction over litigation trust's claim for fiduciary duty breach against debtor's partner because the bankruptcy court was not asked to "construe or interpret the confirmed plan or to see that federal bankruptcy laws are complied with").

Here, nothing in the Plan suggests, let alone shows, that its implementation, execution, consummation, or administration is dependent on the Trustees' prosecution of this adversary proceeding. There is no need for the fact finder to even refer to the Plan to determine the D&Os' potential liability for the Trustees' state law claims. As in *Resorts International*, the Trustees' lawsuit here is wholly collateral to the Plan. 372 F.3d at 168-170. While the Trustees point to the Plan's purported reservation of the Court's jurisdiction, as the Third Circuit emphasized in *Resorts International*, "[w]here a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization." *Id.* at 161. Parties cannot "write their own jurisdictional ticket." *Id.*; *see also Seven Fields Development Corp.*, 505 F.3d at 256 (citation omitted) ("courts will give effect to retention-of-jurisdiction provisions that reorganization plans sometimes include only if there is bankruptcy court jurisdiction under 28 U.S.C. §§ 1334 and 157."). The Court should dismiss Counts I through VIII under Rules 12(b)(1) and 12(h)(3).[2]

**B.     The Court Should Dismiss The State Law Counts (I Through VIII) Because They Are Preempted By ERISA And Thus Fail To State A Claim.**

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 US.C. § 1144(a). A law "relates to" an employee benefit plan if it expressly refers to or has a connection to an ERISA-governed plan. *Shaw v.*

---

[2]     Because no subject matter jurisdiction exists under 28 U.S.C. § 1334, the D&Os have not moved the district court to withdraw the reference to this Court to determine the Trustees' non-core claims. *See Trosio*, 909 F.3d at 596. However, the D&Os reserve their right to seek a withdrawal of the reference in the unlikely event that the Court denies the Motion.

33501730.1 01/29/2019

*Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983).  State law claims are preempted if (1) an individual, at some point in time, could have brought his claim under ERISA's expansive civil enforcement mechanism; and (2) where no other independent legal duty is implicated by a defendant's actions.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  For example, claims that "are premised on the existence of the plan and require interpreting the plan's terms" or that "require reference to the plan and what it covers" are preempted.  *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295-96 (3d Cir. 2014).  Courts regularly hold that ERISA preempts state law fiduciary breach claims relating to employee benefit plans.  *See*, *e.g.*, *Menkes*, 762 F.3d at 296; *Breland v. Liberty Life Assur. Co. of Boston*, Case No. 14-cv-352, 2014 WL 5795681, at *2 (W.D. Pa. Nov. 6, 2014).  Rule 12(b)(6) authorizes the Court to dismiss claims on preemption grounds.  *See Menkes*, 762 F.3d at 289-90, 297 (dismissing claims pursuant to 12(b)(6) because they were preempted).

The Trustees' claims against the D&Os are founded on the allegations that Appvion's former directors, officers, and consultants did not administer the ESOP appropriately because they inflated Appvion's stock valuation.  (*See* Compl. ¶¶ 1, 3-5, 321-23, 330, 333, 338, 351-54, 360-62.)  The Trustees specifically allege that the ESOP was the "ultimate owner of the Debtors" at all relevant times.  (*Id.* ¶ 1.)  They allege that the "Debtor's capital structure, with ESOP ownership," required "systemic unconditional financial support" that the Defendants failed to provide or account for in their valuations.  (*Id.* ¶¶ 2-3.)  They allege that the Defendants "artificially and materially inflated the value of the stock held by the ESOP."  (*Id.* ¶ 3.)  They allege that the Defendants' allegedly faulty financial projections "were critical to the determinations by the ESOP trustee's determination [sic] . . . of the fair market value of PDC common equity."  (*Id.* ¶ 7.)  They further allege that payments to the ESOP during the time when

- 10 -

the company's stock was overvalued were essentially "a Ponzi scheme." (*Id.* ¶ 16.) These claims necessarily depend on the ESOP's existence and administration, and therefore relate to and have a substantial connection with an ERISA-governed plan, and must be dismissed with prejudice. *Menkes*, 762 F.3d at 294-96; *Breland*, 2014 WL 5795681, at *2.

The dismissal should be with prejudice because this is not a technical pleading defect that the Trustees can cure by pleading proper ERISA claims. The Trustees do not have standing to pursue ERISA claims because Section 502(a) limits standing to the Secretary of Labor, plan participants, beneficiaries, and fiduciaries; neither the Trustees nor their predecessor—the Debtors—are or were any of those things. 29 U.S.C. §§ 1132(a); *International Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union No. 42 v. S. Jersey Insulation Servs., Inc.*, No. 05-3143 RMB, 2007 WL 276137, at *2 (D.N.J. Jan. 26, 2007). Moreover, a liquidation trustee recovers money only on the debtor estate's behalf, not on behalf of a particular creditor or class of creditors, such as the people who may have been injured as a result of the ESOP's collapse. *See, e.g., Durango-Georgia Paper Co. v. H.G. Estate, LLC*, 739 F.3d 1263, 1272 (11th Cir. 2014). While its claims have other fatal defects, it is the ESOP (by its named fiduciary) in the Wisconsin action that is the proper party to assert claims based on any alleged injury to the ESOP and its beneficiaries.

## C.     Alternatively, The Court Should Transfer The State Law Counts (I Through VIII) To The Eastern District Of Wisconsin.

Even if the Court finds that it has subject matter jurisdiction over non-preempted claims, the Court should send this action to the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. § 1404 and the Third Circuit's "first filed" rule. This forum has no connection to the Adversary Complaint other than the Trustees chose it. However, the ESOP is already litigating a largely duplicative first-filed case, against many of the same defendants, in

- 11 -

the Eastern District of Wisconsin.  That is also where many of the defendants reside; where the transactions and occurrences at issue occurred; and where the preponderance of the witnesses and documents can be found.  If not dismissed, the Court should send this action there.

Third Circuit courts have broad discretion to determine whether convenience and fairness necessitate a venue transfer under Section 1404.[3]  *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 447 (D. Del. 2012).  When determining if transfer is appropriate, courts consider both public and private interests.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  The private interests include: (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the witnesses' convenience— but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).  *Id.* (quotations omitted).  Courts also consider public interest factors including: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.* at 879-80 (quotations omitted).  The Third Circuit also observes the "first-filed case" rule:  "when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority."  *Chavez v. Dole*

---

[3]    This court has the authority to transfer this action pursuant to 28 U.S.C. § 1404 or 28 U.S.C. § 1412.  *See In re Qualteq, Inc.*, No. 11-12572 KJC, 2012 WL 527669, at *1 (Bankr. D. Del. Feb. 16, 2012).  While Section 1412 is expressly limited to a "case or proceeding under title 11," courts in the Third Circuit have determined that the "decision to transfer venue under either section . . . turn[s] on the same issues."  *I.R.S. v. CM Holdings, Inc.*, No. CIV. A. 97-695 MMS, 1999 WL 459754, at *2 (D. Del. June 10, 1999).

*Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016); *see also Glunk v. Noone*, 689 F. App'x 137, 139 (3d

Cir. 2017) (court may dismiss or transfer the later-filed proceeding where there is substantial

overlap with the subject matter of the first-filed proceeding); *In re Semcrude, L.P.*, 442 B.R. 258,

271 (Bankr. D. Del. 2010) (applied in bankruptcy court).

      Here, only two factors—the plaintiffs' choice and the potential applicability of Delaware

law—weakly support venue in this Court; the balance overwhelmingly favor transfer to

Wisconsin.  While the Trustees, as plaintiffs, have chosen this forum, the weight given to a

plaintiff's choice is "reduced when the chosen venue is not the plaintiff's home forum."

*MoneyCat Ltd v. PayPal Inc.*, No. CV 1:13-1358, 2014 WL 2042699, at \*4 (D. Del. May 15,

2014).  Here, the Trustees are New York and New Jersey residents, making their selection of

little moment.  (Compl. at ¶¶ 20-21.)  Similarly, while the Trustees seek to invoke Delaware law,

those claims may be adequately handled by a Wisconsin judge already charged with resolving

similar claims.  *See Ross v. Institutional Longevity Assets LLC*, No. CV 12-102-LPS-CJB, 2013

WL 5299171, at \*15 (D. Del. Sept. 20, 2013) (recommending transfer, including Delaware state

law claims), *report and recommendation adopted,* No. CV 12-102-LPS-CJB, 2013 WL 5613998

(D. Del. Oct. 11, 2013).

      All of the other relevant factors also counsel transfer.  Starting with the private interest

factors, the Trustees' claims arise out of Appvion's management and operation, which took place

at its Appleton, Wisconsin headquarters.  The parties' convenience also points to Wisconsin

because a similar first-filed action alleging similar claims is already pending there.  Twelve of

this case's sixteen defendants are named in the Wisconsin complaint, four live in Wisconsin,

three live in states bordering Wisconsin, and two reside closer to Wisconsin than Delaware.

(Attached hereto as **Exhibit C**, Declaration of Michael T. Graham).  While four defendants live

- 13 -

closer to Delaware, they are named in the Wisconsin complaint and will already be required to travel there. The remaining factors weigh in Wisconsin's favor, as witnesses and records are largely located at or near Appvion's Appleton headquarters.

Turning to the public interest factors, for many of the same reasons, the "practical considerations" factor weighs heavily in Wisconsin's favor: the majority of the percipient events, documents, defendants, witnesses and existing related litigation are all closer to Wisconsin than Delaware. The "local interest in deciding local controversies at home and public policies of the fora" factors also favor Wisconsin because Wisconsin has an interest in monitoring and rectifying alleged wrongful conduct by its citizens (or non-citizens) that operated a business there. *See Zazzali*, 852 F. Supp. 2d at 452. The remaining factor, relative levels of court congestion, does not appear to favor one venue or the other, so this factor is neutral. *See Universal Secure Registry, LLC v. Apple Inc.*, No. CV 17-585-CFC-SRF, 2018 WL 4502062, at *5 (D. Del. Sept. 19, 2018).

At bottom, it makes no practical sense, post-confirmation, for a case about a Wisconsin-based company, over Wisconsin-based conduct, implicating primarily Wisconsin-based defendants and evidence to proceed in Delaware bankruptcy court. *Zazzali*, 852 F. Supp. 2d at 452. (transferring action against officers and directors to Idaho when it involved Idaho-based conduct concerning a company located in Idaho); *see also Pursuit Athletic Footwear, Inc. v. Save Power Ltd.*, No. CIV. A. 96-40-MMS, 1996 WL 328596, at *1, *6 (D. Del. June 7, 1996) (transferring adversary proceeding over Texas company to Texas where evidence was located). That is doubly so here, where there is a first-filed action in Wisconsin that implicates much of the same conduct and many of the same defendants that will proceed in parallel there. The Court should transfer this action against the D&Os.

- 14 -

**D.** **The Court Should Dismiss The Preference Claim (Count IX) Because It Is Not Pled With The Requisite Particularity.**

"Alleged preferential transfers must be identified with particularity to ensure that the defendant receives sufficient notice of what transfer is sought to be avoided." *In re AmCad Holdings, LLC*, No. 14-12168 (MFW), 2016 WL 3412289, at *3 (Bankr. D. Del. June 14, 2016). In order to survive a motion to dismiss, a preference count must include the following information: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee, and (iv) the amount of the transfer." *Valley Media, Inc. v. Borders, Inc. (In re Valley Media, Inc.)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003) (dismissing the preference count for failure to state a claim).

Here, Count IX, which seeks to avoid and recover an allegedly preferential transfer to Ferree under 11 U.S.C. §§ 544, 547, 550; 6 Del. C. § 1301 *et seq.*, and Wisconsin Statutes, Ch. 242, *et seq.*, contains none of this information. (*See* Compl. ¶¶ 365-374.) The Trustees seek to avoid "[t]he Ferree 2017 Specified Distributions," but nowhere define that term or provide the dates and amounts of the alleged specified distributions. (*Id.* ¶ 374.) The Complaint also states the Debtors "transferred proper [sic] or an interest in property ($1,080,499) in cash to Ferree" within a year prior to the petition date. (*Id.* ¶ 369). But even there, the Complaint does not identify the dates on which Defendant Ferree allegedly received the putative preferential transfer, or whether the $1,080,499 is the "Ferree Specified Distributions" the Trustees seek to avoid. Consequently, Count IX should be dismissed for failure to state a claim because it is not pleaded with the required particularity.

**CONCLUSION**

For the foregoing reasons, the D&Os respectfully request that the Court dismiss the

Adversary Proceeding with prejudice, or in the alternative, transfer the Adversary Proceeding to

the Eastern District of Wisconsin where a first-filed action is pending.

Dated:  January 29, 2019

*/s/ Mark Minuti*
Mark Minuti (DE Bar No. 2659)
Monique B. DiSabatino, Esq. (DE Bar No. 6027)
**SAUL EWING ARNSTEIN & LEHR LLP**
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6806
Facsimile: (302) 421-5873
mark.minuti@saul.com
monique.disabatino@saul.com

-and-

Craig C. Martin (*Pro Hac Vice* to be filed)
David Jimenez-Ekman (*Pro Hac Vice* to be filed)
Melissa M. Root (*Pro Hac Vice* to be filed)
Michael T. Graham (*Pro Hac Vice* to be filed)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2776
Facsimile: (312) 527-0484
cmartin@jenner.com
djimenez-ekman@jenner.com
mroot@jenner.com
mgraham@jenner.com
*Counsel for Former Directors and Officers*

33501730.1 01/29/2019