## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| OLDAPCO, INC., et al., | Case No. 17-12082 (KJC) |
| Debtors. | (Jointly Administered) |
| ALAN D. HALPERIN AND EUGENE I. DAVIS, AS CO-TRUSTEES OF THE APPVION LIQUIDATING TRUST, Plaintiff, | |
| v. | Adv. Proc. No. 18-50955 (KJC) |
| MARK R. RICHARDS, THOMAS J. FERREE, TAMI L. VAN STRATEN, JEFFREY J. FLETCHER, KERRY S. ARENT, STEPHEN P. CARTER, TERRY M. MURPHY, ANDREW F. REARDON, KATHI P. SEIFERT, MARK A. SUWYN, CARL J. LAURINO, DAVID A. ROBERTS, KEVIN GILLIGAN, ARGENT TRUST COMPANY, STOUT RISIUS ROSS, INC., STOUT RISIUS ROSS, LLC, JOHN/JANE DOES 1-40, Defendants. | **OPENING BRIEF IN SUPPORT OF STOUT RISIUS ROSS, INC. AND STOUT RISIUS ROSS, LLC'S MOTION TO DISMISS** |

Mark L. Desgrosseilliers (Delaware Bar No. 4083)
Chipman Brown Cicero & Cole, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Tel: (302) 295-0191
E-mail: desgross@chipmanbrown.com

Lars C. Golumbic, admitted *pro hac vice*
Groom Law Group, Chartered
1701 Pennsylvania Avenue, NW, Suite 1200
Washington, DC 20006
Tel: (202) 861-6615
E-mail: lgolumbic@groom.com

January 29, 2019

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STANDARD OF REVIEW ................................................................................................. 5

ARGUMENT ...................................................................................................................... 6

  I. ERISA PREEMPTS A CLAIM AGAINST STOUT FOR AIDING AND ABETTING
     BREACH OF FIDUCIARY DUTY UNDER STATE LAW. ........................................ 6

    A.   Plaintiff's Claim is Preempted by ERISA Section 514. ................................... 8

    B.   The Claim Against Stout is Preempted by ERISA Section 502(a). .............. 10

       1.   ERISA Does Not Recognize A Cause of Action Against Stout. ............... 11

       2.   Plaintiff May Not Avoid ERISA By Bringing State Law Claims. ........... 14

  II.   THE CLAIM AGAINST STOUT WAS NOT RESERVED IN THE PLAN OF
      LIQUIDATION. .......................................................................................................... 16

  III.   THE COURT LACKS SUBJECT MATTER JURISDICTION TO DECIDE THE
       CLAIMS AGAINST STOUT. .................................................................................... 18

  IV.   THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW THAT
       STOUT KNOWINGLY PARTICIPATED IN UNLAWFUL CONDUCT. ................. 21

    A.   The Complaint Fails to State a Knowing Participation Claim Under ERISA. ............. 21

       1.   The Complaint Pleads No Facts to Support an Inference that Stout "Knowingly
           Participated" in Unlawful Conduct. ............................................................. 22

       2.   It is Implausible that Stout "Knowingly Participated" in Unlawful Conduct. ........... 25

    B.   The Complaint Fails to Plead a State Law Aiding and Abetting Claim. .............. 28

  V.   THE CLAIM AGAINST STOUT IS PARTIALLY TIME BARRED. ........................ 33

  VI.   The Court Lacks Personal Jurisdiction Over Stout. .................................................. 35

CONCLUSION ................................................................................................................. 38

EXHIBIT LIST

# TABLE OF CASES AND AUTHORITIES

Cases

*Aetna Health Inc. v. Davila,*
  542 U.S. 200 (2004) ........................................................................ 7, 13, 14
*Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson,*
  No. 5:03-cv-1060, 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) ............ 13
*ALA, Inc. v. CCAIR, Inc.,*
  29 F.3d 855 (3d Cir. 1994) ........................................................................ 27
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................... 5, 6, 22, 25, 28
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................... 4, 5, 21
*Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l),*
  372 F.3d 154 (3d Cir. 2004) ................................................................. 5, 18
*Bliss Techs., Inc. v. HMI Indus. (In re Bliss Techs., Inc.),*
  307 B.R. 598 (Bankr. E.D. Mich. 2004) .................................................. 20
*Breeden v. Sphere Drake Ins. P.L.C. (In re Bennett Funding Group, Inc.),*
  258 B.R. 67 (Bankr. N.D.N.Y. 2000) ....................................................... 20
*Browning v. Levy,*
  283 F.3d 761 (6th Cir. 2002) ............................................................. 17, 18
*Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),*
  307 B.R. 404 (Bankr. S.D.N.Y. 2004) ...................................................... 20
*Burtch v. Milberg Factors, Inc.,*
  662 F.3d 212 (3d Cir. 2011) ................................................................... 5, 6
*Byrnes v. DeBolt Transfer, Inc.,*
  741 F.2d 620 (3d Cir. 1984) ...................................................................... 34
*Car Care Center of Crystal Lake Ltd. v. Miller (In re Miller),*
  336 B.R. 408 (Bankr. E.D. Wis. 2005) ..................................................... 36
*Carlson v. Principal Life Ins. Co.,*
  No. 01-cv-0581, 2006 WL 2806543 (E.D.N.Y. Sept. 28, 2006) .............. 13
*Consolidated Beef Industries, Inc. v. New York Life Ins. Co.,*
  949 F.2d 960 (8th Cir. 1991), *cert. denied,* 503 U.S. 985 (1992) .......... 14
*Custer v. Pan American Life Ins. Co.,*
  12 F.3d 410 (4th Cir. 1993) ............................................................... 14, 15
*D&K Prop. Crystal Lake v. Mut. Life Ins. Co. of N.Y.,*
  112 F.3d 257 (7th Cir. 1997) ..................................................................... 16
*Dayton Title Agency, Inc. v. Philadelphia Indemnity Ins. Co. (In re Dayton Title Agency, Inc.),*
  264 B.R. 880 (Bankr. S.D. Ohio 2000) .................................................... 19
*DiLeo v. Ernst & Young,*
  901 F.2d 624 (7th Cir. 1990), *cert. denied,* 498 U.S. 941 (1990) .......... 27
*District of Columbia v. Greater Washington Bd. of Trade,*
  506 U.S. 125 (1992) .................................................................................... 7
*Dubroff v. Wren Holdings, LLC,*
  No. 3940, 2011 WL 5137175 (Del. Ch. Oct. 28, 2011) ........................... 33

*Duphily v. Del. Elec. Coop., Inc.*,
  662 A.2d 821 (Del. 1995) .......................................................................... 31, 32

*End of the Rd. Tr. v. Terex Corp. (In re Fruehauf Trailer Corp.)*,
  250 B.R. 168 (D. Del. 2000).............................................................. 21, 35, 37

*Enzo Life Scis., Inc. v. Adipogen Corp.*,
  82 F. Supp. 3d 568 (D. Del. 2015) ........................................................... 28

*Eslava v. Gulf Telephone Co., Inc.*,
  No. 04-0297, 2007 WL 9717318 (S.D. Ala. June 13, 2007)............................ 24, 25

*Gerosa v. Savasta & Co.*,
  329 F.3d 317 (2d Cir. 2003), *cert. denied,* 540 U.S. 967 (2003)............................ 11

*Gibson v. Prudential Ins. Co. of Am.*,
  915 F.2d 414 (9th Cir. 1990) ........................................................... 14

*Gluck v. Unisys Corp.*,
  960 F.2d 1168 (3d Cir. 1992) ........................................................... 34

*Gobeille v. Liberty Mut. Ins. Co.*,
  136 S. Ct. 936 (2016)........................................................................... 7

*Great-West Life & Annuity Ins. Co. v. Knudson*
  534 U.S. 204 (2002) ......................................................................... 12, 13

*Grove Holding Corp. v. First Wisconsin Nat'l Bank of Sheyboygan*,
  803 F. Supp. 1486 (E.D. Wis. 1992) ............................................................. 27

*Harris Tr. & Sav. Bank, v. Salomon Smith Barney, Inc.*,
  530 U.S. 238(2000) ........................................................ 11, 12, 13, 15

*Hatzel & Buehler, Inc. v. Orange & Rockland Utils.*,
  107 B.R. 34 (D. Del. 1989)................................................................. 19

*In re Broadstripe, LLC*,
  444 B.R. 51 (Bankr. D. Del. 2010)........................................................... 28

*In re Kelley v. South Bay Bank*,
  199 B.R. 698 (9th Cir. B.A.P. 1996) ........................................................... 16

*In re Meridian Auto. Sys. Composites Operations, Inc.*,
  372 B.R. 710 (Bankr. D. Del. 2007)........................................................... 18

*In re ML/EQ Real Estate Partnership Litig.*,
  No. 15741, 1999 WL 1271885 (Del. Ch. Dec. 21, 1999)........................................ 34

*In re Pfizer Inc. ERISA Litig.*,
  No. 04-cv-10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009) ............................ 13

*In re PMTS Liquidating Corp.*,
  452 B.R. 498 (Bankr. D. Del. 2011).......................................................... 28

*In re Santa Fe Pacific Corp. Shareholder Litig.*,
  669 A.2d 59 (Del. 1995) ................................................................... 29

*In re Telecommunications, Inc. Shareholders Litig.*,
  No. A-16470, 2003 WL 21543427 (Del. Ch. July 7, 2003) ........................................ 29

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990) ........................................................................... 8

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945) ...................................................................... 37, 38

*Jepsco, Ltd. v. B.F. Rich Co.*,
  No. 7343, 2013 WL 593664 (Del. Ch. Feb. 14, 2013) ........................................ 33, 35

*JNA-1 Corp. v. Uni-Marts, LLC (In re UniMarts, LLC)*,
   404 B.R. 767 (Bankr. D. Del. 2009) ...................................................... 36
*Johnson v. Radian Grp., Inc.*,
   No. 08-2007, 2009 WL 2137241 (E.D. Pa. July 16, 2009) ..................................... 21
*Klingher v. Salci (In re Tandycrafts, Inc.)*,
   317 B.R. 287 (Bankr. D. Del. 2004) .................................................. 36, 37
*Kloth v. S. Christian Univ.*,
   Nos. 07-3376, 07-4598, 2008 WL 3165902 (3d Cir. Aug. 5, 2008) ........................ 38
*Kool v. Coffey*,
   300 F.3d 340 (3d Cir. 2002) ............................................................ 25
*Lee v. Pincus*,
   No. CV 8458-CB, 2014 WL 6066108 (Del. Ch. Nov. 14, 2014) ......................... 29, 30
*MAS Litig. Trust v. Plastech Engineered Prods. (In re Meridian Auto Sys. Composite*
   *Operations, Inc.)*,
No. 05-11168, 2007 WL 4322527 (Bankr. D. Del. Dec. 5, 2007) ............................ 36
*Max Daetwyler Corp. v. R. Meyer*,
   762 F.2d 290 (3d Cir. 1985), *cert. denied,* 474 U.S. 980 (1985) ................. 35, 36, 37
*Menkes v. Prudential Insurance Company of America*,
   762 F.3d 285 (3d Cir. 2014) ........................................................ 8, 10
*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .......................................................... 11, 12, 13
*Morgan v. Cash*,
   No. 5053, 2010 WL 2803746 (Del. Ch. July 16, 2010) ...................................... 29
*Mortg. Elec. Resigation Sys., Inc.*,
   754 F.3d 772 (9th Cir. 2014) ............................................................. 6
*Nat'l Sec. Sys., Inc. v. Iola*,
   700 F.3d 65 (3d Cir. 2012) ............................................................... 7
*Northern Pipeline Construction Co. v. Marathon Pipeline Co.*,
   458 U.S. 50 (1982) ..................................................................... 19
*Official Comm. Of Unsecured Creditors of Allied Sys. Holding v, Yucaipa Am. Alliance Fund I,*
   *L.P. (In re Allied Sys. Holdin*gs, Inc.),
524 B.R. 598 (Bankr. D. Del. 2015) ...................................................... 20
*Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson (In re Wickes, Inc.)*,
No. 06-C-0869, 2006 WL 1457786 (N.D. Ill. May 23, 2006) ................................ 20
*Old Elec., Inc. v. RCP, Inc. (In re Old Elec. Inc.)*,
   142 B.R. 189 (Bankr. N.D. Ohio 1992) .................................................. 36
*Peltz v. Worldnet Corp. (In re USN Comm'cn., Inc.)*,
   280 B.R. 573 (Bankr. D. Del. 2002) ..................................................... 17
*Pietrangelo v. NUI Corp.*,
   No. 04–3223, 2005 WL 1703200 (D.N.J. July 20, 2005) ................................ 21, 22
*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987) ................................................................... 7, 14
*RBC Capital Markets, LLC v. Jervis*,
   129 A.3d 816 (Del. 2015) ............................................................ 29, 31
*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ............................................................. 11

*Rolo v. City Investing Co.*,
    155 F.3d 644 (3d Cir. 1998) ........................................................................ 25, 26
*Russell v. K-Mart Corp.*,
    761 A.2d 1 (Del. 2000) ........................................................................ 31, 32, 33
*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ............................................................................ 2, 3
*Scroggins v. BP Exploration & Oil (In re Brown Transp. Truckload, Inc.)*,
    161 B.R. 735 (Bankr. N.D. Ga. 1993) ................................................................ 36
*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983) ........................................................................................ 7, 8
*Spear v. Fenkell*,
    No. 13-02391, 2015 WL 3643571 (E.D. Pa. June 12, 2015) ......................... 12, 22
*Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*,
    285 B.R. 822 (S.D.N.Y. 2002) ........................................................................... 20
*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006) ............................................................................. 19
*Sysco Food Servs. of Metro New York, LLC v. Tramontana*,
    No. 06-2864, 2007 WL 4165349 (D.N.J. Nov. 20, 2007) .................................. 21
*Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*,
    425 B.R. 78, (Bankr. S.D.N.Y. 2010) ................................................................ 20
*Tribune Media Servs. Inc. v. Beatty (In re Tribune Co.)*,
    418 B.R. 116 (Bankr. D. Del. 2009) .................................................................. 36
*U.S. Trustee v. Gryphon at Stone Mansion, Inc.*,
    166 F.3d 552 (3d Cir. 1999) ............................................................................. 19
*Vigeant v. Meek*,
    No. 18-cv-577, 2018 WL 5839792 (D. Minn. Nov. 7, 2018)......................... 21, 22
*Wilmington Shipping Co. v. New England Life Ins. Co.*,
    496 F.3d 326 (4th Cir. 2007) ............................................................................ 14
*Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC*,
    No. 8652-VCN, 2014 WL 2964076 (Del. Ch. June 30, 2014) ............................ 28
*Zazzali v. Hirschler Fleischer, P.C.*,
    482 B.R. 495 (Bankr. D. Del. 2012) ............................................................ 29, 30

Statutes

10 Del. C. § 3104(c) ........................................................................................... 38
10 Del. C. § 8106 ............................................................................................... 33
11 U.S.C. § 108(a) ............................................................................................. 35
26 U.S.C. § 401(a)(28)(C) ................................................................................ 1, 9
28 U.S.C. § 157(b)(1) ......................................................................................... 19
28 U.S.C. § 157(b)(2) ......................................................................................... 19
28 U.S.C. § 157(b)(2)(A) .................................................................................... 20
28 U.S.C. §§ 157(b)(2)(A) - (P) .......................................................................... 19
28 U.S.C. § 157(b)(2)(B) .................................................................................... 20
28 U.S.C. § 157(b)(2)(O) .................................................................................... 20
28 U.S.C. §§ 2071-2077 ..................................................................................... 36
28 U.S.C. § 2075................................................................................................. 36

29 U.S.C. § 404 ............................................................................................................ 2
29 U.S.C. § 1002(21)(A) ............................................................................................ 11
29 U.S.C. § 1102 ...................................................................................................... 15
29 U.S.C. § 1113 ...................................................................................................... 33
29 U.S.C. § 1132(a)(3) ............................................................................................. 11
29 U.S.C. § 1144 ........................................................................................................ 7
29 U.S.C. § 1144(a) ................................................................................................... 7

Rules

Fed. R. Bankr. P. Rule 7004 .............................................................................. 35, 37
Fed. R. Bankr. P. Rule 7004(d) ......................................................................... 36, 37
Fed. R. Bankr. P. Rule 7004(e) .............................................................................. 36
Fed. R. Bankr. P. 7004(f) ....................................................................................... 35
Fed. R. Civ. P. 4 ...................................................................................................... 35
Fed. R. Civ. P. 12(b)(2) .......................................................................................... 35
Fed. R. Civ. P. 12(b)(6) ............................................................................................ 5

Other Authorities

Restatement (Second) of Torts § 448 (1965) .......................................................... 32

# INTRODUCTION

Appvion, Inc. ("Appvion" or the "Company") sponsored for its employees the Appvion Retirement Savings and Employee Stock Ownership Plan (the "Plan" or the "ESOP"), a pension benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The Appvion ESOP Administrative Committee (the "ESOP Committee") was a named fiduciary of the Plan, which was intended to operate as a tax-qualified retirement plan investing primarily in the stock of Appvion's parent company, Paperweight Development Corporation ("PDC").  In 2014, the Company retained Argent Trust Company, N.A. ("Argent" or the "Trustee")[1] and delegated to it certain ERISA fiduciary duties with respect to the Plan.  Those duties included ensuring that the value of the Company stock held in the Plan was determined each year by an independent appraiser, as required by the Internal Revenue Code.  *See* 26 U.S.C. § 401(a)(28)(C).  Argent contracted with Stout Risius Ross, Inc. and Stout Risius Ross, LLC[2] (together, "Stout") for this purpose.

Stout is a leading independent advisory firm with one of the largest independent valuation practices in the country.  *See* https://www.stout.com/en/services/valuation-advisory.  It has 21 offices globally and serves clients in more than 80 countries.  *See* https://www.stout.com/en/about.  Stout's specialized ESOP and ERISA advisory services

---

[1]  State Street Global Advisors was named Trustee of the ESOP at the time it was created in 2001.  *See* Complaint ("Compl."), D.I. 1101, ¶¶ 86, 113, 121.  Reliance Trust Company ("Reliance") became the Trustee of the Plan on April 1, 2013.  *See id.* ¶ 81.  In 2014, Argent purchased Reliance's fiduciary services line of business.  *See Argent Financial Acquires Reliance Trust Line of Business*, Atlanta Business Chronicle (July 3, 2014), *available at* https://www.bizjournals.com/atlanta/news/2014/07/03/argent-financial-acquires-reliance-trust-line-of.html.  Argent became Trustee of the ESOP effective May 28, 2014.  *See* Compl. ¶ 79.

[2]  Argent contracted with Stout Risius Ross, Inc. to prepare valuations from 2012 through 2016.  Stout Risius Ross, Inc. reorganized as Stout Risius Ross, LLC in 2017.  Accordingly, for the June 2017 valuation, Argent contracted with Stout Risius Ross, LLC.  *See* Ex. 1, Stout Engagement Agreements; *see also infra* n.3.

practice has provided ESOP services to every major institutional ESOP trustee in the United States.  *See* https://www.stout.com/en/services/esop-erisa.  In 2018, Stout reported $135 million in revenue.  *See* https://www.2018.stout.com/what-we-did.

Here, Argent contracted with Stout for a singular and discrete purpose:  to provide the statutorily-required independent valuation of the PDC stock held by the ESOP.[3]  *See* Ex. 1, Stout Engagement Agreements.[4]  In that role, Stout provided services (and owed contractual duties) only to the Trustee—not to the Plan and not to the Company.  *See, e.g., id.*, Stout Engagement Agreement (6/20/2013), at A.2.[5]  Although the Trustee owed fiduciary duties to the Plan as set forth in ERISA, *see generally* 29 U.S.C. § 404, Stout was not a fiduciary to the Plan (and the Complaint does not suggest that it was) and thus owed no duty to the Plan.

Similarly, Stout owed no duty to the Company.  Stout prepared the independent valuation for the Trustee, and it ultimately was the Trustee's obligation to determine the fair market value of PDC stock.  *See* Compl. ¶ 342.  The engagement agreements clearly defined the limited nature of Stout's role.  Each agreement provided that Stout would "report ***solely to the Trustee***, notwithstanding that the Company w[ould] pay all fees for [Stout's] work."  *See, e.g.*, Ex. 1, Stout Engagement Agreement (6/20/2013), at A.2 (emphasis added).   Further, the agreements provided that Stout's valuation analysis would "be used ***for annual reporting and plan***

---

[3]  Several years after the ESOP was formed, Stout was retained by State Street Global Advisors, the Trustee of the Plan at that time, to provide the required independent valuations of the Company.  *See* Compl. ¶¶ 86, 113, 121.  Stout was subsequently engaged by Reliance and then Argent.  *See id.* ¶¶ 40, 86.

[4]  The Court may consider documents that are "*integral to or explicitly relied* upon in the [C]omplaint" on a motion to dismiss.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  The Complaint quotes from and directly references Stout's engagement agreements.  *See* Compl. ¶¶ 88-90.  The scope of Stout's limited role as an independent valuation firm retained by the Trustee, as set forth in the engagement agreements, is integral to understanding the allegations against it.

[5] The Trustee did not delegate any fiduciary duties to Stout.  *See generally* Ex. 1.

*administration purposes **by the Trustee**.*"  *See, e.g., id.* (emphasis added).  By signing the agreements, Appvion acknowledged that Stout could not successfully perform its services if it did not receive "accura[te] and complete[]" information from the Company.  *See, e.g., id.* at A.5.

Stout received a fixed fee of $50,000 for each semi-annual valuation, or $100,000 annually.  *See, e.g., id.* at A.3.  The amount of this fixed fee remained the same from 2013 through 2017, except for a single valuation for which Stout received an hourly fee.  *See* Ex. 1.[6] Stout's engagement agreements specifically stated that its compensation did not depend on the value it placed on the Company.  *See, e.g., id.*, Stout Engagement Agreement (6/20/2013), Professional Terms, A.7, ¶ 12.

In short, Stout was a service provider to the Trustee of an ERISA plan sponsored by the Company.  It owed no duty to the Company or to the Plan, fiduciary or otherwise.  Its obligation was solely to the ERISA Trustee.

Now, despite Stout's clearly delimited role, Plaintiff[7] makes the validity of Stout's valuation work the centerpiece of its Complaint and seeks to pin the downfall of the Company on a vast conspiracy (of unidentified origins) to manipulate those valuations.  Though Plaintiff has specifically described the manner in which it believes Stout's professional services were inadequate (a claim it does not and cannot bring), Plaintiff has utterly failed to articulate any facts supporting the aiding and abetting claim it does bring.  The Complaint does not plead any facts that could support a reasonable inference that Stout had knowledge of any unlawful conduct by others, or that Stout participated in such conduct.

---

[6] The May 18, 2015 engagement agreement provided that the June 30, 2015 valuation would be billed at standard hourly rates, plus out-of-pocket expenses, and that the December 31, 2015 valuation would be prepared for a fixed fee of $50,000.  *See* Ex. 1, Stout Engagement Agreement (5/18/2015) at A.16.
[7] "Plaintiff" or "Liquidating Trust" refers to the plaintiffs herein, Alan D. Halperin and Eugene I. Davis, as Co-Trustees of the Appvion Liquidating Trust.

Moreover, the Complaint fails to offer any reason whatsoever why Stout would be motivated to further unlawful activity by others. Stout is not alleged to have profited in any way from the supposed breaches of fiduciary duty. Stout was paid a fixed fee for its work, and the Complaint does not allege its fees were excessive or unreasonable. The Complaint's allegations depict, *at most*, that Plaintiff—with the benefit of hindsight—believes Stout did not perform its job well;[8] the absence of facts or motive supporting claims beyond that confirms that Plaintiff has failed to "nudge[] [its] claims across the line from conceivable to plausible" as Rule 8 requires. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

Even if Plaintiff had articulated some plausible theory that Stout, in exchange for a modest flat fee (that amounted to an infinitesimally small fraction of Stout's overall revenue), completely discarded its global reputation and professional integrity just to benefit the directors and officers of an entity that was not even its client, the claim still fails. ERISA's broad preemptive effect mandates that claims relating to ERISA plans be brought under ERISA, not state or common law theories. Plaintiff seeks to dodge ERISA preemption by artful pleading

---

[8] The Complaint attempts to fault Stout's valuations by suggesting that the Company was worthless well before it filed for bankruptcy. The very valuations that Plaintiff puts at issue and incorporates into the Complaint, however, disprove that proposition. Multiple independent third parties made offers to buy the Company or its business units at prices higher than Stout's valuations. For example, in the first half of 2012, the Company considered a combination with another entity that would have resulted in the Company going public. *See* Ex. 2, PDC Valuation of Common Stock as of June 30, 2013 ("6/30/2013 FMV"), at A.51; *see also* Ex. 3, PDC Form 10-K for the year ended December 29, 2012 ("2012 10-K"), at A.157. Later that same year, Hicks Equity Partners, LLC submitted a letter of intent to purchase the stock of PDC at $22.00 per share—which reflected a significant premium over Stout's most recent valuation of the stock at $16.45 per share. *See* Ex. 2, 6/30/2013 FMV, at A.52; Compl. ¶ 163. Further, in 2015, Sherman Capital Holdings, LLC purchased the Company's Encapsys business unit for $208 million—which likewise reflected a significant premium over Stout's most recent valuation of that component of the Company's business at $166 million. *See* Ex. 4, PDC Valuation of Common Stock as of December 31, 2015 ("12/31/2015 FMV") at A.304; Ex. 5, PDC Valuation of Common Stock as of December 31, 2014 ("12/31/2014 FMV") at A.456-57. Should this matter proceed, these valuations and other supporting information will demonstrate that Stout appropriately valued the Company's stock.

because ERISA does not provide the cause of action or remedy Plaintiff seeks.  This is not permitted, and the claim must be preempted.  Moreover, even if Plaintiff's claim against Stout were not preempted by ERISA, it still fails for multiple reasons.  The claim is barred by *res judicata* because the claim was not reserved in the Plan of Liquidation, and this Court also lacks subject matter jurisdiction.[9]  Additionally, regardless of whether Count VI has been asserted under ERISA or state law, it fails to allege that Stout "knowingly participated" in any unlawful conduct and is partially time-barred.  Finally, the Court lacks personal jurisdiction over Stout. For all of these reasons, Count VI must be dismissed.[10]

### STANDARD OF REVIEW

A complaint that "fail[s] to state a claim upon which relief can be granted" must be dismissed.  Fed. R. Civ. P. 12(b)(6).  Factual allegations, accepted as true on a motion to dismiss, must "permit the court to infer more than the mere possibility of misconduct," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.  "Mere restatements of the elements of a claim are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citations and alterations omitted).  Rather, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A complaint satisfies the plausibility standard when the factual pleadings 'allow[] the court to draw the reasonable inference that the

---

[9] Stout joins the portion of the Memorandum in Support of the Former Directors' and Officers' Motion to Dismiss Or in the Alternative to Transfer Venue ("Directors' and Officers' Motion to Dismiss") that addresses this Court's subject matter jurisdiction and incorporates the Directors' and Officers' position by reference.

[10] To the extent the Directors' and Officers' Motion to Dismiss is granted, the claims against them, then the aiding and abetting claim against Stout must also be dismissed.  Aiding and abetting claims are derivative, depending on the establishment of an underlying tort.  *See, e.g.*, *In re Mortg. Elec. Resigation Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (collecting cases). Accordingly, the dismissal of any claim against the Officers and Directors also results in the dismissal of the claims against Stout.

defendant is liable for the misconduct alleged." *Burtch*, 662 F.3d at 220 (quoting *Iqbal*, 556 U.S. at 678) (alteration in original).  The Complaint fails to satisfy this standard.

## ARGUMENT

### I.    ERISA PREEMPTS A CLAIM AGAINST STOUT FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY UNDER STATE LAW.

The Complaint asserts a single cause of action against Stout for "Aiding and Abetting Breaches of the Fiduciary Duties of Care and Loyalty," Compl., Count VI, and demands the entry of judgment against Stout in an amount to be determined at trial.  *See id.* ¶ 347, Prayer for Relief, ¶ (f).  The Complaint does not specify whether this claim is brought under ERISA or state law.  Even though the case centers around the alleged failure to value accurately the stock held in an ERISA plan as statutorily required, the Complaint carefully avoids invoking that governing statute.  Notably, the Complaint states unequivocally that Counts I, II, and III (which have been asserted against the directors and officers) are brought under state law.  *See id.* ¶¶ 320 (alleging violation of "applicable state corporate law"), 328 (same), 332 (same).  Yet when it comes to stating causes of action against the ERISA fiduciaries (the ESOP Committee and the Trustee) and the Trustee's service provider (Stout), the Complaint falls silent as to the legal basis for the claims.  *See id.* Counts IV-VI.

This silence speaks loud and clear:  Plaintiff is attempting to avoid any suggestion of an ERISA claim—even against the Plan's ERISA fiduciaries for their alleged failures in overseeing the required valuation of the ERISA Plan's holdings—because ERISA does not provide Plaintiff with a cause action on these facts, as explained below.  ERISA's broad preemptive power mandates that ERISA is the sole enforcement vehicle for such alleged breaches.  To the extent Plaintiff is pleading a state law claim, then, that claim is preempted.

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans.  To this end, ERISA includes expansive preemption provisions, *see* ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (internal quotation omitted); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (describing ERISA's preemption provision as "deliberately expansive"); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) ("[ERISA's] broad preemptive scope reflects Congress's intent to lodge regulation of employee benefit plans firmly in the federal domain.").  Indeed, "Section 1144 [of 29 U.S.C.] contains what may be the most expansive express pre-emption provision in any federal statute."  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 947 (2016) (Thomas, J., concurring).

The Third Circuit has recognized two forms of preemption under ERISA, explaining, "What emerged from Congress's deliberations on ERISA was a statute that both preempts state law expressly and contains a comprehensive civil enforcement scheme that preempts any conflicting state remedy."  *Iola*, 700 F.3d at 83.  As for express preemption, ERISA section 514(a) preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  The Supreme Court has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).  The Third Circuit has held that state law claims "have 'a connection with' the ERISA plans [when] they are premised on the existence of the plans."  *Iola*, 700 F.3d at 84.[11]

---

[11] Section 514(a) has the effect of preempting any state law that refers to, or has a connection with, covered benefit plans "even if the law is not specifically designed to affect such plans, or the effect is only indirect."  *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 (1992); *see also Pilot Life*, 481 U.S. at 47-48 (holding that ERISA preemption is not

As for the second type of preemption, ERISA section 502(a) sets forth ERISA's exclusive enforcement scheme that preempts conflicting state remedies.  The Third Circuit described this subsection's preemptive effect in *Menkes v. Prudential Insurance Company of America*, 762 F.3d 285 (3d Cir. 2014).  There the court held that claims for punitive damages, which are not available under ERISA, are preempted by section 502(a).  The court explained that "*Aetna Health* confirms that conflict preemption applies to any state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism because such a cause of action conflicts with Congress' clear intent to make the ERISA mechanism exclusive." *Id.* at 296 (internal quotations omitted).

Plaintiff's claim against Stout is preempted under both of ERISA's preemption provisions.

## A.  Plaintiff's Claim is Preempted by ERISA Section 514.

Plaintiff's claim against Stout is preempted by ERISA section 514 because the claim relates to an employee benefits plan—namely, the ESOP—as made clear on the face of the Complaint.  In filing this Complaint, Plaintiff specifically invokes its authority to bring "Causes of Action ***related to or arising out of [the] ESOP*** that are not Direct ESOP Claims (as defined in the Plan [of Liquidation])."  Compl. ¶ 293 (emphasis added).  Indeed, despite Plaintiff's assiduous avoidance of any reliance on ERISA, the ERISA Plan and the duties surrounding it form the entire basis for the Complaint.  The Complaint is built upon allegations of unlawful conduct related to the valuation of the stock held by the Plan—what the Complaint describes as a

---

limited to "state laws specifically designed to affect employee benefit plans").  Congress used the words "relate to" "in their broad sense, rejecting more limited preemption language that would have made the clause 'applicable only to state law relating to the specific subjects covered by ERISA.'"  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (quoting *Shaw*, 463 U.S. at 98).

"core" function of plan administration.  *See id.* ¶ 1 ("This litigation involves the purposeful and self-interested manipulation of the Debtors' corporate enterprise by certain of the Debtors' directors and officers, and the advisers they engaged to ***oversee and administer the core functions of [the Plan]***.") (emphasis added) *see also id.* ¶ 92 ("The twice annual FMV Determination served several functions ***related to the administration of the ESOP*** . . . .") (emphasis added).  Stout's engagement letters further expressly provided that the valuations were prepared for the ERISA Trustee's work related to "plan administration."  *See, e.g.*, Ex. 1, Stout Engagement Agreement (6/20/2013), at A.2 ("We understand that our valuation analysis will be used for ***annual reporting and plan administration purposes by the Trustee***.") (emphasis added).

Stout's entire involvement with this matter arose out of the ERISA Trustee's fiduciary obligation to have the ERISA Plan's stock holdings valued by an independent appraiser.  Here, the ESOP Committee was delegated the fiduciary function of overseeing the Trustee.  *See* Compl. ¶ 84 ("Pursuant to Section 8.1 of the ESOP, an ESOP administrative committee ("ESOP Committee") was established to assist and oversee the ESOP Trustee.  The ESOP Committee provided direction and input to the ESOP Trustee and was responsible for making discretionary decisions concerning the operation of the ESOP.").  The ESOP Committee, in turn, engaged Argent, *id.* ¶ 80, to serve as the Plan's Trustee to carry out plan fiduciary functions, including "determining the fair market value of PDC's common stock."  *Id.* ¶ 342; *see also id.* ¶¶ 85-86. The Plan required the Trustee to retain an independent outside appraiser to assist it with this determination, *id.* ¶ 76, as did the Internal Revenue Code's requirements for ESOPs.  *See* 26 U.S.C. § 401(a)(28)(C).  Argent, accordingly, retained Stout to provide an independent valuation of PDC stock "[i]n accordance with . . . []ERISA[]."  *See, e.g.*, Ex. 1, 6/20/2013 Stout

Engagement Agreement, at A.2.  Argent, as the Trustee, reviewed Stout's valuations and "determin[ed] the fair market value of PDC's common stock."  Compl. ¶ 342; *see also id.* ¶¶ 97, 103, 130-33, 147, 149, 164-65 (Stout's valuations were "adopted by Argent").  Thus, the ESOP Committee was responsible for overseeing the Trustee's work in determining the fair market value of the stock held by the Plan, and the Trustee in turn retained Stout to provide independent valuations.  The ESOP Committee's oversight responsibility with respect to the valuations related to a "core" plan administrative function.  *See id.* ¶ 1.

In short, Stout, which was hired by the ERISA Trustee to carry out an ERISA plan-required function, is alleged to have aided and abetted breaches by the ERISA plan fiduciaries who were responsible for monitoring the ERISA Trustee's performance.  The claim against Stout thus easily satisfies the requirement of having a connection with or referencing an ERISA plan and is therefore preempted.

### B.  The Claim Against Stout is Preempted by ERISA Section 502(a).

Similarly, the claim against Stout is preempted because ERISA section 502(a) provides the exclusive enforcement scheme for the breaches alleged here.  In enacting ERISA, Congress chose ***not*** to provide a remedy for the type of claims Plaintiff tries to bring against Stout.  The Third Circuit has made clear that plaintiffs may not invoke state law in order to evade ERISA's carefully crafted enforcement provisions: "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."  *Menkes*, 762 F.3d at 296 (internal quotations omitted).

*1. ERISA Does Not Recognize A Cause of Action Against Stout.*
Stout was not a fiduciary to the Plan and the Complaint does not allege that it was.

Instead, as the Complaint alleges, Stout provided "financial advisory services" to the Trustee in

order that the Trustee might fulfill its own duties.  *See* Compl. ¶ 88.

The availability and scope of relief against non-fiduciaries under ERISA is exceedingly

narrow.  Under section 502(a)(3), a "participant, beneficiary, or fiduciary" may obtain only

"appropriate **equitable** relief" from a non-fiduciary, and only where the non-fiduciary is a

knowing participant[12] in a **prohibited transaction.**  *See Harris Tr. & Sav. Bank, v. Salomon*

*Smith Barney, Inc.*, 530 U.S. 238, 238, 248 (2000) ("*Harris Trust*") (emphasis added).[13]

The facts alleged in the Complaint do not make out a section 502(a)(3) claim against

Stout.  First, the Complaint purports to plead a claim against Stout for knowing participation in a

**fiduciary breach** (as opposed to knowing participation in a prohibited transaction), but knowing

participation in a fiduciary breach does not give rise to a section 502(a)(3) claim.  In *Harris*

*Trust*, the Supreme Court sanctioned liability against a non-fiduciary under section 502(a)(3)

only where the non-fiduciary knowingly participated in a **prohibited transaction**.  *See* 530 U.S.

at 251.  Following *Harris Trust*, lower courts, including the Third Circuit, have held that a non-

fiduciary's knowing participation in a breach of fiduciary duty is not actionable under section

---

[12] The Complaint fails to allege that Stout knowingly participated in any ERISA violations for the reasons set forth in section IV, *infra*.

[13] ERISA defines the term "fiduciary" to encompass any person "to the extent" that he or she, *inter alia*, "exercises any discretionary authority or discretionary control respecting management" of a plan or "has any discretionary authority or discretionary responsibility in the administration" of a plan.  *See* 29 U.S.C. § 1002(21)(A).  When drafting ERISA, Congress expanded the definition of "fiduciary" found in traditional trust law and in turn expanded "the universe of persons subject to fiduciary duties—and to damages."  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).  At the same time, Congress deliberately limited the relief available against other parties considered non-fiduciaries under the statute.  *See id.* (Congress "eliminated . . . the common law's joint and several liability for *all* direct and consequential damages suffered by the plan, on the part of persons who had no real power to control what the plan did.").

502(a)(3).  *See Renfro v. Unisys Corp.*, 671 F.3d 314, 325 (3d Cir. 2011) ("29 U.S.C. §

1132(a)(3) does not authorize suit against 'nonfiduciaries charged solely with participating in a

fiduciary breach.'"); *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003) *cert. denied,*

540 U.S. 967 (2003) (recognizing that a cause of action against a non-fiduciary for knowing

participation in a breach of fiduciary duty is no longer available under recent Supreme Court

precedent); *Spear v. Fenkell*, No. 13-02391, 2015 WL 3643571, at *9 (E.D. Pa. June 12, 2015)

("[A] 'knowing participation' claim involving a non-fiduciary must involve a 'prohibited

transaction.'").  Thus, although ERISA provides relief against a non-fiduciary for certain

violations, it does not do so in the circumstances alleged here.

Not only is Plaintiff's cause of action unavailable under ERISA, but the remedy it seeks

is unavailable as well.  The Supreme Court has emphasized that the type of relief available

against a non-fiduciary under section 502(a)(3)—"appropriate equitable relief"—is limited.  *See*

*Harris Tr.*, 530 U.S. at 250; *Mertens*, 508 U.S. at 257-58.  In *Mertens*, the Court held that the

plaintiffs could not obtain monetary relief from the plan's actuaries under section 502(a)(3) for

losses the plan sustained as a result of an underlying breach of fiduciary duty.  *See* 508 U.S. at

255.  The Supreme Court then reiterated the narrow nature of the relief available against a non-

fiduciary under section 502(a)(3) in two subsequent cases.  In *Harris Trust*, the Court held that

"appropriate equitable relief" includes "restitution of the [trust] property (if not already disposed

of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's

profits derived therefrom."  530 U.S. at 250.  In *Great-West Life & Annuity Ins. Co. v. Knudson*,

the Court held that equitable restitution was limited to the imposition of a "constructive trust or

an equitable lien, where money or property identified as belonging in good conscience to the

plaintiff could clearly be traced to particular funds or property in the defendant's possession."

534 U.S. 204, 213 (2002) ("*Great-West*").

The Complaint demands relief for "***damage*** to Debtors and their businesses and

prospects," Compl. ¶ 347 (emphasis added), and seeks the entry of a "judgment" against Stout

"in an amount to be determined at trial, including punitive damages." *Id.*, Prayer for Relief, ¶(f).

Facially, this is a demand for an award of money damages.  Money damages, however, are not

available against a non-fiduciary under section 502(a)(3).  *See Mertens*, 508 U.S. at 255 ("Money

damages are, of course, the classic form of *legal* relief.").

Moreover, there is no "other appropriate equitable relief" that could be awarded against

Stout.  The only types of relief that the Supreme Court has sanctioned under section 502(a)(3)

are restitution of trust property, disgorgement of proceeds, disgorgement of profits, and the

imposition of a constructive trust or an equitable lien.  *See Harris Tr.*, 530 U.S. at 250; *Great-

West*, 534 U.S. at 213.  These forms of relief are not available against Stout.  Stout was paid a

fixed fee for services rendered to the Trustee.  *See generally* Ex. 1.  The Complaint makes no

allegation that Stout profited from or was unjustly enriched by any unlawful conduct or that it is

otherwise in possession of money or property that in good conscience belongs to the ESOP.

Accordingly, Plaintiff has no ERISA claim against Stout.[14]

---

[14] *See In re Pfizer Inc. ERISA Litig.,* No. 04-cv-10071, 2009 WL 749545, at *15-16 (S.D.N.Y. Mar. 20, 2009) (dismissing section 502(a)(3) claim against non-fiduciaries where the underlying nature of the relief sought was money damages); *Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson*, No. 5:03-cv-1060, 2006 WL 2934391, at *25 (N.D.N.Y. Oct. 12, 2006) (dismissing section 502(a)(3) claim against non-fiduciary auditor where it had not "profited from fiduciary breaches of others, as distinct from its role as an auditor, nor ha[d] it been unjustly enriched"); *Carlson v. Principal Life Ins. Co.*, No. 01-cv-0581, 2006 WL 2806543, at *4 (E.D.N.Y. Sept. 28, 2006) (holding that non-fiduciary who was not the transferee of ill-gotten trust assets was not a proper defendant under section 502(a)(3)).

### 2.   *Plaintiff May Not Avoid ERISA By Bringing State Law Claims.*

Although the scope of liability and relief available against a non-fiduciary under ERISA

is narrow, that does not mean that Plaintiff can bring a state law claim to avoid those limitations.

A claim is preempted by ERISA where the "state law cause of action attempts to authorize

remedies beyond those authorized by ERISA § 502(a)." *Aetna Health*, 542 U.S. at 214-15; *see*

*also id.* at 215 ("The limited remedies available under ERISA are an inherent part of the 'careful

balancing' between ensuring fair and promoted enforcement of rights under a plan and the

encouragement of the creation of such plans.") (quoting *Pilot Life*, 481 U.S. at 55).  Where a

"state law duplicate[s] the elements of a claim available under ERISA," it must be preempted if

it attempts to "convert an equitable remedy into a legal remedy." *Aetna*, 542 U.S. at 215-16.

The fact that this leaves Plaintiff without a cause of action is not troubling.  "ERISA's

preemptive scope is not diminished simply because a finding of preemption will leave a gap in

the relief available to a plaintiff." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496

F.3d 326, 341 (4th Cir. 2007).  Courts of appeals have specifically held that this is true with

regard to claims against non-fiduciaries. *See id.* at 342-43 ("ERISA preempts state-law claims

against nonfiduciaries if those claims relate to a plan.  The central question is not whether a

particular defendant is a fiduciary, or whether the preemption decision would create a gap in the

law with respect to suits against nonfiduciaries, but rather whether the action *relates* to any

employee benefit plan.") (citation and quotation omitted); *Custer v. Pan American Life Ins. Co.*,

12 F.3d 410, 419 (4th Cir. 1993) ("[T]he generalized contention that there should be some form

of action available against nonfiduciaries is insufficient to overcome the specific language of the

statute which provides for preemption of any claim that relates to an employee benefit plan.");

*Consolidated Beef Industries, Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991)

*cert. denied,* 503 U.S. 985 (1992) ("[B]ecause ERISA allows equitable relief against both

fiduciaries and non-fiduciaries, Congress intended pre-emption to apply even where no ERISA fiduciary remedy existed."); *Gibson v. Prudential Ins. Co. of Am.*, 915 F.2d 414, 417-18 (9th Cir. 1990) (holding that state law claims that were "directly connected with the Plan" were preempted, even though money damages are not available against a non-fiduciary under ERISA).[15]

Indeed, it is not surprising that **Plaintiff** has been left without an ERISA cause of action. ERISA's enforcement scheme provides statutory standing to sue to, among other enumerated persons and entities,[16] the fiduciaries of Plan.  In fact, the Plan's current fiduciary, the ESOP Administrative Committee, has initiated a lawsuit in the Eastern District of Wisconsin (the district where the Plan is administered), which asserts substantially similar allegations against many of the defendants named in this case.  *See* First Am. Compl. (ECF 77), *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, No. 1:18-cv-01861 (E.D. Wis. Jan. 8, 2019). Although the allegations are similarly unmeritorious and Stout expects to defeat them, the plaintiff therein, as an ERISA fiduciary, has standing to seek an ERISA remedy (against at least some of the named defendants), in stark contrast to the contorted manner in which Plaintiff has attempted to bring state law claims in the midst of this bankruptcy proceeding.[17]  Indeed, to the extent the conduct at issue was unlawful, ERISA provides a remedy (against at least some of the defendants) for the Plan, not the Liquidating Trust of the Company that sponsored the Plan.

---

[15] *Custer*, *Consolidated Beef Industries*, and *Gibson* were decided before the Supreme Court's decision in *Harris Trust, supra*, which settled the open question of whether ERISA provides a cause of action against a non-fiduciary.  *Harris Trust* held that non-fiduciaries may be subject to "appropriate equitable relief" in limited circumstances.  *See supra* at Part I.B.1.

[16] *See generally* 29 U.S.C. § 1102 (providing that a civil action may be brought by, as relevant here, a participant, beneficiary, fiduciary, or the Secretary of Labor).

[17] As explained in the portion of Directors' and Officers' Motion to Dismiss that addresses preemption, which Stout incorporates herein by reference, Plaintiff lacks standing to pursue a claim under section 502(a)(3).

Thus, Plaintiff cannot evade ERISA by arguing that it lacks a cause of action under ERISA or is unable to obtain the type of relief it seeks under the statute.  Those considerations are irrelevant to the preemption analysis.  *See Custer,* 12 F.3d at 418-19 ("The Act's preemption clause does not place the analysis on whether remedies are provided by the Act, but rather on whether the action *relates* to any employee benefit plan.").  Plaintiff's claim against Stout "relates to" an employee benefit plan and accordingly is preempted by ERISA.

## II.    THE CLAIM AGAINST STOUT WAS NOT RESERVED IN THE PLAN OF LIQUIDATION.

To the extent the aiding and abetting claim against Stout is not preempted by ERISA, the Debtors, and accordingly Plaintiff, waived their claim against Stout by failing to preserve it in the Seconded Amended Joint Combined Disclosure Statement and Chapter 11 Plans of Liquidation ("Plan of Liquidation"), D.I. 970-1, or the Confirmation Order, D.I. 944-1, and thus it cannot be asserted now.  The Plan of Liquidation and Confirmation Order are *res judicata* with respect to claims that are not expressly reserved therein.  *See D&K Prop. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 261-62 (7th Cir. 1997) ("A blanket reservation that seeks to reserve all causes of action reserves nothing.  To hold otherwise would eviscerate the finality of a bankruptcy plan containing such reservation, a result at odds with the very purpose of a confirmed bankruptcy plan."); *In re Kelley v. South Bay Bank*, 199 B.R. 698 (9th Cir. B.A.P. 1996) ("If a confirmed plan expressly reserves the right to litigate a ***specific*** cause of action after confirmation, then *res judicata* does not apply. On the other hand, if the debtor fails to mention the cause of action . . . then he will be precluded from asserting it post-confirmation.") (emphasis added).

For *res judicata* to apply to a dispute, the dispute must (i) be subsequent to a final judgment on the merits rendered by a court of competent jurisdiction in a prior action; (ii)

16

involve the same parties or those in privity with them; and (iii) be based on the same cause of action. *See Peltz v. Worldnet Corp. (In re USN Comm'cn., Inc.)*, 280 B.R. 573, 586 (Bankr. D. Del. 2002). All three factors are satisfied here.

First, this Court entered the Confirmation Order, and that order constitutes a final judgment on the merits with respect to the issues addressed in the Plan of Liquidation, *i.e.*, claims by and against the Debtors and their successor under the terms of the Plan of Liquidation. *Id.; see also Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) (recognizing that "confirmation of a plan of reorganization constitutes a final judgment in a bankruptcy proceeding").

Second, assuming that Plaintiff's assertion that Stout received notice of the Plan of Liquidation and the Confirmation Order/Effective Date is true, the Debtors (and their successor, Plaintiff) and Stout had the opportunity to participate in the plan confirmation process.

Third, any state law claim against Stout in this case could have been raised in the confirmation proceeding. *See Browning*, 283 F.3d at 772 ("[C]onfirmation by a bankruptcy court 'has the effect of a judgment by the district court and *res judicata* principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'"). The only claims that were reserved in the Plan of Liquidation, however, are claims "related to or arising out of the ESOP," *i.e.*, ERISA claims. *See* Plan of Liquidation § II.A.114 (defining "Litigation Claims" as "any and all Causes of Action of any Debtor and/or any of the Estates against any Person . . . , including but not limited to, (a) all claims and Causes of Action related to or arising out of the ESOP that are not Direct ESOP Claims . . . ."). Of course, the court will reach this alternative argument only if it has already decided that Plaintiff's claim is not preempted because

17

it is not, in actuality, an ESOP-related claim.  In that case, because the claim has been held not to be an ESOP-related claim, it has not been reserved in the Plan of Liquidation.

Furthermore, even though the Debtors had actual knowledge of potential state law claims against Stout,[18] the Plan of Liquidation failed to identify Stout specifically as an entity against which any such causes of action were being reserved.  Nor does the Plan of Liquidation, or any related document, discuss the grounds for any potential state law claims against Stout.  This is insufficient to escape *res judicata* of any state law claims against Stout.  *See Browning*, 283 F.3d at 744 (holding that "a general reservation of rights does not suffice to avoid res judicata"); *cf. In re Meridian Auto. Sys. Composites Operations, Inc.*, 372 B.R. 710, 724 (Bankr. D. Del. 2007) (holding that language in the plan of liquidation retaining certain causes of action was sufficient because it included actions against vendors and specifically referenced the defendant supplier alleged to have breached debtor's Trade Agreement as one of the five excluded parties against whom the reorganized debtors retained the right to pursue avoidance actions).

 Therefore, if Plaintiff's claim is not preempted, it was not reserved in the Plan of Liquidation and cannot be brought.

## III.    THE COURT LACKS SUBJECT MATTER JURISDICTION TO DECIDE THE CLAIMS AGAINST STOUT.

The claims asserted in the Complaint generally, and the claim for aiding and abetting breach of fiduciary duty against Stout specifically, are non-core claims over which this Court lacks subject matter jurisdiction.[19]

---

[18] *See infra* at Part V.

[19] Stout incorporates herein by reference the portion of the Directors' and Officers' Motion to Dismiss that addresses this Court's subject matter jurisdiction over the claims asserted in the Complaint.

"[A] core proceeding . . . is one that invokes a substantive right provided by title 11 or one that by its nature, could arise only in the context of a bankruptcy case." *Binder v. Price Waterhouse Co., LLP (In re Resorts International, Inc.)*, 372 F.3d at 162-63 (3d Cir. 2004) (internal quotations omitted).  Core proceedings are those that either "arise under" title 11 or "arise in" a case under the Bankruptcy Code.  *See* 28 U.S.C. § 157(b)(1).  A claim "arises under" title 11 if the "Bankruptcy Code creates the cause of action or provides the substantive right invoked."  *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006).  "Proceedings 'arise in' bankruptcy if they have no existence outside of bankruptcy."  *U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999).

The claim asserted against Stout neither "arises in" this bankruptcy matter nor "arises under" title 11.  It does not fall into any of the illustrative categories of core proceedings listed in 28 U.S.C. §§ 157(b)(2)(A) - (P).   For example, it is not a "matter[] concerning the administration of the estate,"  *id.* § 157(b)(2)(A), and it is not a "proceeding[] affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship."  *Id.* § 157(b)(2)(O).  The claim against Stout will not affect the bankruptcy estate in any way other than that the potential proceeds resulting from a favorable result for Plaintiff will provide increased funds for creditors.  This is not sufficient to transform a non-core state law claim into a core claim.  *See Hatzel & Buehler, Inc. v. Orange & Rockland Utils*., 107 B.R. 34, 39-40 (D. Del. 1989) ("Although H & B contends that its claim is a 'core proceeding' under 28 U.S.C. § 157(b)(2) which directly affects the administration of H & B's estate, this argument hinges upon the tenuous connection that the proceeds of the instant litigation will form the basis of distribution to the general creditor body.").  Including any claim for damages that could conceivably increase estate assets in the realm of "core" proceedings would "impermissibly

bypass[]" the Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 87 (1982), that it is unconstitutional for a bankruptcy court to adjudicate "private rights" matters arising under state law.  *See Dayton Title Agency, Inc. v. Philadelphia Indemnity Ins. Co. (In re Dayton Title Agency, Inc.)*, 264 B.R. 880, 883 (Bankr. S.D. Ohio 2000).[20]

Indeed, other courts have found that claims for breach of fiduciary duty are non-core claims.  *See Official Comm. of Unsecured Creditors of Wickes, Inc. v. Wilson (In re Wickes, Inc.)*, No. 06-C-0869, 2006 WL 1457786, *16 (N.D. Ill. May 23, 2006); *Bliss Techs., Inc. v. HMI Indus. (In re Bliss Techs., Inc.)*, 307 B.R. 598, 608 (Bankr. E.D. Mich. 2004) (finding "persuasive the cases holding that a state-law breach of fiduciary duty cause of action, which is based on pre-petition conduct, does not, and constitutionally cannot, fit within [28 U.S.C. §§ 157(b)(2)(A) or (O)]").  Similarly, and as would be expected, claims for aiding and abetting breaches of fiduciary duty are regarded as non-core claims.  *See, e.g., Official Comm. Of Unsecured Creditors of Allied Sys. Holding v. Yucaipa Am. Alliance Fund I, L.P. (In re Allied Sys. Holdings, Inc.)*, 524 B.R. 598, 605-606 (Bankr. D. Del. 2015) (finding claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty to be non-core).[21]

---

[20] Moreover, Plaintiff's claims do not implicate the "allowance or disallowance of claims."  28 U.S.C. § 157(b)(2)(B).  To date, Stout has not filed any claims in the Bankruptcy Cases (Stout reserves the right to assert any claims or defenses available to it, including but not limited to setoff and claims for indemnification); but, even if it had, the resolution of such claims would depend on the outcome of a separate claims objection, and not on this action.

[21] *See also Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 425 B.R. 78, (Bankr. S.D.N.Y. 2010) (finding claim for aiding and abetting breach of fiduciary duty to be non-core); *Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 827 (S.D.N.Y. 2002) (claims for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty are traditionally non-core); *Buena Vista Television v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 307 B.R. 404, 419 (Bankr. S.D.N.Y. 2004) (state law claims of breach of fiduciary duty and aiding and abetting breaches of fiduciary duty are normally non-core claims); *Breeden v. Sphere Drake Ins. P.L.C. (In re Bennett*

For these reasons, the aiding and abetting claim asserted against Stout is non-core and, for the reasons stated in the Directors' and Officers' Motion to Dismiss, this Court lacks subject matter jurisdiction over this non-core claim.[22]  Accordingly, the Court should dismiss Count VI pursuant to Rule 12(b)(1) and 12(h)(3).[23]

## IV.    THE COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO SHOW THAT STOUT KNOWINGLY PARTICIPATED IN UNLAWFUL CONDUCT.

Whether preempted or not, Count VI should be dismissed because the Complaint does not plausibly plead any facts that could support a reasonable inference that Stout knew or should have known that the directors and officers were breaching their fiduciary duties and that it participated in this conduct.  *See Twombly,* 550 U.S. at 556.  This failure persists under both ERISA and state law, as explained below.

### A.  The Complaint Fails to State a Knowing Participation Claim Under ERISA.

The Complaint's allegations are not sufficient to meet the standard of Rule 8, let alone the heightened pleading requirements of Rule 9(b) that apply where, as here, an ERISA claim is grounded in fraud.[24]  Specifically, the Complaint fails to allege sufficient facts to show that Stout knew of the directors' and officers' breaches or actively participated in them.

---

*Funding Group, Inc.)*, 258 B.R. 67, 76 (Bankr. N.D.N.Y. 2000) (finding action for aiding and abetting breach of fiduciary duties to be non-core).

[22] To the extent that this Court determines that the claim against Stout is non-core, and does not otherwise dismiss the Complaint for the reasons set forth herein, Stout expressly does not consent to the entry of a final order by this Court.

[23] To the extent that the Court finds that the claims asserted in the Complaint are not preempted by ERISA and that it has subject matter jurisdiction over those claims, the Court should transfer this case to the United States District Court for the Eastern District of Wisconsin for the reasons stated in the portion of the Directors' and Officers' Motion to Dismiss that addresses transfer, which Stout incorporates herein by reference.

[24] Allegations that a fiduciary concealed material information and engaged in a scheme designed to inflate the price of stock sound in fraud and are subject to Rule 9(b).  *End of the Rd. Tr. v. Terex Corp. (In re Fruehauf Trailer Corp.)*, 250 B.R. 168, 206 (D. Del. 2000); *see also Johnson v. Radian Grp., Inc.*, No. 08-2007, 2009 WL 2137241, at *12 (E.D. Pa. July 16, 2009); *Sysco Food Servs. of Metro New York, LLC v. Tramontana*, No. 06-2864, 2007 WL 4165349, at *3

Instead, the Complaint relies on inferences and bald allegations of a purported scheme by Defendants to inflate the price of PDC's stock to assert Stout's "knowing participation" in a fiduciary breach, which is insufficient even under Rule 8. *See Spear*, 2015 WL 3643571, at *9 (holding conclusory allegations regarding non-fiduciary's knowing participation in prohibited transaction to be insufficient under *Twombly*). Moreover, the Complaint's allegations regarding Stout's knowledge and participation in any unlawful conduct are not plausible. *See Iqbal*, 556 U.S. at 678 ("[A] complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.") (quotation omitted).

<blockquote>

1.      *The Complaint Pleads No Facts to Support an Inference that Stout "Knowingly Participated" in Unlawful Conduct.*

</blockquote>

Stout performed semi-annual valuations for the Trustee pursuant to the terms of its engagement agreements. The engagement agreements expressly contemplated that Stout, at the request of the Trustee, would meet with Appvion's management and rely on the "assumptions and information" provided by the Company to prepare the valuations. *See, e.g.*, Ex. 1, Stout Engagement Agreement (6/20/2013), at A.3. The engagement agreements stated that Stout's services were dependent on the "accuracy" and "completeness" of the data provided to it. *See, e.g., id.* ("[T]he Company acknowledges that the successful delivery of our services . . . [is] dependent on . . . the accuracy and completeness of the assumptions and information provided to

_____

(D.N.J. Nov. 20, 2007); *Pietrangelo v. NUI Corp.*, No. 04–3223, 2005 WL 1703200, at *9 (D.N.J. July 20, 2005). Further, courts have specifically held that allegations of fraudulent data manipulation, such as providing inaccurate and misleading information to an independent appraiser, sound in fraud. *See Vigeant v. Meek*, No. 18-cv-577, 2018 WL 5839792 (D. Minn. Nov. 7, 2018), Order (slip op.) (attached hereto as Ex. 6). Although the Complaint does not use the word "fraud," that is what the Complaint alleges: that Appvion's management provided inaccurate information to Stout in order to purposefully manipulate the price of PDC stock and enrich themselves, and that Stout knowingly assisted them in this unlawful conduct. Accordingly, Rule 9(b)'s heightened pleading standard applies to Plaintiff's claims against Stout.

us . . . .").  Thus, while the Complaint implies that Stout's meetings with Appvion's management and its reliance on the data they provided to it indicate that Stout was aiding the directors and officers in unlawful conduct, *see, e.g.,* Compl. ¶¶ 10, 13, 146-48, those meetings and exchanges of information were necessary for Stout to perform the valuations and contemplated by the terms of its engagement agreements.  These facts, without more, do not support a reasonable inference that Stout knowingly participated in unlawful conduct.

The Complaint repeatedly alleges that Stout "knowingly accept[ed]" financial projections prepared by the Company that were "unrealistic" and "unreliable," and claims that by doing so, Stout "consciously intended" to assist the "malfeasance" of Appvion's senior management.  *See, e.g., id*. ¶¶ 12-13, 345.  These allegations likewise do not assert facts sufficient to state a section 502(a)(3) claim.  As a threshold matter, even if the projections were "unrealistic" and "unreliable," that does not necessarily mean that they were purposefully manipulated by Appvion's management to enrich themselves (and, in turn, that Stout knew or should have known about the purported manipulation).  Indeed, the Complaint acknowledges that the projections may have been the product of "managerial and/or supervisory incompetence." *id*. ¶ 11.  If that is the case, then there was no grand plan by Appvion's management to inflate the price of the PDC stock in which Stout could have "knowingly participated."

Similarly, the Complaint claims that because Stout's valuations contained numerous "flaws," the valuations were "inflated" and "manipulated." *See id.* ¶¶ 146-228.  The Complaint alleges in great detail, for example, that Stout's valuations excluded material indebtedness and certain liabilities, *id.* ¶¶ 168, 171; included comparisons to companies that were "not suitable," *id.* ¶ 187; relied on "improper exclusions and adjustments," *id.* ¶ 203; and contained "flaws" in

its discount rate analysis. *Id.* ¶ 210. The Complaint alleges that Stout's errors were "improvident," *id.* ¶ 177, and that the "markets fundamentally disagreed" with them. *Id.* ¶ 278.[25]

Even assuming these allegations were true (and they are not), the Complaint does not allege any facts in support of its claim that Stout's alleged "manipulation" of the valuations was "purposeful," *id.* ¶ 229, or that Stout knew or should have known that its valuations were being "manipulated" by Appvion's management to enrich themselves. The Complaint implies that Stout worked in concert with Appvion's management to produce the purportedly "inflated" valuations, but does not actually allege as much. The closest the Complaint comes to making such a claim are its allegations that Stout relied on the financial projections at the officers' "behest." *Id.* ¶ 179. This allegation only *supports* the inference that Appvion's management provided Stout with the "assumptions and information" and that Stout relied on them as set forth in its engagement agreements—not that Stout colluded with Appvion's management to inflate the price of PDC stock in its valuations. *See* Ex. 1, Stout Engagement Agreement (6/20/2013), at A.3.

Further, the Complaint baldly alleges "[u]pon information and belief" that one or more of the officers "assisted Stout to selectively exclude" certain EBITDA ratios. Compl. ¶ 208. The Complaint pleads no *facts* in support of this allegation. The Complaint makes the inferential leap that the valuations must have been "purposeful[ly] manipulate[ed]," *id.* ¶ 229, because Plaintiff now claims that there are errors in the valuations and disagrees with how Stout prepared them. This does not amount to conduct actionable under section 502(a)(3). *See Eslava v. Gulf*

---

[25] The Complaint makes these assertions based on data that has been cherry-picked to support Plaintiff's narrative. As previously noted, third parties made offers to buy the Company or its components for prices that exceeded Stout's valuations. *See supra* at n.8. Moreover, Plaintiff overlooks the fact that Stout's valuations did reflect that PDC stock experienced a significant decline in value from 2007 to 2010, from which it did not recover. *See* Compl. ¶ 163, Figure 8.

*Telephone Co., Inc.*, No. 04-0297, 2007 WL 9717348, at \*4 (S.D. Ala. June 13, 2007)

(recognizing that "taking issue with the methodologies employed by [the defendant valuation

firm] is not evidence that [the valuation firm] knew it was participating in a fiduciary breach").

At most, Plaintiff—with the benefit of hindsight—has alleged that Stout did a poor job in

valuing the Company.  As the Third Circuit has acknowledged, however, the valuation of

privately-held ESOP stock is a difficult task requiring a significant degree of professional

judgment.  *See Kool v. Coffey*, 300 F.3d 340, 362-63 (3d Cir. 2002) (acknowledging the

"extremely difficult task of valuing the stock of a company which is privately owned").  Thus,

merely alleging that a valuation was "incorrect" or that the valuation could have been performed

differently, as Plaintiff has done here, is insufficient to plead a violation of section 502(a)(3).

*See Eslava*, 2007 WL 9717348, at \*4 (on summary judgment, holding that "Plaintiffs' assertion

that the fairness evaluation was incorrect is insufficient to support [the] claim that [the defendant

valuation firm] knowingly participated in a fiduciary breach").

> 2.      *It is Implausible that Stout "Knowingly Participated" in Unlawful Conduct.*

The purported scheme to defraud—coordinated among multiple classes of defendants

over a period of years—is implausible.  *See Iqbal*, 556 U.S. at 678.  Conspicuously, the

Complaint does not allege when the fraud began (*i.e.*, when the ESOP was formed or at some

later point in time), who started it, or when each of the defendants (including Stout) joined it.

The failure to allege key details sufficient to put Defendants on notice of their allegedly

fraudulent actions is insufficient under Rule 9(b).  *See Rolo v. City Investing Co.*, 155 F.3d 644,

658 (3d Cir. 1998) ("The purpose of Rule 9(b) is to provide notice of the "precise misconduct"

with which defendants are charged and to prevent false or unsubstantiated charges.").

Such a coordinated effort is particularly implausible given the significant turnover among the alleged wrongdoers.  The ESOP was formed in 2001, *see* Compl. ¶ 54, and the composition of Appvion's management changed over time.[26]  The turnover in personnel was not limited to the Company.  The Trustee of the ESOP also changed multiple times.[27]  It is patently implausible that the 13 individual officers and directors who have been named as defendants in the Complaint (and potentially the officers and directors who preceded these individuals), multiple trustees, and an independent valuation firm all worked in concert to artificially inflate the value of the PDC stock, seamlessly handing the baton of fraud off from one to another over an indefinite time period that at a minimum lasted several years.  It is even more implausible that this purported fraud was joined by the third parties who reviewed the Company's financial data in the course of its multiple attempts to sell all or part of the Company, which in turn informed Stout's valuation of the Company.[28]

---

[26] From the time the ESOP was created in 2001 until the Company filed for bankruptcy in 2017, there were multiple changes in the management of Appvion.  For example, the CEO of Appvion changed in 2005, when Mark Richards assumed that role.  Compl. ¶ 23.  Richards left that role in 2015, when it was assumed by Gilligan.  *Id.* ¶ 35.  The other officers of the Company changed since the ESOP was created in 2001 and throughout the duration of its existence, *see, e.g., id.* ¶¶ 24 (Ferree – served in various management roles from 2006 - 2017), 25 (Van Straten – became Vice President, General Counsel and Secretary of PDC and Appvion in 2012), 26 (Fletcher – became Vice President and Controller of Appvion in 2010 and retired in 2017), 27 (Arent – became Senior Vice President of Human Resources in 2013 and retired in 2015), as did its directors.  *See, e.g., id.* ¶¶ 28 (Carter, 2004-2016), 29 (Murphy, 2007-2016), 30 (Reardon, 2007-2015), 31 (Seifert, from 2004), 32 (Suwyn, from 2011), 33 (Laurino, 2017 – effective date), 34 (Roberts, May 2016 – effective date).

[27] Prior to 2013, the Trustee was State Street Global Advisors.  Compl. ¶ 81.  Reliance became the Trustee on April 1, 2013.  *Id.*  Argent became the Trustee effective May 28, 2014.  *Id.* ¶ 79.

[28] During the multiple-year period when the scheme to "manipulate" the stock price allegedly was carried out, the Company engaged in several attempts to sell its assets.  In the related due diligence processes, the Company's financial data was reviewed by multiple third parties, including investment bankers and prospective purchasers.  *See, e.g.,* Ex. 4, 12/31/2015 FMV at A.302-04.  Yet Defendants' purportedly wide-ranging scheme to "manipulate" the stock price supposedly continued even as the processes necessary for such potential sales took place and the Company received purchase offers that ***exceeded*** the valuations prepared by Stout.  *See supra* n.8.  This is patently implausible.  Further, it underscores why Stout could not have had even

Stout's purported knowledge of and participation in this fraudulent scheme is rendered further implausible by the limited scope of Stout's engagements and the nature of its compensation.  Stout was engaged to determine the fair market value of the stock "for annual reporting and plan administration purposes by the Trustee[.]"  *See, e.g.,* Ex. 1, Stout Engagement Agreement (6/20/2013), at A.2[29]  Stout reported "solely to the Trustee."  *Id.*  As the Complaint alleges, it was the Trustee's responsibility to review and ultimately adopt the valuations.  *See, e.g.*, Compl. ¶¶ 86, 97, 130, 345.  Stout could not plausibly have known nor should it have known that its valuations—which were expressly for use by the Trustee for Plan reporting and administrative purposes—were being manipulated by Appvion's management for their own financial benefit.  The Complaint does not make such an allegation.  Moreover, in contrast to the directors and officers, Stout had no incentive to inflate the valuations.  Stout's receipt of a fixed fee for its work—that was less than one-half of one percent of its annual revenue—negates any inference that Stout would have benefitted from the fraud in any way.  *See* Ex. 1.  While Stout's engagements were renewed each year (at the same rate), its continued receipt of a reasonable, fixed fee for services rendered does not amount to a motive to engage in unlawful conduct.  *See DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) *cert. denied,* 498 U.S. 941 (1990) (An accounting firm's "greatest asset is its reputation for honesty, followed closely by its

---

constructive knowledge of any allegedly unlawful conduct by the officers and directors: even the third parties reviewing the Company's financial records who submitted offers to purchase the Company did not detect the supposed fraud.

[29] The Complaint alleges that, contrary to the terms of Stout's engagement agreements, "Stout's valuations were utilized by the ESOP Trustee for a number of purposes in addition to its annual reporting and ESOP administration obligations."  Compl. ¶ 93; *cf. ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading thereon, the written instrument will control.").  The Complaint, however, does not allege that ***Stout*** knew or should have known that the Trustee (or anyone else) was using its valuations for purposes other than those identified in its engagement agreements.

reputation for careful work.  Fees . . . could not approach the losses [a firm] would suffer from a perception that it would muffle a client's fraud."); *see also Grove Holding Corp. v. First Wisconsin Nat'l Bank of Sheyboygan*, 803 F. Supp. 1486, 1504 (E.D. Wis. 1992) (holding accountant's fee for services insufficient to support an inference of scienter for securities fraud and common law fraud claims).  Where, as here, the Complaint pleads facts that are "'merely consistent with' a defendant's liability," the allegations fall "short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678.  Accordingly, Count VI fails to state a section 502(a)(3) claim against Stout.

### B.  The Complaint Fails to Plead a State Law Aiding and Abetting Claim.

Similarly, the Complaint fails to state an aiding and abetting claim under Delaware law.[30] "In order to be found liable for aiding and abetting a breach of a fiduciary duty, one must demonstrate that the party knew that the other's conduct constituted a breach of a fiduciary duty and gave substantial assistance or encouragement to the other in committing that breach."  *In re Broadstripe, LLC*, 444 B.R. 51, 107 (Bankr. D. Del. 2010).  There are four elements to a claim of aiding and abetting a breach of fiduciary duty: "(i) the existence of a fiduciary relationship; (ii) a breach of the fiduciary's duty; (iii) knowing participation in that breach by the defendant; and (iv) damages proximately caused by the breach."  *Id.*.  At minimum, the Complaint fails to plausibly allege the third and fourth elements of this cause of action.[31]

---

[30] To the extent Plaintiff brings Count VI under state law, Delaware law applies.  "[A] federal court applies the choice of law principles of the state in which it sits."  *In re PMTS Liquidating Corp.*, 452 B.R. 498, 507 (Bankr. D. Del. 2011).  "In deciding disputes between and among corporate actors, Delaware subscribes to the internal affairs doctrine, a conflict of laws principle under which the internal affairs of a corporate entity are governed by the laws of the state of incorporation." *Enzo Life Scis., Inc. v. Adipogen Corp.*, 82 F. Supp. 3d 568, 597 (D. Del. 2015) (quoting *Xcell Energy & Coal Co., LLC v. Energy Inv. Grp., LLC*, No. 8652-VCN, 2014 WL 2964076 at *3 (Del. Ch. June 30, 2014)).  "Claims implicating an entity's internal affairs include . . . aiding and abetting [a breach of fiduciary duty]." *Id.* (internal quotations omitted).
[31] Stout does not concede that Plaintiff has plausibly alleged that there was a breach of any

"Knowing participation has been described as a 'stringent' standard that turn[s] on proof of scienter." *Lee v. Pincus*, No. CV 8458-CB, 2014 WL 6066108, at *13 (Del. Ch. Nov. 14, 2014) (internal quotations omitted) (alteration in original); *see also In re Santa Fe Pacific Corp. Shareholder Litig.,* 669 A.2d 59 (Del. 1995) (holding conclusory allegations of knowledge and participation in breaches of fiduciary duty to be insufficient under Rule 12(b)(6)). An aider and abettor must act "knowingly, intentionally, or with reckless indifference; that is, with an illicit state of mind." *RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015) (quotations omitted). Allegations that a professional, such as Stout, engaged in "routine" services without pleading facts "suggesting why and how" it used its position to aid and abet the alleged breaches of fiduciary duty do not support an inference of "knowing participation." *See Zazzali v. Hirschler Fleischer, P.C.*, 482 B.R. 495, 519 (Bankr. D. Del. 2012) (citing *Morgan v. Cash*, No. 5053, 2010 WL 2803746, at *4-8 (Del. Ch. July 16, 2010)). A plaintiff may plead knowing participation by alleging facts that support the inference that the defendant would profit in some way from the breach or through direct factual allegations that the defendant sought to induce the breach. *In re Telecommunications, Inc. Shareholders Litig.*, No. A-16470, 2003 WL 21543427, at *2 (Del. Ch. July 7, 2003).

The Complaint fails plausibly to plead "knowing participation" in support of a state law aiding and abetting claim for the same reasons it fails to plead "knowing participation" under ERISA. *See supra* at Part IV.A. The Complaint pleads no facts that lead to an inference that Stout did anything other than perform valuations for the Trustee pursuant to the terms of its engagement agreements. *Cf. Zazzali*, 482 B.R. at 519; *Morgan*, 2010 WL 2803746, at *4-8. Stout met with management and relied on the assumptions and information they provided to it,

---

fiduciary duties by the directors, officers, or Argent.

which Appvion's management agreed, by signing the engagement agreements, would be "accura[te] and complete[]." *See, e.g.*, Ex. 1, Stout Engagement Agreement (6/20/2013), at A.3. The Complaint does not plausibly plead any facts from which it could reasonably be inferred that Stout knew that this information was "manipulated" or was the result of management "incompetence." *See Zazzali*, 482 B.R. at 519 (finding allegation that defendant law firm must have known that corporate insiders were committing fraud and breaching their fiduciary duties based on "numerous and glaring misstatements in the PPMs [(private placement memorandums)] . . . [wa]s unsupported," because the plaintiff "failed to plead any fact giving rise to a reasonable inference that Defendant was aware that the PPMs did not contain factually accurate financial information"). While the Complaint points out—with the benefit of hindsight—purported errors in Stout's work, the Complaint pleads no facts in support of the contention that such alleged errors were purposeful or that Stout was acting in concert with Appvion's management. *See supra* at Part IV.A.2.

Moreover, the Complaint does not allege ***why*** Stout would have engaged in such conduct. As previously stated, *see supra* at Part IV.A.2, Stout had no motive or incentive to engage in unlawful conduct, unlike the Company's directors and officers. Stout was paid a fixed fee for services rendered—which has not been alleged to be excessive or unreasonable—that did not change during the relevant time period. This does not support a reasonable inference of knowing participation. *See Lee*, 2014 WL 6066108, at *14 ("It is not reasonable to infer here that, simply by receiving fees (that are not alleged to be unreasonable) for acting as underwriters in the secondary offering, that Underwriter Defendants 'participated in the [Zynga] board's decisions, conspired with [the] board, or otherwise caused the board to make the decisions at issue.") (alterations in original).

Further, the Complaint fails to allege facts that plausibly plead proximate cause. "To establish proximate cause, 'a plaintiff must show that the result would not have occurred "but for" the defendant's action.'" *RBC Capital Markets*, 129 A.3d at 864. A proximate cause is one "which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the results would not have occurred." *Russell v. K-Mart Corp.*, 761 A.2d 1, 5 (Del. 2000). "In order to break the causal chain, the intervening cause must also be a superseding cause, that is, the intervening act or event itself must have been neither anticipated nor reasonably foreseeable by the original tortfeasor." *Duphily v. Del. Elec. Coop., Inc.*, 662 A.2d 821, 829 (Del. 1995). A court may decide proximate causation as a matter of law if there can be "no reasonable difference of opinion as to the conclusion to be reached on the question of whether an intervening cause is abnormal, unforeseeable, or extraordinarily negligent . . . ." *Id.* at 831.

Here, the Complaint alleges a lengthy chain of events that ultimately led to the Plaintiff's purported injury. Stout prepared the valuations using information provided by Appvion's management that was either purposefully manipulated or the result of "managerial and/or supervisory incompetence," Compl. ¶ 11, even though Appvion's management agreed to provide Stout with "accura[te]" "assumptions and information," *see, e.g.,* Ex. 1, Stout Engagement Agreement (6/20/2013), at A.3; the Trustee reviewed and adopted those valuations (with the ESOP Committee overseeing the Trustee's work), Compl. ¶¶ 76, 97; the "inflated" valuations were then used to set prices for the purchases and sales of PDC stock, *id.* ¶ 16; because the ESOP "frequently" did not have enough cash to fund the cost of ESOP distributions at the "inflated" stock prices, the ESOP borrowed money from PDC, *id.* ¶ 95; Appvion's management breached their fiduciary duties to the Company by extending credit from Appvion to PDC in the form of

intercompany loans, so that PDC could in turn lend money to the ESOP, *id.*, Count III; in at least

one instance, Appvion's management breached their fiduciary duties to the Company by

forgiving an intercompany note from Appvion to PDC for no consideration, *id.* ¶ 18, Count II;

Appvion, in turn, borrowed money from its lenders to fund its loans to PDC, *id.* ¶ 96; the

"outflow" of money from Appvion "had a ripple effect" on the business, "***playing a role*** in the

Debtors' decision to sell" the Encapsys business unit, *id.* ¶ 16 (emphasis added); this in turn put

"increasing demands on cash flow" and "saddl[ed] the Debtors" with a "doomed capital

structure." *Id.* All of this supposedly somehow led to Appvion's bankruptcy and Plaintiff's

injury.

This chain of events includes multiple superseding causes, and there could be no

"reasonable difference of opinion" as to their foreseeability. *Cf. Russell*, 761 A.2d at 5. It

certainly was not foreseeable to Stout that Appvion's management would supply it with

information that was not accurate and complete, contrary to the terms of its engagement

agreements. It certainly was not foreseeable that they would do so to enrich themselves.

Further, it was not foreseeable to Stout that Appvion's management would commit breaches of

fiduciary duty when deciding that Appvion should loan money to PDC to fund ESOP

distributions and, in at least one instance, forgive a loan from Appvion to PDC for no

consideration. *Cf.* Restatement (Second) of Torts § 448 (1965) ("The act of a third person in

committing an intentional tort or crime is a superseding cause of harm to another resulting

therefrom, . . . unless the actor at the time of his negligent conduct realized or should have

realized the likelihood that such a situation might be created."). It also was not foreseeable to

Stout that Appvion's management would decide to sell a key business unit and revenue driver as

a result of the Company's debt obligations, which included ***but were not limited to*** its loans to

PDC to fund ESOP distributions.  Indeed, the Complaint acknowledges that the ESOP

obligations *"play[ed] a role"* in the decision to sell the Encapsys business unit but were not the

primary reason for that decision.  *See* Compl. ¶ 16.  This is far from a "natural and continuous

sequence."  *Cf. Russell*, 761 A.2d at 5.  No reasonable person could come to the conclusion that

Stout's conduct was the "but for" cause of Plaintiff's purported injury, when, on the face of the

Complaint, there were multiple acts and events by other actors that were unforeseeable to Stout.

Accordingly, to the extent Plaintiff's claim sounds in state law, it should be dismissed.

## V.    THE CLAIM AGAINST STOUT IS PARTIALLY TIME BARRED.

Regardless of whether Plaintiff's Complaint against Stout is an ERISA claim or sounds in

state law, it is partially time barred.  The statute of limitations for a fiduciary breach under

ERISA is the earlier of (1) six years from the last action constituting part of the breach or, in the

case of an omission, the latest date on which the fiduciary could have cured the breach or (2)

three years after the earliest date on which the plaintiff had actual knowledge of the breach.  29

U.S.C. § 1113.  In the event of "fraud of concealment," the period is six years after the date of

discovery of the breach.  *Id.*

The statute of limitations for a claim of aiding and abetting a breach of fiduciary duty

under Delaware law is three years.  *See* 10 Del. C. § 8106; *see also Dubroff v. Wren Holdings,*

*LLC*, No. 3940, 2011 WL 5137175, at *12 (Del. Ch. Oct. 28, 2011) (applying three-year statute

of limitations to aiding and abetting breach of fiduciary duty claim).  The statute of limitations

begins to run when the plaintiff is on inquiry notice of the facts giving rise to the cause of

action.  *See Jepsco, Ltd. v. B.F. Rich Co.*, No. 7343, 2013 WL 593664, at *8 (Del. Ch. Feb. 14,

2013) (holding that the limitations period begins to run when "the plaintiff is *objectively* aware

of the facts giving rise to the wrong, *i.e.,* [when the plaintiff is] on inquiry notice") (alteration in

original).

33

Plaintiff does not allege that Stout engaged in fraudulent concealment, and thus has conceded that neither statute of limitations should be tolled on this basis. *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("[F]raudulent concealment, must be pleaded with particularity."); *In re ML/EQ Real Estate Partnership Litig.*, No. 15741, 1999 WL 1271885, at *1 (Del. Ch. Dec. 21, 1999) ("[I]t is, of course, the plaintiff's burden to plead facts to demonstrate that the statute of limitations was, in fact, tolled."). Thus, the only questions remaining are (1) to the extent the claim is an ERISA claim, when Plaintiff had "actual knowledge" of the breach; and (2) to the extent the claim sounds in state law, when Plaintiff had inquiry notice of the facts giving rise to the cause of action.

The Complaint extensively cites to the Plan, the Appvion ESOP Guide, and other publicly available information, such as PDC's SEC filings and Bloomberg, *see, e.g.*, Compl. ¶¶ 58, 77, 144, 276, 280—all of which the Company had access to at all times. Further, the Complaint cites to Stout's valuation reports and its engagement letters, *see, e.g.*, *id*. ¶¶ 88-90, 153-63, 168-73, 175-76 to which the Company, through the ESOP Committee, also had full access at all times. The ESOP Committee reviewed Stout's valuation reports and the bases for its valuations as part of its oversight of the Trustee. *See id.* ¶¶ 84, 174. Indeed, as the Complaint acknowledges, on at least one occasion, the ESOP Committee discussed the details of Stout's treatment of the Company's pension liability. *See id.* ¶ 174. All of this amounts to the Company's "actual knowledge" of the "material facts" necessary to understand that the Company had a claim against Stout under ERISA. *See Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992) ("[A]ctual knowledge of a breach or violation" requires that a "plaintiff have actual knowledge of all material facts necessary to understand that some claim exists."). It certainly establishes inquiry notice under Delaware law. *See Jepsco*, 2013 WL 593664, at *8.

Accordingly, a three-year statute of limitations applies to Plaintiff's claim, regardless of whether the claim sounds under ERISA or Delaware law.

Under Section 108(a) of the Bankruptcy Code, the Trustee may assert claims that were timely as of the date the petition was filed.  11 U.S.C. § 108(a); *see also In re Fruehauf Trailer Corp.*, 250 B.R. at 185.   Here, the Petition was filed on October 1, 2017.   Thus, the claim against Stout is barred to the extent it alleges violations that pre-date October 1, 2014.

## VI.    The Court Lacks Personal Jurisdiction Over Stout.

Federal Rule of Civil Procedure 12(b)(2), made applicable to this adversary proceeding by Bankruptcy Rule 7012, provides that lack of personal jurisdiction may be a defense to any complaint.  Bankruptcy Rule 7004(f), in turn, contains three requirements for a bankruptcy court to have personal jurisdiction over a party: (i) service of process has been made in accordance with Bankruptcy Rule 7004 or Federal Rule of Civil Procedure 4; (ii) the court has subject matter jurisdiction under Bankruptcy Code section 1334; and (iii) exercise of jurisdiction is consistent with the Constitution and laws of the United States.  *See* Fed. R. Bankr. P. 7004(f).

As set forth above, this Court lacks subject matter jurisdiction and, therefore, exercise of personal jurisdiction over Stout is not consistent with Bankruptcy Rule 7004(f).  Moreover, even though Plaintiff served the Complaint on Stout in accordance with Bankruptcy Rule 7004, exercise of jurisdiction in this case is not consistent with the Constitution.  The Third Circuit has held that "in the absence of a governing federal statute providing for nationwide service of process, *in personam* jurisdiction may not rest upon an alien defendant's aggregated contacts with the United States."  *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 300 (3d Cir. 1985) *cert. denied,* 474 U.S. 980 (1985) (emphasis added).  Thus, unless a federal statute provides for nationwide service of process, this Court would only have *in personam* jurisdiction if Stout had sufficient minimum contacts with the State of Delaware to satisfy Delaware's long-arm statute.

*See id.* No such federal statute exists and, thus, absent a showing of minimum contacts, this Court lacks personal jurisdiction over Stout.

Certain courts in this District have held that Bankruptcy Rule 7004(d), which authorizes service anywhere in the United States, constitutes "a governing federal statute providing for nationwide service of process" sufficient to satisfy *Max Daetwyler*.[32] These cases, respectfully, discounted the plain language of 28 U.S.C. §§ 2071-2077 (the "Rules Enabling Act"). The Rules Enabling Act provides, in pertinent part, as follows: "The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11 . . . ." 28 U.S.C. § 2075. Thus, by the plain language of the statute, the Supreme Court, not Congress, drafted and approved the Bankruptcy Rules. *See id.* As such, the Bankruptcy Rules are not statutes. *See Old Elec., Inc. v. RCP, Inc. (In re Old Elec. Inc.)*, 142 B.R. 189, 192 (Bankr. N.D. Ohio 1992) ("[I]t would seriously distort the text of Bankruptcy Rule 7004(e) to hold that Bankruptcy Rule 7004(d) is either a statute or an order."); *see also Car Care Center of Crystal Lake Ltd. v. Miller (In re Miller)*, 336 B.R. 408, 412 (Bankr. E.D. Wis. 2005) (distinguishing bankruptcy statutes, which are enacted by Congress, from bankruptcy rules, which are promulgated by the U. S. Supreme Court); *Scroggins v. BP Exploration & Oil (In re Brown Transp. Truckload, Inc.)*, 161 B.R. 735, 738 (Bankr. N.D. Ga. 1993) ("The Bankruptcy Code is a federal statute, while the [Bankruptcy Rules] are only rules established by the Bankruptcy Rules Committee.").

---

[32] *See, e.g., Tribune Media Servs. Inc. v. Beatty (In re Tribune Co.)*, 418 B.R. 116, 123 (Bankr. D. Del. 2009); *Klingher v. Salci (In re Tandycrafts, Inc.)*, 317 B.R. 287, 289 (Bankr. D. Del. 2004); *JNA-1 Corp. v. Uni-Marts, LLC (In re UniMarts, LLC)*, 404 B.R. 767, 775-76 (Bankr. D. Del. 2009); *MAS Litig. Trust v. Plastech Engineered Prods. (In re Meridian Auto Sys. Composite Operations, Inc.)*, No. 05-11168, 2007 WL 4322527, at *2-3 (Bankr. D. Del. Dec. 5, 2007).

Accordingly, because the Bankruptcy Rules are not a federal statute, this Court should not—and, indeed, cannot, consistent with due process—rely on Bankruptcy Rule 7004 for asserting personal jurisdiction over Stout. Instead, due process requires that Plaintiff establish that Stout has minimum contacts with the State of Delaware. *See Max Daetwyler*, 762 F.2d at 300 (rejecting the national contacts test and thereafter analyzing contacts with the forum state); *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945); *but see In re Fruehauf Trailer Corp.*, 250 B.R. at 200 (noting the split among the Circuit Courts of Appeals and predicting that "[w]hile not free from doubt, the Third Circuit Court of Appeals is likely to apply a national contacts test where the statute provides for nationwide service of process."); *In re Tandycrafts, Inc.*, 317 B.R. at 289 (holding that "[w]here service is made under Rule 7004(d), the defendant 'need only have minimum contacts with the United States to satisfy Fifth Amendment due process.'").

Plaintiff has not alleged that Stout has minimum contacts or, for that matter, any contacts with the State of Delaware. Nor could it. Stout has not filed a claim or otherwise appeared in the Bankruptcy Cases. Neither Stout entity is organized in Delaware. Stout Risius Ross, Inc. is a Michigan corporation. *See* Compl. ¶ 40. Stout Risius Ross, LLC is a Michigan limited liability corporation. *See id.* ¶ 41. Under *International Shoe* and its progeny, this lack of contact means that Plaintiff has failed to establish "minimum contacts" with Delaware or otherwise satisfy the Delaware long-arm statute. *See Max Daetwyler*, 762 F.2d at 293 ("The fifth amendment has been construed to impose a general fairness test incorporating *International Shoe's* requirement that 'certain minimum contacts' exist between the non-resident defendant and the forum 'such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'") (citing *Int'l Shoe Co.*, 326 U.S. at 315); *see also Kloth v. S. Christian Univ.*, Nos. 07-3376, 07-4598, 2008 WL 3165902, at n.1 (3d Cir. Aug. 5, 2008) ("The Delaware

long-arm statute, 10 Del. C. § 3104(c), confers jurisdiction to the maximum extent possible

under the due process clause.").  For this reason, as well, the Complaint should be dismissed with

respect to Stout.

## CONCLUSION

For all of the reasons stated above, the Complaint should be dismissed with prejudice as

to Stout.

By: */s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (Delaware Bar No. 4083)
Chipman Brown Cicero & Cole, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:  (302) 295-0191
Email:  desgross@chipmanbrown.com

-and-

Lars C. Golumbic, admitted *pro hac vice*
Groom Law Group, Chartered
1701 Pennsylvania Ave., NW, Suite 1200
Washington, DC 20006
Phone: (202) 861-6615
Email:  lgolumbic@groom.com

*Attorneys for Stout Risius Ross, Inc. and Stout
Risius Ross, LLC*

**EXHIBIT LIST**

| EXHIBIT | DESCRIPTION |
|:---:|:---|
| 1 | Stout Engagement Agreements (June 20, 2013; January 17, 2014; May 19, 2015; January 28, 2016; May 3, 2017) |
| 2 | PDC Valuation of Common Stock as of June 30, 2013 ("6/30/2013 FMV") |
| 3 | PDC Form 10-K for the year ended December 29, 2012 ("2012 10-K") |
| 4 | PDC Valuation of Common Stock as of December 31, 2015 ("12/31/2015 FMV") |
| 5 | PDC Valuation of Common Stock as of December 31, 2014 ("12/31/2014 FMV") |
| 6 | *Vigeant v. Meek*, No. 18-cv-577 (D. Minn.), Order (11/7/2018) (slip op.) |