**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| OLDAPCO, INC., *et al.,* | Case No.: 17-12082 (KJC) |
| Debtors. | (Jointly Administered) |
| ALAN D. HALPERIN AND EUGENE I. DAVIS, AS CO-TRUSTEES OF THE APPVION LIQUIDATING TRUST, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 18-50955-KJC |
| MARK R. RICHARDS *et al.,* | |
| Defendants. | |

## OPENING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Tara L. Lattomus (Bar I.D. No. 3515)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
222 Delaware Street, 7th Floor
Wilmington, DE  19801
Telephone: (302) 574-7400
Facsimile:  (302) 574-7401
tlattomus@eckertseamans.com

Michael L. Scheier (Ohio 0055512)
Brian P. Muething (Ohio 0076315)
Jacob Rhode (Ohio 0089636)
**KEATING MUETHING & KLEKAMP, PLL**
One East Fourth Street, Suite No. 1400
Cincinnati, Ohio 45202
Email:  mscheier@kmklaw.com
           bmuething@kmklaw.com
           jrhode@kmklaw.com
Tel:  (513) 579-6400
Fax:  (513) 579-6457

*Counsel for Argent Trust Company*

## TABLE OF AUTHORITIES

### Cases

*Aetna Health, Inc. v. Davila*,
542 U.S. 200 (2004) ............................................................................................... 6

*Antioch Co. Litig. Trust v. Morgan*,
456 B.R. 791 (Bankr. S.D. Ohio 2011) ............................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 16, 17, 20

*AstroPower Liquidating Tr. v. Xantrex Tech., Inc. (In re AstroPower Liquidating Tr.)*,
335 B.R. 309 (Bankr. D. Del. 2005) .................................................................... 17

*AT&T v. Empire Blue Cross & Blue Shield*,
No. 93-cv-1224, 1994 U.S. Dist. LEXIS 21091 (D.N.J. July 19, 1994) ................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 16, 17, 20

*Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l)*,
372 F.3d 154 (3d Cir. 2004) ................................................................................ 21

*Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*,
466 B.R. 626 (Bankr. D. Del. 2012) ............................................................... 17, 18

*Carter v. San Pasqual Fiduciary Tr. Co.*,
No. 15-cv-01507, 2016 U.S. Dist. LEXIS 163017 (C.D. Cal. Apr. 18, 2016) ......... 9

*Continental Ins. Co. v. Dawson*,
273 F. Supp. 3d 688 (N.D. Tex. Mar. 31, 2017) .................................................... 9

*Cumming v. Edens.*,
2018 Del. Ch. LEXIS 54 (Del. Ch. Feb. 20, 2018) ............................................. 13

*Gellert v. Coltec Indus. (In re Crucible Materials Corp.)*,
Nos. 09-11582, 11-53884, 2012 Bankr. LEXIS 5102 (Bankr. D. Del., Oct. 31, 2012) ......... 19

*Gobeille v. Liberty Mut. Ins. Co.*,
136 S. Ct. 936 (2016) .......................................................................................... 7, 8

*Goldstein v. BRT, Inc. (In re Universal Mktg.)*,
460 B.R. 828 (Bankr. E.D. Pa. 2011) ............................................................. 18, 19

*Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*,
623 F. Supp. 2d 568 (D.N.J. 2009) ........................................................................ 9

*In re Dole Food Co., Stockholder Litig.*,
No. 9079-*VCL*, 2015 Del. Ch. LEXIS 223 (Del. Ch. Aug. 27, 2015) .................... 12

*In re Image Masters, Inc.*,
    421 B.R. 164 (Bankr. E.D. Pa. 2009) ................................................................. 17

*In re Mortg. Elec. Registration Sys., Inc.*,
    754 F.3d 772 (9th Cir. 2014) ............................................................................ 21

*In re Rural Metro Corp. Stockholders Litig.*,
    88 A.3d 54 (Del. Ch. 2014) ......................................................................... 13, 14

*In re Santa Fe Pac. Corp. Shareholder Litig.*,
    669 A.2d 59 (Del. 1995) .................................................................................... 14

*In re Worldwide Direct, Inc.*,
    280 B.R. 819 (Bankr. D. Del. 2002) .................................................................. 11

*In re Xura, Inc. Stockholder Litig.*,
    2018 Del. Ch. LEXIS 563 (Del. Ch. Dec. 10, 2018) .......................................... 13

*Ingersoll-Rand Co. v. McClendon*,
    498 U.S. 133 (1990) ....................................................................................... 6, 7

*Lawrence v. Bank of Am., N.A.*,
    455 F.App'x 904 (11th Cir. 2012) ...................................................................... 16

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .......................................................................... 12, 13

*Matthew v. Laudamiel*,
    2015 Del. Ch. LEXIS 247 (Sept. 28, 2015) ....................................................... 12

*McFall v. Stacy & Witbeck, Inc.*,
    No. 14-cv-04150, 2016 U.S. Dist. LEXIS 148399 (N.D. Cal., Oct. 26, 2016) ............... 15, 16

*McLemore v. Regions Bank*,
    Nos. 08-cv-0021, 08-cv-1003, 2010 U.S. Dist. LEXIS 25785, 2010 WL 1010092 (M.D. Tenn.
    Mar. 18, 2010) .................................................................................................. 9

*Menkes v. Prudential Ins. Co. of Amer.*,
    762 F.3d 285 (3d Cir. 2014) ............................................................................... 6

*Miller v. Mitsubishi Digital Electronics Amer., Inc. (In re Tweeter Opco)*,
    452 B.R. 150 (Bankr. D. Del. 2011) .................................................................. 20

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ........................................................................................... 7

*Nymex S'holder Litig. v. New York Mercantile Exch., Inc.*,
    2009 Del. Ch. LEXIS 176 (Del. Ch. Sept. 30, 2009) .................................... 14-15

*Pardo v. Avanti Corp. Health Sys. (In re APF Co.)*,
    274 B.R. 634 (Bankr. D. Del. 2004) .................................................................. 20

*Pardo v. Gonzaba (In re APF Co.)*,
   308 B.R. 183 (Bankr. D. Del. 2004) ............................................ 19

*Pilot Life Ins. Co.*,
   481 U.S. 41 (1987) ............................................................... 7

*Pryor v. National Collegiate Athletic Assoc.*,
   288 F.3d 548 (3d Cir. 2002) ............................................... 3, 5

*RBC Capital Mkts. LLC v. Jervis*,
   129 A.3d 816 (Del. 2015) .................................................. 13

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*,
   768 F.3d 284 (3d Cir. 2014) ................................................. 3

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983) ............................................................ 6

*Singh v. Attenborough*,
   137 A.3d 151 (Del. 2016) .................................................. 13

*Stewart v. Wilmington Trust SP Servs.*,
   112 A.3d 271 (Del. Ch. 2015) ............................................. 16

*Zayed v. Associated Bank, N.A.*,
   779 F.3d 727, 735 (8th Cir. 2015) ....................................... 16

## Statutes

11 U.S.C. § 544 .................................................................. 16, 17, 18

11 U.S.C. § 548 .................................................................. 16, 17, 18

26 U.S.C. § 409 ......................................................................... 5

26 U.S.C. § 4975 ....................................................................... 5

29 U.S.C. § 1002 ....................................................................... 5

29 U.S.C. § 1104 ....................................................................... 5

29 U.S.C. § 1132 ....................................................................... 6

29 U.S.C. § 1144 ............................................................... 6, 7, 12

6 Del. C. Section 1301, *et seq.* ............................................... 16, 17

Wis. Stat. Section 242.01, et seq. ............................................ 16, 17

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY ......................................... 3

  A.  Factual Allegations in the First Amended Complaint........................................................... 3

  B.  Procedural History ............................................................................................................. 4

III.  ARGUMENT ................................................................................................................... 5

  A.  The Aiding and Abetting Claim Against Argent Is Preempted by ERISA.......................... 5

     1.   ERISA Preemption Background .................................................................................. 5

     2.   The Aiding and Abetting Claim is Preempted by ERISA ............................................ 7

  B.  If ERISA Preemption Does Not Apply, the Aiding and Abetting Claim Must be Dismissed
      on the Basis of Res Judicata Because It Was Not Preserved in the Plan of Liquidation.. 11

  C.  The Aiding and Abetting Claim Should Alternatively be Dismissed For Failure to State a
      Claim............................................................................................................................... 12

  D.  The Avoidance Claims Should Be Dismissed ................................................................. 16

     1.   Plaintiffs Failed to Plead a Constructive Fraudulent Transfer as a Matter of Law....... 16

     2.   The Preference Claim Should be Dismissed................................................................ 20

  E.  Joinder to Arguments of Co-Defendants ......................................................................... 21

IV.  CONCLUSION................................................................................................................ 21

On February 19, 2019, Plaintiffs filed their First Amended Complaint. The First Amended Complaint restated the state law tort claim of aiding and abetting against Argent Trust Company ("Argent") in Count V. The First Amended Complaint also alleges two new avoidance claims against Argent. In Count XII, Plaintiffs assert a preference claim, and in Count XIII, Plaintiffs assert a constructive fraudulent transfer claim. These two avoidance claims are purportedly brought under both the Bankruptcy Code and state law. Pursuant to Federal Rule 12(b)(6), the Court should dismiss all of Plaintiffs' claims asserted against Argent for failure to state a claim.[1]

## I.    **PRELIMINARY STATEMENT**

Argent Trust Company provides trustee services to pension and retirement plans, including ESOPs. In 2014 Appvion, Inc. ("Appvion") appointed Argent the trustee of the Appvion Retirement Savings and Employee Stock Ownership Plan ("Appvion ESOP"). In Count V, the Plaintiffs allege that Argent aided and abetted management in harming the Debtors by overvaluing the stock of Paperweight Development Corporation (Appvion's parent company) held in the Appvion ESOP. Argent was required to value the Paperweight Development Corporation stock twice a year under the Appvion ESOP and Argent's engagement and trust agreements with Appvion. The Plaintiffs make these allegations even though Argent valued the Paperweight Development Corporation stock materially lower than the Appvion ESOP's predecessor trustees had, had nothing to gain by virtue of this alleged wrongdoing, and as a matter of law owed no duties to anyone other than the Appvion ESOP.

---

[1] As noted in the Motion, pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Argent does not consent to entry of a final order or judgment by the bankruptcy court on any of the Plaintiff's claims addressed in the Motion and this Opening Brief.  Rather, the relief sought from this Court is to dismiss Plaintiff's claims against Argent and to submit proposed findings and conclusions to the district court consistent with 28 U.S.C. section 157(c)(1).

That aside, Plaintiffs' claims against Argent fail as a matter of law for the following reasons:

1.     The aiding and abetting claim is preempted by ERISA. ERISA preempts state law as it relates to an employee benefit plan like the Appvion ESOP. The purpose of ERISA is to have a single body of law govern employee benefit plans and the conduct of ERISA fiduciaries like Argent, and not a hodgepodge of 50 states' trust and tort laws. Here the Plaintiffs use state common law as the benchmark for determining whether Argent properly valued the stock held in the Appvion ESOP. This valuation was required by the Appvion ESOP (as the Plaintiffs acknowledge) and applicable law, and is a core fiduciary function, the performance of which is central to proper ESOP administration. The Plaintiffs' challenge to Argent's work for the Appvion ESOP seeks to judge Argent's fiduciary conduct under state law in just the way that ERISA preempts.

2.     If not preempted by ERISA, the aiding and abetting claim was not properly preserved in the Plan of Liquidation and is therefore barred by *res judicata*.

3.     The Plaintiffs' aiding and abetting claim should also be dismissed because it fails to allege sufficient facts to state a claim for two other reasons. First, the Plaintiffs have not and cannot allege the requisite "knowing participation" by Argent. Second, the Plaintiffs did not and cannot allege that the trustee and valuation services Argent provided to the Appvion ESOP constitute sufficient assistance to the underlying alleged tortfeasors to state an aiding and abetting claim.

4.     The two avoidance claims should also be dismissed. Plaintiffs have effectively plead that the Debtors received reasonably equivalent value for the targeted transfers in Count XIII. As detailed below, Plaintiffs allege that Argent received the allegedly voidable transfers pursuant to two pre-petition Trustee Letter Agreements between Argent and Appvion, one of the

Debtors. As such, Plaintiffs' allegations, taken as true, concede that Appvion received reasonably equivalent value from Argent as a matter of law – and have therefore failed to plead a basic element of a fraudulent transfer claim in Count XIII. As for the preference claim in Count XII, Plaintiffs have failed to plead sufficient facts to state a preference claim against Argent under the Supreme Court's *Iqbal* and *Twombly* cases.

In conclusion, Plaintiffs have failed to state any claims against Argent. The Court should therefore dismiss Counts V, XII, and XIII pursuant to Federal Rule 12(b)(6) and submit proposed findings and conclusions to the district court. 28 U.S.C. section 157(c)(1).[2]

## II.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

### A.    Factual Allegations in the First Amended Complaint

As it must, Argent accepts as true the allegations in the First Amended Complaint solely for the purposes of the Motion.

In late 2001, more than 90% of the Debtors' employees invested certain funds to allow Appvion's ESOP to purchase 100% of the equity of Paperweight Development Corporation ("PDC"), the holding company that owned Appvion. (First Amended Complaint ("FAC") ¶¶ 66-69.) In the years following the 100% ESOP transaction, PDC's share price rose significantly, from approximately $10 per share to a high of $33.41 per share in 2008. (FAC Figure 10, p. 53.)

Under ERISA and the terms of the Appvion ESOP, the ESOP trustee is required to value PDC stock twice a year. (FAC ¶¶ 89, 100.)[3] Argent was the successor to the successor trustee of

---

[2]  *See* Fed. R. Bank. P. 7012(b) (incorporating Federal Rule 12(b)(6) into adversary proceedings).

[3] *See* **Ex. 1** (Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan, effective January 1, 2014, at § 1.80); **Ex. 2** (Amended and restated trust agreement for the Appleton Papers Inc. Employee Stock Ownership Trust, eff. as of Apr. 1, 2013) *and* **Ex. 3** (Appvion, Inc. Employee Ownership Trust, as amended and restated eff. Aug. 3, 2015). The Court may consider these documents on this Rule 12(b)(6) Motion because they are referenced in, and central to, the First Amended Complaint (*e.g.* FAC ¶¶ 89, 92-95). *Pryor v. National Collegiate*

the Appvion ESOP: Argent was retained in 2014 (FAC ¶ 92) to replace Reliance Trust Company

which had replaced the original trustee, State Street Global Advisors. (FAC ¶ 94.)[4] Reliance had

used the leading professional valuation firm of Stout to assist Reliance in valuation of the PDC

stock in the Appvion ESOP (FAC ¶ 102.) Argent continued to use Stout when Argent became

trustee in 2014. (FAC ¶ 108.)

The first value determination of PDC stock for which Argent was responsible was the June

2014 valuation. That valuation was a nickel per share higher than the one Reliance reached six

months prior, about 10% lower than the valuation a year earlier, and half of the all-time high. The

second valuation Argent performed was the December 2014 valuation, which dropped the PDC

share price nearly a third, to $11 per share.

### B.    Procedural History

On October 1, 2017, the Debtors filed their bankruptcy petitions. Pursuant to a certain

settlement and the Plan of Liquidation, the Appvion Liquidating Trust was created. The

Liquidating Trust is generally permitted to pursue certain Litigation Claims of the Debtors. The

Liquidating Trust is not permitted under the plan or governing law to pursue claims arising under

ERISA.

The Plaintiffs filed this lawsuit on November 30, 2018, and amended their complaint on

February 19, 2019. The Plaintiffs challenge the methodologies that Stout, as Argent's financial

---

*Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir. 2002) (citing Miller, 27A Fed. Proc. § 62.508);
*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284,
291 (3d Cir. 2014) (considering "Plan contracts and supporting documents" in appeal of Rule
12(b)(6) dismissal of ERISA suit).

[4] **Ex. 4** (Apr. 1, 2013 Trustee engagement letter between Reliance Trust Company and
Appleton Papers, Inc.) and **Ex. 5** (Trustee engagement letter between Argent and Appvion as
of May 26, 2015). The Trustee engagement letter effective as of April 1, 2013 was initially
applicable to Argent based on the 2014 sale of Reliance to Argent. Exhibits 4 and 5 will be
collectively referred to as the "Trustee Letter Agreements".

advisor, used in connection with the fair market value determinations that Argent was required to make and deliver bi-annually to the Appvion ESOP. Indeed, the bulk of the First Amended Complaint consists of valuation methodology challenges. (e.g. FAC ¶¶ 200-347.) The Plaintiffs further contend that the Debtors' former officers and directors used allegedly inflated valuations of PDC stock to direct excessive compensation to themselves.

Just days prior to the filing of this lawsuit, the ESOP Administrative Committee for the Appvion ESOP filed suit in the United States District Court for the Eastern District of Wisconsin, Case 1:18-cv-01861-WCG (the "Wisconsin Litigation") against all of the defendants to this adversary proceeding and about 30 additional individuals or entities. The Wisconsin Litigation contains 19 causes of action, including six against Argent. Among the claims against Argent are claims for violations of ERISA. An important aspect of the claims in the Wisconsin Litigation is the allegation that the ESOP trustees overvalued the PDC stock. Like here, the Appvion ESOP seeks to hold Argent, as ESOP trustee, liable for some of these alleged overvaluations.[5]

## III.   ARGUMENT

### A.   The Aiding and Abetting Claim Against Argent Is Preempted by ERISA

#### 1.   ERISA Preemption Background

An Employee Stock Ownership Plan ("ESOP") is a defined contribution plan under 26 U.S.C. § 4975(e)(7) that allows participants to make investments in employer securities. 26 U.S.C. § 409(l)(1). As such, an ESOP is an individual account plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). ERISA § 3(34) (29 U.S.C. § 1002(34)). "Argent served as the ESOP Trustee" (FAC ¶ 412) of the Appvion ESOP and was an ERISA fiduciary as defined

---

[5] The Court may take judicial notice of the pleadings in the Wisconsin Litigation on a Rule 12(b)(6) motion to dismiss.  *See Pryor*, 288 F.3d at 560.

by ERISA section 3(21) (29 U.S.C. § 1002(21)). Argent's duties were therefore governed exclusively by ERISA and to be exercised "solely in the interest of the [ESOP] participants and beneficiaries." ERISA § 404(a) (29 U.S.C. § 1104(a)). Argent accordingly owed a duty only to the Appvion ESOP and not to the Debtors, their boards of directors, or company management.

ERISA is a "comprehensive legislative scheme," which includes an "integrated enforcement mechanism." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). Civil enforcement of the duties of an ERISA fiduciary like Argent is available only pursuant to ERISA section 502(a) (29 U.S.C. § 1132(a)). That section permits only participants, beneficiaries, and other ERISA fiduciaries to challenge fiduciary conduct, seek equitable relief, or assert claims for breach of fiduciary duty, but the Plaintiffs are none of these.

Through ERISA, Congress sought "to provide a uniform regulatory regime over employee benefit plans." *Id*. "To this end, ERISA includes expansive" preemption provisions, "which are intended to ensure that employee benefit plan regulation" is an "exclusively federal concern." *Id*. (citing *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). A principal way of enforcing this Congressional intent is ERISA's express preemption clause (section 514(a)) which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Preempted claims should be dismissed in response to a Rule 12(b)(6) motion. *Menkes v. Prudential Ins. Co. of Amer.*, 762 F.3d 285, 295-96 (3d Cir. 2014).

The Supreme Court has noted that section 514(a) "is conspicuous for its breadth" and employs "deliberately expansive language." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (internal quotations and citations omitted). When analyzing express preemption under section 514(a), the "key . . . is found in the words 'relate to.'" *Id*. A "law 'relates to' an employee

benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll-Rand Co.*, 498 U.S. at 139 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)).

"[T]o underscore its intent that section 514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be pre-empted." *Id*. Pursuant to section 514(c)(1), the "term 'State law' includes all laws, decisions, rules, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1); *see also Pilot Life Ins. Co.*, 481 U.S. at 47-48 (noting that common-law causes of action like the Plaintiffs' aiding and abetting claim that "relate to" an employee benefit plan fall under ERISA's express preemption clause).

As relevant here, ERISA preempts "a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting *Egelhoff v. Egelhoff*, 532 U. S. 141, 148 (2001)). Because ERISA establishes the requirements for employee benefit plans, the standards of conduct for maintaining and administering employee benefit plans, and the remedies and sanctions for violations of those requirements and standards, "state laws providing alternative enforcement mechanisms" have an impermissible connection with ERISA and are therefore preempted. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995).

### 2.    The Aiding and Abetting Claim is Preempted by ERISA

The aiding and abetting claim against Argent in Count V is preempted under the foregoing principles. The Plaintiffs' allegations "relate to" a benefit plan because they challenge Argent's conduct in discharge of duties as trustee which are governed by ERISA. The only act of alleged

wrongdoing that the Plaintiffs have asserted against Argent—alleged flaws in valuation of PDC's common stock—occurred in Argent's "role as the ESOP Trustee." (FAC ¶ 413.) Indeed the Plaintiffs acknowledge that "the ESOP required the ESOP Trustee" to make a determination of fair market value of the shares twice a year (FAC ¶ 89) and therefore the valuation work directly impacts and is required by the Appvion ESOP.[6]

Accordingly, the Plaintiffs' claims here impermissibly seek to use state law to challenge Argent's work in connection with valuation, a "central matter of plan administration." *Gobeille*, 136 S. Ct. at 943 (2016). Again, Plaintiffs acknowledge as much, alleging that "the biannual [Fair Market Value] Determination served several crucial functions related to the administration of the ESOP…[.]" (FAC ¶ 112.) Indeed these fair market value determinations were used for the most basic and central parts of plan administration, including in connection with "contributions to the ESOP," "distributions to ESOP participants," and management and "estimate [of] the upcoming repurchase obligations under the ESOP." (FAC ¶ 113.) It is hard to imagine matters more central to plan administration.

That Plaintiffs are attempting to use state law improperly as an alternative enforcement mechanism is not a hypothetical concern. As noted above, a few days before this action was filed, Argent was sued in the Eastern District of Wisconsin with allegations that directly overlap—indeed are word-for-word in some instances—with the allegations in this matter. The plaintiff in the Wisconsin Litigation is the ESOP Administrative Committee for the Appvion ESOP and has asserted claims for violations of four different sections of ERISA. (*See Appvion, Inc. Retirement Savings and Employee Stock Ownership Plan v. Buth et al*, Case 1:18-cv-01861-WCG, (E.D.

---

[6] Where stock in an ESOP is not publicly traded, an independent valuation expert must perform a valuation of the stock at least once a year. *E.g.*, 26 U.S.C. § 401(28)(C). Argent hired Stout for this purpose.

Wis.).) Congress's fear of exposing ERISA fiduciaries to a non-uniform set of fiduciary principles is realized here unless Plaintiffs' claims against Argent are dismissed.

The analysis does not change because Plaintiffs have asserted an aiding and abetting theory of liability. Courts do not focus on the packaging of a plaintiff's complaint but whether, in substance, the claims in the complaint impermissibly seek to regulate ERISA fiduciary conduct. "Obviously, a plaintiff may not evade ERISA's enforcement provisions by characterizing its claims as arising under common law, as such a practice would 'elevate form over substance.'" *Horizon Blue Cross Blue Shield of N.J. v. E. Brunswick Surgery Ctr.*, 623 F. Supp. 2d 568, 578 (D.N.J. 2009) (quoting *Davila*, 542 U.S. at 214).

As a result, courts routinely have held that aiding and abetting claims are preempted under ERISA. *See, e.g.*, *AT&T v. Empire Blue Cross & Blue Shield*, No. 93-cv-1224, 1994 U.S. Dist. LEXIS 21091, *80, 1994 WL 16057794 (D.N.J. July 19, 1994) (holding aiding and abetting claim was preempted under section 514(a) where plaintiffs asserted fiduciary claims against defendants "based on their alleged status as ERISA plan fiduciaries."); *see also Continental Ins. Co. v. Dawson*, 273 F. Supp. 3d 688 (N.D. Tex. Mar. 31, 2017) (finding aiding and abetting breach of fiduciary duty claim fell within the scope of section 502(a) and was therefore preempted); *Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-cv-01507, 2016 U.S. Dist. LEXIS 163017 (C.D. Cal. Apr. 18, 2016) (holding aiding and abetting claim had an impermissible "connection with" an ERISA plan and was preempted under section 514(a)); *McLemore v. Regions Bank*, Nos. 08-cv-0021, 08-cv-1003, 2010 U.S. Dist. LEXIS 25785, 2010 WL 1010092 (M.D. Tenn. Mar. 18, 2010) (holding that aiding and abetting state law cause of action was "derivative of, and inseparable from" ERISA claims because the aiding-and-abetting claims "implicate[d] the relationships among

traditional ERISA plan entities" and because the claims "constitute[d] an alternate means for the [Bankruptcy] Trustee to pursue a remedy for what is, at its core an ERISA claim.").

A directly analogous case where a Bankruptcy Court dismissed claims for aiding and abetting on preemption grounds is *Antioch Co. Litig. Trust v. Morgan*, 456 B.R. 791 (Bankr. S.D. Ohio 2011). In *Antioch*, like here, a post-confirmation trustee sued three different entities that served as trustees of an ESOP on an aiding and abetting theory. On preemption grounds, the court dismissed the ERISA trustees. Noting that an "ESOP trustee holds a single fiduciary duty which runs to the ESOP, not to the company," the Bankruptcy Court found that an "ESOP trustee—when acting within its defined role—has no duty to a company, but has a single unwavering fiduciary duty to the ESOP's beneficiaries." *Id*. at 836. Because the complaint did "not contain a single allegation that" suggested that the ESOP trustee "made any decision, good, bad, or otherwise, outside of its fiduciary role as the ESOP trustee" and because the complaint did not indicate that the ESOP trustee "held any position, fiduciary or otherwise, with the Company," the court concluded that the "Complaint fail[ed] because it [sought] to change the role of the ESOP trustee in a way ERISA does not contemplate." *Id*. Accordingly, the Bankruptcy Court found that the "Complaint's allegations necessarily interfere[d] with the comprehensive ERISA enforcement scheme" and that the claims against the ESOP trustee were preempted. *Id*.

The Court should reach the same result here as in *Antioch*. Argent, as ESOP trustee, had *no* independent duty to the Debtors, not by contract or imposed by statute or common law. Indeed ERISA makes clear that Argent's duties ran solely to participants and beneficiaries. ERISA § 404. Therefore the Debtors (and the Plaintiffs asserting the Debtors' claims) have no standing to assert claims under ERISA against Argent and ERISA preempts attempts to regulate the conduct of an

ERISA fiduciary by use of state law, as Plaintiffs attempt to do here. The Court should dismiss the aiding and abetting claim against Argent in Count V as preempted by ERISA.

> ### B. If ERISA Preemption Does Not Apply, the Aiding and Abetting Claim Must be Dismissed on the Basis of Res Judicata Because It Was Not Preserved in the Plan of Liquidation

If the Court does not hold that the aiding and abetting claim against Argent is preempted, then the Court should dismiss the claim on the basis of *res judicata*.

It is well-settled that litigation claims may only be asserted post-confirmation if they are expressly reserved in a confirmed plan; otherwise, *res judicata* principles operate to bar the cause of action. *In re Worldwide Direct, Inc.*, 280 B.R. 819, 822 (Bankr. D. Del. 2002) ("Because a confirmation order must be accorded *res judicata* effect, courts have held that unless a plan expressly reserves the right to litigate a specific cause of action, confirmation of the plan will bar its assertion thereafter.") (citing *D&K Props. Crystal Lake v. Mutual Life Ins. Co.*, 112 F.3d 257 (7th Cir. 1997); *In re Kelley*, 199 B.R. 698 (9th Cir. B.A.P. 1996)).

Consider the reservation language in the Plan of Liquidation on which Plaintiffs rely. (FAC ¶ 366.) The Plan of Liquidation purports to reserve the following Litigation Claims:

> (a) all claims and Causes of Action related to or arising out of the ESOP that are not Direct ESOP Claims, (b) the Preserved D&O Claims, (c) all claims and Causes of Action arising under Chapter 5 of the Bankruptcy Code (other than Causes of Action that constitute Acquired Assets), and (d) all claims and Causes of Action against insiders of the Debtors.

There is no reasonable argument that the aiding and abetting claim against Argent is one of the claims identified in (b), (c), or (d). So the only possible theory for Plaintiffs would be in category (a), the claims related to the ESOP that are not Direct ESOP Claims.

Plaintiffs are thus in a bind from which they cannot escape. Their only way to argue that the claim against Argent is preserved by the Plan of Liquidation—and avoid the *res judicata* bar—

is to contend that it is "related to or aris[es] out of the ESOP." But arguing that Plaintiffs' claim against Argent is "related to or aris[es] out of the ESOP" means that the claim is unquestionably preempted by ERISA. 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan." ) (emphasis added). Whether preemption or *res judicata*, behind either door must be an order of dismissal.

### C.    The Aiding and Abetting Claim Should Alternatively be Dismissed For Failure to State a Claim

Were the Court to find the aiding and abetting claim against Argent not subject to preemption or *res judicata*, Argent should nevertheless be dismissed because the Plaintiffs fail to plead sufficient facts to state an aiding and abetting claim against Argent under the Supreme Court's *Twombly-Iqbal* line of cases.

Under Delaware law, to prevail on a claim for aiding and abetting, a plaintiff must establish that the defendant "knowingly participated in [the] breach" of the underlying tortfeasor. *Matthew v. Laudamiel*, 2015 Del. Ch. LEXIS 247, at *46 (Sept. 28, 2015); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).[7] The element of "knowing participation" requires that the alleged aider/abettor provide "substantial assistance" to the primary tortious actor. *E.g., In re Dole Food Co., Stockholder Litig.*, No 9079-VCL, 2015 Del. Ch. LEXIS 223, at *138-39 (Del. Ch. Aug. 27, 2015). Delaware courts apply the standard in Section 876(b) of the Restatement (Second) of Torts, stating that an alleged aider/abettor is liable "[f]or harm resulting to a third party from the tortious conduct of another" if that actor "knows that the other's conduct constitutes a breach of duty and

---

[7] Plaintiffs' allegations are insufficient to engage in an exhaustive choice of law analysis. Argent will cite Delaware law for its discussion of the aiding and abetting tort but reserves the right to argue that a different substantive law might apply. For the arguments advanced here, there is not a significant difference in the substantive law that might be applied.

gives substantial assistance or encouragement to the other so to conduct himself." *Id.* (citing Restatement (Second) of Torts § 876(b) (1979)).

Courts recognize that the knowledge standard "is a stringent one." *In re Xura, Inc. Stockholder Litig.*, 2018 Del. Ch. LEXIS 563, at *38 (Del. Ch. Dec. 10, 2018). Indeed, "[a]n adequate pleading of 'knowing participation' requires a pleading of scienter." *E.g., Cumming v. Edens.*, 2018 Del. Ch. LEXIS 54, at *58 (Del. Ch. Feb. 20, 2018). "To establish scienter, the plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally improper," and that he acted with "an illicit state of mind." *Id* (internal quotations and citation omitted). Put differently, the knowledge element "requires that the third party act[ed] with knowledge that the conduct advocated or assisted constitute[d] such a breach." *E.g., Malpiede*, 780 A.2d at 1097. This scienter standard "'makes an aiding and abetting claim among the most difficult to prove.'" *Cumming*, 2018 De. Ch. LEXIS 54 at *58-59 (quoting *RBC Capital Mkts. LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015)).

The Delaware Supreme Court has also explained that service providers and advisors are provided "a high degree of insulation from liability" for claims of aiding and abetting a tortfeasor's breach of fiduciary duty. *Singh v. Attenborough,* 137 A.3d 151, 152 (Del. 2016). "In essence, the aider and abettor standard affords the advisor a form of protection by insulating it from liability unless it acts with *scienter*." *RBC Capital Mkts.,* 129 A.3d at 875. However, one way in which a plaintiff may show that an advisor acted with scienter is through "evidence of a conflict of interest diverting the advisor's loyalties from its client, such that the advisor . . . is being paid in some fashion something he would not otherwise get in order to assist in the breach of duty." *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 100 (Del. Ch. 2014) (internal quotations and citation omitted).

The Plaintiffs offer *no* allegation that Argent acted with scienter or with an "illicit state of mind." *Cumming*, 2018 De. Ch. LEXIS 54 at *58. Nor is there any allegation or fair inference that Argent acted with scienter. Indeed it strains all credulity to think that a professional trustee company—and individuals dedicating their professional careers to service of ESOPs—would purposefully overvalue a stock for no identifiable reason, particularly when they had nothing to gain from the alleged wrongful conduct. *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d at 100. That three different professional, independent trustees with no incentive to do so—along with the leading valuation firm they hired that similarly had no incentive to do so—conspired with a board of directors and management team that changed in composition, and all this occurred over a 15-year period is extraordinarily implausible. In fact, the only plausible and logical inference from the facts alleged is that a professional trustee with no stake in the outcome and no reason for doing so would *not* knowingly engage in wrongful conduct.

With no factual support, the Plaintiffs are left to generalized conclusory statements. An example is in the claim for relief against Argent, paragraph 413, where the Plaintiffs allege, "Rather than urge [] against the inflation of financial projections, Argent and Stout resolved to merely adjust for assessed riskiness in the discount rate (in the DCF model). As such, Argent knew [other defendants] were [] breaching their fiduciary duties of care and loyalty by purposeful overvaluing PDC's common stock…[.]" Such conclusory statements are insufficient to overcome a motion to dismiss. *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995) (affirming dismissal of aiding and abetting claim under Rule 12(b)(6) because plaintiff "fail[ed] to allege any facts" and "merely include[d] a conclusory statement" that defendant had knowledge of the other defendants' tortious conduct); *Nymex S'holder Litig. v. New York Mercantile Exch., Inc.*, 2009 Del. Ch. LEXIS 176, at *48 (Del. Ch. Sept. 30, 2009) ("With regard to the third

14

element—knowing participation—conclusory allegations such as 'aiding and abetting defendant had knowledge of the fiduciary defendants' fiduciary duties and knowingly and substantially participated and assisted in the fiduciary defendants' breaches of fiduciary duty . . .' are insufficient as a matter of law.") (internal brackets omitted).

Past that, it takes a gigantic leap—one much too far—to infer that Appvion's financial projection history provided knowledge to Argent that officers and directors had breached their fiduciary duty. Past is not necessarily prologue; that Appvion missed a financial target one year does not mean it will miss the target the following year. But that aside, the First Amended Complaint alleges that Argent and Stout did in fact consider the projection history and did "adjust for assessed riskiness" related to Appvion's projections. (FAC ¶ 413.) So even Plaintiffs acknowledge that Argent considered and addressed in a way that would have *lowered* the stock price. That this allegation comes in the Plaintiffs' complaint alleging that Argent aided other defendants by inflating the share price shows the implausible nature of the First Amended Complaint.[8]

In addition to failing to allege scienter and knowledge, the Plaintiffs also fail to allege that Argent provided substantial assistance to the alleged torfeasors by providing trustee services, including stock valuation, to the Appvion ESOP. Courts routinely hold that a professional services firm—like a valuation company, an accountant, or a trust company—does not provide needed assistance to the underlying tortfeasor where, as here, the service provider "'had no authority to

---

[8] Moreover, "'that a company is [misstating its financial status] does not necessarily mean that the company's principals are looting it . . . *[S]uspicion and surmise do not constitute actual knowledge.*'" *McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2016 U.S. Dist. LEXIS 148399, *20 (N.D. Cal., Oct. 26, 2016) (emphasis in original) (quoting *In re Sharp Int'l Corp.*, 281 B.R. 506, 515 (Bankr. E.D.N.Y. 2002)) (dismissing aiding and abetting claims against valuation advisor).

influence the affairs of the primary tortfeasor and had the [service provider] quit upon learning the primary tortfeasor's irregular financial practices, [the primary tortfeasor] could simply have hired a less astute accountant or bookkeeper.'" *McFall*, 2016 U.S. Dist. LEXIS 148399 at *22 (quoting *Mendelsohn v. Capital Underwriters, Inc.*, 490 F. Supp. 1069, 1084 (N.D. Cal. 1979); *see also, e.g.*, *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 735 (8th Cir. 2015) ("In addressing aiding and abetting liability in cases involving professionals, most courts have recognized that 'substantial assistance' means something more than the provision of routine professional services.") (citations omitted); *Lawrence v. Bank of Am., N.A.*, 455 F.App'x 904, 907 (11th Cir. 2012) (same); *Stewart v. Wilmington Trust SP Servs.*, 112 A.3d 271, 323 (Del. Ch. 2015) (same).

The well-known pleading standards of *Twombly* and *Iqbal* require more than the threadbare "aiding and abetting" facts in the First Amended Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). It should therefore be dismissed as against Argent on this alternative ground.

### D.    The Avoidance Claims Should Be Dismissed

#### 1.    Plaintiffs Failed to Plead a Constructive Fraudulent Transfer as a Matter of Law

In Count XIII, Plaintiffs assert a constructive fraudulent transfer claim against Argent pursuant to Bankruptcy Code sections 544(b), 548(a)(1)(B) and 550. Under Code section 548(a)(1)(B) a transfer is avoidable only if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." 11 U.S.C. § 548(a)(1)(B). Section 544(b) provides to the bankruptcy trustee the right to avoid a transfer to the same extent that a present unsecured creditor could avoid such transfer under state law. 11 U.S.C. § 544(b)(1). Plaintiffs base their Code section 544(b) claim upon the Uniform Fraudulent Transfer Act (UFTA) as enacted under both Delaware law (6 Del. C. Section 1301, *et seq.*) and Wisconsin law (Wis. Stat. Section

242.01, *et seq.*). Like Code section 548(a)(1)(B), the UFTA provides that a transfer is avoidable only when a debtor made such transfer "without receiving a reasonably equivalent value in exchange for the transfer." 6 Del. C. § 1304(a)(2); Wis. Stat. § 242.04(1)(b).

Accordingly, to assert a claim for constructive fraudulent transfer, whether brought under Code section 548(a)(1)(B) or section 544(b), Plaintiffs "must allege facts supporting [ ] that the debtor did not receive reasonably equivalent value." *Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 660 (Bankr. D. Del. 2012). "Value," for the purposes of both Code section 548(a)(1)(B) and the UFTA under section 544(b), includes any transfer made for the satisfaction of an antecedent debt. 11 U.S.C. § 548(d)(2)(A); 6 Del. C. § 1303(a); Wis. Stat. § 242.03(1).

Here, Plaintiffs assert, without any facts, the bald legal conclusion that "Appvion did not receive reasonably equivalent value in exchange for the Argent Transfers." (FAC ¶ 481.) Such "threadbare, formulaic recitation of the elements of a cause of action for avoidance of a transfer based on constructive fraud" compels dismissal of Count XIII. *In re Image Masters, Inc.*, 421 B.R. 164, 179-80 (Bankr. E.D. Pa. 2009) (holding that allegation that debtor "received no value whatsoever in exchange for the Transfers alleged in this case – let alone reasonable equivalent value" was insufficient to survive a Rule 12(b)(6) motion to dismiss) *aff'd in part, vacated in part, remanded sub nom. Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375 (E.D. Pa. 2013); *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Plaintiffs simply do not allege any facts that demonstrate Appvion received less than reasonably equivalent value in exchange for the Argent Transfers. [9]

---

[9] It is notable that Plaintiffs fail to even allege with specificity the amount and the date of each alleged transfer from Appvion to Argent that they seek to avoid. *See AstroPower Liquidating Tr. v. Xantrex Tech., Inc. (In re AstroPower Liquidating Tr.)*, 335 B.R. 309, 333-34 (Bankr.

To the contrary, Plaintiffs *admit* that "Argent received the Argent Transfers in return for services rendered as trustee of the ESOP." (FAC ¶ 469.) Pursuant to the terms of the Trustee Letter Agreements, Appvion was contractually obligated to pay Argent for those services. In other words, the Argent Transfers were payments on its contractual liability to Argent, *i.e.* an "antecedent debt." Not only does that satisfy the definition of "value" under the applicable fraudulent transfer laws, but courts have held that facts similar to those in the First Amended Complaint constitute reasonably equivalent value as a matter of law, requiring dismissal under Rule 12(b)(6).

For example, in *Burtch*, the debtor was a co-borrower under a loan made by the alleged constructively fraudulent transferee. 466 B.R. at 660. Like the alleged payments Argent received, each payment the transferee received in *Burtch* was applied to reduce the debtor's contractual obligations to the transferee. *Id.* "The Debtor was contractually obligated . . . to make payments to [transferee] and the Debtor received value that was actually equivalent in the reduction of the Debtor's outstanding debt owed to [transferee]." *Id*. Accordingly, the Chapter 7 trustee in *Burtch* could not allege facts supporting his claim that the debtor did not receive reasonably equivalent value and the Bankruptcy Court dismissed the trustee's constructive fraudulent transfer claims under Code sections 548(a)(1)(B) and 544(b) (Delaware UFTA). *Id.*

Likewise, in *Goldstein v. BRT, Inc. (In re Universal Mktg.)*, the Chapter 7 trustee sought to avoid certain alleged constructive fraudulent transfers pursuant to Code sections 548 and 544(b) (Pennsylvania UFTA) the debtors made in exchange for goods and/or services the defendant provided to the debtors. 460 B.R. 828, 836-37 (Bankr. E.D. Pa. 2011). The Bankruptcy Court found "nothing alleged in the Complaint that even hints that the Debtors received no consideration

---

D. Del. 2005) (valid claim for avoidable transfer pled when allegations specify, among other things, the date of the transfer, the amount of the consideration received, and the debtor's alleged financial condition at the time it made the transfer).

(or purposefully received less than reasonably equivalent value) in return for the transfers at issue." *Id*. at 837-38. Rather, the complaint created "the opposite inference . . . on the question of reasonably equivalent value," as the complaint demonstrated that the purchased goods and services were real and "that the transfers at issue were payments for the goods and services received." *Id*. at 838. "Indeed, based on the factual allegations, the more plausible inference is that the transactions were bona fide commercial transactions in which the Debtors received reasonably equivalent value." *Id*. Accordingly, given the absence of any factual basis to infer that the transfers at issue were made without receiving "reasonably equivalent value," the trustee's fraudulent transfer claims in *Goldstein* were dismissed. *Id*. *See also Pardo v. Gonzaba, (In re APF Co.)*, 308 B.R. 183 (Bankr. D. Del. 2004) (constructive fraudulent transfer claim related to certain note payments failed because payments were contractually required and thus made for value); *Gellert v. Coltec Indus. (In re Crucible Materials Corp.)*, Nos. 09-11582 (MFW), 11-53884 (MFW), 2012 Bankr. LEXIS 5102, at *21-22 (Bankr. D. Del., Oct. 31, 2012) (same).

The same result the Bankruptcy Court reached in each of the foregoing decisions should be reached here. Plaintiffs concede that each payment Argent received was applied to satisfy Appvion's obligations due and owing under the Trustee Letter Agreements with Argent, which payments were the contract price that Appvion was contractually obligated to pay to Argent. (FAC ¶¶ 93, 98, 469.) The only plausible inference drawn from Plaintiffs' allegations is that the Argent Transfers were made in satisfaction of antecedent debt created by the bona fide Trustee Letter Agreements between Appvion and Argent whereby Argent served as the ESOP trustee (*see* **Exs. 4** and **5** and n.4, *supra*). Plaintiffs' constructive fraudulent transfer claims in Count XIII should therefore be dismissed.

## 2.    The Preference Claim Should be Dismissed

Plaintiffs have failed to plead sufficient facts in support of their preference claim to survive a motion to dismiss.

As described in detail above, to survive a motion to dismiss, factual allegations "must be enough to raise a right to relief above the speculative level," or "contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (internal ellipsis omitted). A complaint is insufficient when "it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and brackets omitted).

These pleading standards apply to Bankruptcy Code preference claims like the one asserted against Argent in Count XII. For example, in *Miller v. Mitsubishi Digital Electronics Amer., Inc. (In re Tweeter Opco),* 452 B.R. 150 (Bankr. D. Del. 2011), the court dismissed a preference claim because the complaint lacked sufficient factual detail under *Iqbal* and *Twombly* even though the trustee did recite the statutory elements of a preference and some additional facts such as "exact check dates, check numbers, and exact dollar amounts." *Id.* at 154. The court held that despite some factual detail in addition to the statutory elements, the Complaint failed to "meet the pleading standards of *Twombly* and *Iqbal*." *Id.* The court also held that under current pleading requirements, "preferential transfers must be identified with particularity to ensure that the defendant receives sufficient notice of what transfer is sought to be avoided." This means that a preference claim, like Count XII in the First Amended Complaint, "must identify each transfer by date, amount, name of transferor, and name of transferee." *Id.* And particularly relevant to this case, the court held that where, as here, there are multiple debtors, "the trustee must identify the transferor precisely by name." *Id.* at 155. *See also Pardo v. Avanti Corp. Health Sys. (In re APF Co.)*, 274 B.R. 634, 640 (Bank. D. Del. 2001) (dismissing preference claim because plaintiff failed "to provide even

20

rudimentary facts surrounding the preferences, e.g., the date, time and amount of the allegedly preferential payments. . . .").

The First Amended Complaint suffers the precise pleading defects that lead the *Miller* and *Pardo* courts to dismiss the bankruptcy trustee's preference claim. The Court should therefore dismiss the preference claim asserted against Argent in Count XII.

### E.    Joinder to Arguments of Co-Defendants

Argent has reviewed the challenge of the Director Defendants to this Court's subject matter jurisdiction to adjudicate the state law claims in this litigation. Argent joins this argument and incorporates the Director Defendants' position by reference. *Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l)*, 372 F.3d 154, 161 (3d Cir. 2004).

Moreover, to the extent the Director Defendants prevail on a motion to dismiss the claims against them, then the aiding and abetting claims must also be dismissed. Aiding and abetting claims are derivative, depending on the establishment of an underlying tort. *See, e.g., In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 786 (9th Cir. 2014) (collecting cases). The dismissal of the tort claims against the Director Defendants also results in the dismissal of the aiding and abetting claim against Argent.

## IV.    CONCLUSION

For the foregoing reasons, the claims against Argent Trust Company should be dismissed.

Dated: March 19, 2019                 By: _____/s/ Tara L. Lattomus_____
                                            Tara L. Lattomus (Bar I.D. No. 3515)
                                            **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
                                            222 Delaware Street, 7th Floor
                                            Wilmington, DE  19801
                                            Telephone: (302) 574-7400
                                            Facsimile:  (302) 574-7401
                                            tlattomus@eckertseamans.com

Michael L. Scheier (0055512)
Brian P. Muething (0076315)
Jacob Rhode (0089636)
**KEATING MUETHING & KLEKAMP PLL**
One East Fourth Street, Suite No. 1400
Cincinnati, Ohio 45202
Email:  mscheier@kmklaw.com
          bmuething@kmklaw.com
          jrhode@kmklaw.com
Tel:  (513) 579-6400
Fax:  (513) 579-6457

*Counsel for Argent Trust Company*