IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OLDAPCO, INC., et al., | ) | |
| | ) | Case No. 17-12082 (MFW) |
| Debtors. | ) | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| ALAN D. HALPERIN AND EUGENE I. | ) | |
| DAVIS, AS CO-TRUSTEES OF THE | ) | |
| APPVION LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 18-50955 |
| MARK R. RICHARDS, THOMAS J. FERREE, | ) | |
| TAMI L. VAN STRATEN, JEFFREY J. | ) | |
| FLETCHER, KERRY S. ARENT, STEPHEN | ) | |
| P. CARTER, TERRY M. MURPHY, | ) | |
| ANDREW F. REARDON, KATHI P. | ) | |
| SEIFERT, MARK A. SUWYN, CARL J. | ) | |
| LAURINO, DAVID A. ROBERTS, | ) | |
| ARGENT TRUST COMPANY, STOUT RISIUS | ) | |
| ROSS, INC., STOUT RISIUS ROSS, LLC, | ) | |
| JOHN/JANE DOES 1-40 | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION[1]

Before the Court are the Motions of certain former Directors
and Officers of the Debtors (the "D&O Defendants"), Stout Risius
Ross, Inc., and Stout Risius Ross, LLC (collectively "the Stout
Parties"), and Argent Trust Company ("Argent") (collectively, the
"Defendants") to Dismiss the Revised Second Amended Complaint

---

[1]   The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052 of the Federal Rules of
Bankruptcy Procedure.  Instead, the facts recited are those
averred in the Complaint, which must be accepted as true for the
purposes of this Motion. Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).

(the "Complaint") filed by the Co-Trustees of the Appvion
Liquidating Trust (the "Plaintiffs") which seeks, inter alia,
damages for breach of fiduciary duties and the avoidance and
recovery of preferential transfers and constructively fraudulent
transfers.  (Adv. D.I. 108.)  The Defendants seek to dismiss
Counts I through VIII for lack of subject matter jurisdiction or,
alternatively, to transfer venue of those Counts to Wisconsin.
The Defendants also seek dismissal of Counts IX through XVIII for
failure to state a plausible claim for relief.  For the reasons
set forth below, the Court will (i) grant the motion to transfer
venue of Counts I through VIII, (ii) grant the Motion to Dismiss
Count X only to the extent it relies on state law, and (iii) deny
the Motions to Dismiss in all other respects.


I.    BACKGROUND

    In late 2001, the employees of Appvion, Inc. ("Appvion"),
contributed approximately $107 million to an employee stock
ownership plan ("ESOP") which used the funds to purchase all of
the common stock of Paperweight Development Corporation ("PDC").
(Adv. D.I. 108 at ¶ 67.)[2]  PDC then purchased Appvion from its
parent company, Arjo Wiggins Appleton p.l.c.  (Id.)  PDC was the
ultimate parent company of the Debtors and entirely owned by the
ESOP.  (Id. at ¶¶ 68 & 73.)

---

    [2]    Citations to the adversary docket are to "Adv. D.I."
while citations to the main docket are to "D.I."

Through the tax-qualified ESOP, Appvion employees could defer compensation which was then used to purchase PDC common stock at a price determined by an independent appraiser twice a year. (Id. at ¶ 81.) Upon the retirement of a participant, the ESOP would re-purchase the participant's PDC common stock at the fair market value. (Id. at ¶ 85.)

On May 28, 2014, Argent became the trustee of the ESOP. Argent was supervised by the ESOP administrative committee (the "ESOP Committee"). (Id. at ¶ 92.) One of Argent's duties was to determine the fair market value ("FMV") of PDC common stock. (Id. at ¶ 100.) Argent hired the Stout Parties to conduct the FMV determination. (Id.) Appvion paid the Stout Parties $522,229.71 for their services between 2014 and 2017. (Id. at ¶ 109.)

Distributions from the ESOP to participants sometimes exceeded the ESOP's cash on hand, causing the ESOP to turn to PDC for an inter-company loan. (Id. at ¶ 115.) PDC borrowed funds from Appvion in order to satisfy the ESOP's repurchase obligations. (Id. at ¶ 116.) Appvion often borrowed from third party lenders to fund its loans to PDC. (Id.)

On June 11, 2004, PDC gave Appvion a promissory note (the "Note") in the amount of $167,006,667. (Id. at ¶ 134.) On November 20, 2013, Appvion made a "non-cash distribution" to PDC in the amount of the Note, thereby cancelling the Note. (Id. at ¶ 135.) After the Note was cancelled, Appvion continued making

loans to PDC to fund ESOP distributions.  (Id. at ¶ 138.)

On October 1, 2017, Appvion and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11.  (D.I. 1.)  On August 14, 2018, the Court confirmed the Debtors' Second Amended Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation.  (D.I. 970.)  Under the Plan, the Plaintiffs were given authority to pursue certain of the estate's causes of action.  (D.I. 836 at Art. VIII. B.)  The Plaintiffs commenced this adversary proceeding on November 30, 2018.  (Adv. D.I. 1.)  Counts I through III of the Complaint assert causes of action against the D&O Defendants for breach of fiduciary duties in: (1) causing the overvaluation of PDC common stock, (2) forgiving the Note for no consideration, and (3) extending loans to PDC with knowledge that they could never be repaid.  (Adv. D.I. 108 at ¶¶ 391-406.) Counts IV through VI assert causes of action against the ESOP Committee members, Argent, and the Stout Parties, respectively, for aiding and abetting the D&O Defendants in breaching their fiduciary duties.  (Id. at ¶¶ 407-418.)  Counts VII and VIII assert claims against certain D&O Defendants for payment of illegal dividends in violation of Delaware state law.  (Id. at ¶¶ 419-435.)  Counts IX through XVIII assert avoidance actions against certain D&O Defendants, the Stout Parties, and Argent. (Id. at ¶¶ 436-551.)

Four days before the adversary proceeding was filed, the

ESOP Administrative Committee had commenced an action in the United States District Court for the Eastern District of Wisconsin. <u>Appvion Inc. Ret. Sav. and Emp. Stock Ownership Plan v. Buth et al.</u>, No. 1:18-cv-01861-WCG (E.D. Wis. filed Nov. 26, 2018). That suit asserted similar causes of action as the Complaint and asserted a derivative cause of action for breach of fiduciary duty for the overvaluation of PDC common stock against many of the Defendants. (<u>Id.</u>)

The Plaintiffs filed the First Amended Complaint on February 19, 2019. (Adv. D.I. 59.) On March 19, 2019, the D&O Defendants filed a Motion to Dismiss Counts I through IV, VII, and VIII, or alternatively to transfer venue of Counts I through VIII to the District Court for the Eastern District of Wisconsin. (Adv. D.I. 65, 66.) Argent filed a Motion to Dismiss Counts V, XII, and XIII, and the Stout Parties filed a Motion to Dismiss Counts VI, X, XI, and XIII. (Adv. D.I. 67, 68, 69, 70.) Briefing on the motions was completed on May 15, 2019. (Adv. D.I. 85.)

Subsequently, the Plaintiffs filed a Second Amended Complaint and a Revised Second Amended Complaint.[3] (Adv. D.I. 108.) The parties have stipulated that the Defendants' motions to dismiss have equal applicability to the Revised Second Amended Complaint. (Adv. D.I. 96.) The matter is now ripe for decision.

---

[3]    The revision simply removed one Defendant, Kevin Gilligan, from the suit. (Adv. D.I. 108.)

## II.   JURISDICTION

The Court has jurisdiction over the Motions to Dismiss and transfer venue.  A bankruptcy court generally has authority to determine whether or not it has subject matter jurisdiction over a proceeding.  <u>Liquidating Trustee v. Granite Fin. Solutions, Inc. (In re MPC Computers, LLC)</u>, 465 B.R. 384, 387 (Bankr. D. Del. 2012).  "The Court has the power to enter an order on a motion to dismiss even if the underlying matter is not core." <u>Giuliano v. Genesis Fin. Solutions, Inc. (In re Axiant, LLC)</u>, Adv. No. 50526, 2012 WL 5614588, at *1 (Bankr. D. Del. 2012). Further, a motion to transfer venue is a core proceeding over which the Court has jurisdiction.  28 U.S.C. § 157(b).


## III.  <u>DISCUSSION</u>

### A.   <u>Subject Matter Jurisdiction</u>

The Defendants' motions ask the Court to dismiss Counts I through VIII for lack of subject matter jurisdiction.  The Plaintiffs oppose the motions, contending this Court has jurisdiction over those claims.

#### 1.   <u>Standard of Review</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a federal court may dismiss a complaint for lack of subject matter jurisdiction.  The issue in a 12(b)(1) motion is the federal court's power to hear the case.  <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  The

6

issue can be raised in any manner, including on motion of one of the parties or by the court sua sponte.   Even if the parties consent to subject matter jurisdiction, the court may dismiss the action.   In re Seven Fields Dev. Corp., 505 F.3d 237, 256 (3d Cir. 2007) ("neither the bankruptcy court nor the parties can write their own jurisdictional ticket") (internal citations omitted); In re Wolverine Radio Co., 930 F.2d 1132, 1137–1138 (6th Cir.1991) (holding that "[p]arties can neither waive nor consent to subject matter jurisdiction," and "no action of the parties can confer subject-matter jurisdiction upon a federal court.").

In a Rule 12(b)(1) motion to dismiss, the party invoking the federal court's jurisdiction bears the burden of establishing that the court has jurisdiction.   See, e.g., Common Cause of Pa. v. Pa., 558 F.3d 249, 257 (3d Cir. 2009).

a.   Core Jurisdiction

The bankruptcy court's jurisdiction is derived from 28 U.S.C. §§ 1334 and 157.   Upon referral from the District Court, the bankruptcy court has jurisdiction over "core" matters which include (1) cases under title 11, (2) proceedings arising under title 11, and (3) proceedings arising in a case under title 11. In re Resorts Int'l, Inc., 372 F.3d 154, 162 (3d Cir. 2004). Core proceedings are matters that only arise under title 11.   Id. The bankruptcy court can enter a final judgment in core matters. 28 U.S.C. § 157(b)(1).

7

In this case, Counts IX through XVIII are core proceedings because they assert avoidance actions under chapter 5 of the Bankruptcy Code. 28 U.S.C. § 157(b)(2)(F). Those actions do not arise except in the context of a bankruptcy proceeding. Therefore, the Court has jurisdiction to hear them and enter a final judgment.

b.    Non-core Jurisdiction

The bankruptcy court also has jurisdiction to hear non-core proceedings which are those that are "related to a case under title 11." Resorts, 372 F.3d at 162; 28 U.S.C. §§ 1334(b) & 157(a). In non-core proceedings, the bankruptcy court may enter a final order only if the parties consent. See, e.g., Wellness Int'l Network Ltd. v. Sharif, 135 S. Ct. 1932 (2018). Otherwise, the bankruptcy court may only hear the matter and "submit proposed findings of fact and conclusions of law to the district court" which will enter a final judgment after de novo review. Id. at 1940. See also 28 U.S.C. § 157(c)(1).

In this case, the Court concludes that Counts I through VIII are non-core matters because they assert claims arising under state law which could be brought in the absence of a bankruptcy case. Therefore, the Court could not enter a final judgment on those claims, absent consent of the parties.

In addition, there is a question whether the Court has retained jurisdiction over those claims after confirmation of the Debtors' Plan.

c.   <u>Post-Confirmation Related to Jurisdiction</u>

Pre-confirmation "related to" jurisdiction extends to matters that "could conceivably have any effect on the estate being administered in bankruptcy." <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984). Once a plan is confirmed, however, the estate ceases to exist and all property of the estate vests in the debtor, unless the plan provides otherwise. 11 U.S.C. § 1141(b). The bankruptcy court retains post-confirmation "related to" jurisdiction only when there is a "close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." <u>Resorts</u>, 372 F.3d at 166. "Matters that affect the interpretation, implementation, consummation, execution, or administration of a confirmed plan will typically have the requisite close nexus." <u>Id.</u> at 167.

The Defendants argue that the Court does not have post-confirmation jurisdiction over Counts I through VIII. They contend that the state law causes of action for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and payment of illegal dividends have no nexus to the confirmed plan other than potentially increasing the amount that might be distributed to creditors. The Defendants argue that the broad language of the Debtors' Plan which retained jurisdiction over all causes of action transferred to the Plaintiffs is insufficient to create post-confirmation jurisdiction. <u>Resorts</u>, 372 F.3d at 166 (a plan which retains jurisdiction over "all

9

claims and causes of action" is not effective as it is so broad
as to encompass countless causes of action and "raise[s] the
specter of unending jurisdiction"). The Defendants contend that
a "close nexus may be found [only] where the plan specifically
enumerates the cause of action." <u>Astropower Liquidating Trust v.
Xantrex Tech., Inc. (In re AstroPower</u>, 335 B.R. 309, 325 (Bankr.
D. Del. 2005).

The Plaintiffs respond that the Debtors' Plan (which
incorporated a settlement agreement) gave them standing to pursue
the specific claims and causes of action against the D&Os and
insiders of the Debtor which are the basis of the Complaint.
(D.I. 734, 836.) The Plaintiffs point to the language in the 2L
Settlement, which was incorporated in the Plan, providing that
any and all Litigation Claims will be transferred to the
Liquidating Trust on the Effective Date and stating that "[f]or
the avoidance of doubt, the Litigation Claims shall include, but
not be limited to, all claims related to or arising out of the
Appvion Retirement Savings and Employee Stock Ownership Plan
[and] all claims and causes of action against the Debtors'
current and former directors and officers." (D.I. 734 at Art.
II.4.) These provisions were incorporated into the Plan. (D.I.
836 at Art. II. 111 & 114 & Art. VIII. D.)

The Defendants are correct that a wholesale assignment of
causes of action to a post-confirmation trust fails to establish
a close nexus to the bankruptcy estate sufficient to support

10

post-confirmation non-core jurisdiction.  Shandler v. DLJ
Merchant Banking, Inc. (In re Insilco Tech., Inc.), 330 B.R. 512,
525 (Bankr. D. Del. 2005).  However, where the chapter 11 plan
retains jurisdiction over a specific cause of action it is
evidence of a sufficient close nexus because "[r]etention of
jurisdiction over a specific cause of action suggests litigation
of that action is critical to the plan's implementation."  Gavin
Solmonese, LLC v. Shyamsundar (In re AmCad Holdings, LLC), No.
14-12168, Adv. No. 15-51979, 2016 WL 3412289, at *2 (Bankr. D.
Del. June 14, 2016); AstroPower, 335 B.R. at 325 (concluding that
where the plan specifically describes an action over which the
Court has related to jurisdiction and expressly provides for
retention of jurisdiction to liquidate that claim for the benefit
of the debtors' estates and creditors, there is a sufficient
close nexus to support post-confirmation jurisdiction).

In this case, the Court finds that the Debtors' Plan does
provide for retention of jurisdiction over the specific claims
that are at issue in the Complaint.  The Plan defined "Litigation
Claims" to include specifically claims "related to or arising out
of the ESOP that are not Direct ESOP Claims [held by the ESOP
Committee or Trustee]" as well as the "Preserved D&O Claims"
which are defined as "any and all claims and Causes of Action . .
. held by the Debtors and their Estates against the Debtors'
Directors and Officers [who are not released in the Plan],
including but not limited to, Claims held by the Debtors and

their Estates relating to the ESOP." (D.I. 836 at Art. II. 58, 114 & 136.) Thus, Counts I through VIII, which are related to the ESOP but are not direct ESOP claims, are expressly identified in the Plan as being retained. The Court finds this language similar to that in AstroPower, where the Court found that it had subject matter jurisdiction over non-core post-confirmation claims expressly identified in the plan. 335 B.R. at 324.[4] Thus, the Plan in this case is distinguishable from the plans in AmCad and Insilco which broadly retained jurisdiction over all claims. 330 B.R. at 525; 2016 WL 3412289, at *2. Therefore, the Court will deny the Motions to Dismiss Counts I through VIII for lack of subject matter jurisdiction.[5]

B.    Personal Jurisdiction

The Stout Parties have filed a Motion to Dismiss, arguing that this court does not have personal jurisdiction over them. (Adv. D.I. 70 at 39.)

The Stout Parties concede that they have been served

---

[4]    The plan of liquidation in AstroPower provided that the liquidating trustees would have the authority to "prosecute and/or settle any and all . . . causes of action arising out of or in connection with the Debtor's sale of stock in Xantrax Technology, Inc." 335 B.R. at 324.

[5]    The Plaintiffs also argue that there is a close nexus supporting jurisdiction because the litigation could enhance creditor recoveries, may require the court to resolve privilege disputes, and may require the court to determine whether certain proofs of claim are allowable under section 502(d). It is not necessary to address these arguments as the Court concludes that the Plan retained jurisdiction by specifically identifying the claims at issue in the Complaint.

pursuant to Rule 7004(d), which authorizes nationwide service of

process.  Fed. R. Bankr. P. 7004.  The Stout Parties assert,

nonetheless, that the Court cannot rely on Rule 7004 for personal

jurisdiction because the Third Circuit has held that a court may

not exercise personal jurisdiction in the absence of a governing

federal statute providing for nationwide service of process.  See

Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 300 (3d Cir. 1985).

The Stout Parties argue that Rule 7004 is not a federal statute

and, thus, it cannot be a basis for exercising personal

jurisdiction.  The Stout Parties also contend that they are

Michigan corporations with no minimum contact with Delaware, as

required by due process.

This argument has been roundly rejected by the courts.  See,

e.g., Capmark Fin. Group Inc. v. Lin (In re Capmark Fin. Group

Inc.), 479 B.R. 330, 339 (Bankr. D. Del. 2012); Zazzali v. 1031

Exchange Group LLC (In re DBSI, Inc.), 467 B.R. 309, 313-14

(Bankr. D. Del. 2012); Tribune Media Servs., Inc. v. Beatty (In

re Tribune Co.), 418 B.R. 116, 122 (Bankr. D. Del. 2009).  As the

Court in Capmark noted:

>       For more than a decade, this Court has
> consistently held that, because Bankruptcy Rule 7004(d)
> provides for nationwide service of process, this
> Court's personal jurisdiction may be assessed on the
> basis of a defendant's contacts with the United States
> as a whole, rather than with any particular state. . .
> .  [The Daetwyler] holding simply applied a requirement
> of federal statutory authorization found in former
> Federal Rule 4(e).  Rule 4(e) was, however, abrogated
> in 1993 when the Federal Rules were amended to add Rule
> 4(k)(2), which creates federal long-arm jurisdiction in

cases involving claims that arise under federal law.
Since that amendment, and the enactment in 1996 of
Bankruptcy Rule 7004(f), a federal long-arm provision
like Federal Rule 4(k)(2), the question of whether
Bankruptcy Rule 7004(d) is a statute has "become merely
academic."

Capmark, 479 B.R. at 339-40 (citations omitted).

The Court agrees with the reasoning of the courts which have
found service under Rule 7004 sufficient to confer personal
jurisdiction in an adversary proceeding.  Rule 7004(d), like
Federal Rule of Civil Procedure 4(k), is sufficient to create
federal long-arm jurisdiction.  "Where service is made under Rule
7004(d), the defendant 'need only have minimum contacts with the
United States to satisfy Fifth Amendment due process.'"  TAC
Holdings, Inc. v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287,
289 (Bankr. D. Del. 2004) (quoting Brown v. C.D. Smith Drug Co.,
1999 WL 709992, at *3 (D. Del. 1999)).  "The forum in bankruptcy
cases is the United States in general, not the particular forum
state."  Tribune, 418 B.R. at 123 (citations omitted).

In this case, the Stout Parties admit that they have been
served pursuant to Rule 7004 and as Michigan entities clearly
have sufficient contacts with the United States.  Accordingly,
the Court will deny the Stout Parties' Motion to Dismiss for lack
of personal jurisdiction.

C.   Transfer

Alternatively, the Defendants ask the Court to transfer
venue of the non-core claims in Counts I through VIII.  The

Plaintiffs oppose this request.

1.   Standard

The Defendants seek to transfer venue of Counts I through VIII under 28 U.S.C. § 1412, while the Plaintiffs contend that the motion is procedurally defective because transfer of those claims is properly considered under 28 U.S.C. § 1404.[6]  The courts disagree as to whether section 1412 or 1404 applies to the transfer of non-core claims.  Compare Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C., 408 B.R. 90, 97-98 (Bankr. S.D. Tex. 2009) (concluding that section 1412 applies only to core matters and that transfer of non-core matters is properly brought under section 1404) with Campbell v. Williams, No. 1.14-cv-097, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015) (concluding that section 1412 applies to non-core claims).

The Court concludes that it is not necessary to decide this issue, as the standard is the same under both sections.  See, e.g., In re Emerson Radio Corp., 52 F.3d 50, 55 (3d Cir. 1995) ("section 1412 largely include[s] the same criteria for the transfer of cases as section 1404(a), i.e., 'the interest of justice' or 'the convenience of the parties.'"); ICICI Bank Ltd. v. Essar Glob. Fund Ltd., 565 B.R. 241, 257 (S.D.N.Y. 2017)

---

[6]     Section 1412 provides that the Court "may transfer venue of a case or proceeding under title 11 . . . in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.  Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action."  28 U.S.C. § 1404.

(noting that whether the court applies section 1404 or 1412 "is largely inconsequential"); IRS v. CM Holdings, Inc., No. CIV. A. 97-695 MMS, 1999 WL 459754, at *2 (D. Del. June 19, 1999) (noting that the "decision to transfer venue under either section 1404 and 1412 has been determined to turn on the same issues").

In considering whether to transfer venue under either section, the Court should consider both public and private interests. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The private interests include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) whether the claim arose in another forum; (4) the convenience of the parties based on their physical locations and financial ability; (5) the convenience of the witnesses; (6) where the books and records are located. Id. at 879. The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations to simplify the trial; (3) the administrative difficulty in the two fora resulting from court congestion; (4) the interest of the local forum in deciding the controversy at home; (5) the familiarity of the trial judge with the applicable law; and (6) the public policies of the fora. Id. at 879-80. The Court should consider all relevant factors and has "broad discretion to determine on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Id. at 883.

The D&O Defendants argue that Counts I through VIII should

16

be transferred to the Eastern District of Wisconsin because a
majority of the <u>Jumara</u> factors weigh in favor of venue transfer.

> a.   <u>Jumara Factors</u>
>
> > i.   <u>Plaintiffs' Forum Preference</u>

The Plaintiffs in this case prefer to litigate in Delaware.
Therefore, the first <u>Jumara</u> factor weighs against transfer of
venue.

> > ii.   <u>Defendants' Forum Preference</u>

The Defendants would like to litigate this matter in
Wisconsin.  Therefore, this factor weighs in favor of transfer of
venue.

The Plaintiffs contend, however, that the Defendants'
preference of a forum for this adversary proceeding should be
discounted because the D&O Defendants themselves authorized the
Debtors to file bankruptcy in Delaware and the Counts in question
share a close nexus to the bankruptcy case.

The Court disagrees with the Plaintiffs on this point: the
consideration of where to file a bankruptcy case is different
from the consideration of where to file an adversary proceeding.
For example, the former may be based on the convenience of the
forum to the lenders or to all the creditors in a case while the
latter considers the convenience of the forum only to the parties
to the action.

Nonetheless, the defendant's forum preference is generally
given less weight than the plaintiff's in deciding a motion to

transfer venue.  <u>DHP Holdings II Corp. v. The Home Depot, Inc.</u>
<u>(In re DHP Holdings II Corp.)</u>, 435 B.R. 264, 273 (Bankr. D. Del.
2010).

### iii. <u>Location Where Claim Arose</u>

The Defendants assert that the claims arose from Appvion's
management and operation, which took place in Appleton,
Wisconsin.  The Plaintiffs do not dispute this.  (<u>See</u> D.I. 77 at
48.)  Therefore, this factor weighs in favor of transferring
venue to Wisconsin.

### iv.  <u>Convenience of the Parties</u>

The Defendants argue that this factor also supports transfer
of venue because a substantially similar cause of action is
pending in Wisconsin, naming twelve of the sixteen Defendants.
Further, the Defendants assert that seven Defendants reside in or
near Wisconsin and two other Defendants live closer to Wisconsin
than Delaware.  Four of the Defendants who live closer to
Delaware are named in the Wisconsin action and will need to
travel to Wisconsin anyway.

The Plaintiffs argue that the Defendants authorized the
bankruptcy filing in Delaware.  Because the Defendants did not
think it was an inconvenient forum then, the Plaintiffs argue
they have no basis to assert it is inconvenient to litigate the
adversary proceeding in Delaware.  Further, the Plaintiffs argue
that the Plan provides for them to have standing to pursue these
claims and that these Counts share a close nexus to the

bankruptcy case.

It is true that the Plan and Confirmation Order provide for the resolution of these disputes in Delaware.  (See D.I. 836 at Art. XV; D.I. 970 at ¶ 33.)  However, "even where there is a contractual forum selection provision, the Court should consider if there is some inconvenience to the parties."  DHP, 435 B.R. at 274.  Although the Plaintiffs are located near Delaware, the vast majority of the other related parties are located in and around Wisconsin.  Further, there is a proceeding involving many of the same parties and issues already pending in the Eastern District of Wisconsin.  Therefore, the Court concludes that the convenience of the parties weighs in favor of transfer of venue to Wisconsin.

### v.   Convenience of Witnesses

The Defendants argue that the witnesses are largely located in Appleton, Wisconsin.  The Plaintiffs do not dispute this assertion but merely contend that this venue could not be inconvenient for witnesses as the Defendants chose it for the bankruptcy case.  Again, the Court finds that selecting this venue for the main case is different from choosing it for the adversary proceeding.  For example, there is no evidence that the witnesses are the same for both.  Thus, the Court concludes that this factor weighs in favor of transferring venue to Wisconsin.

### vi.  Books and Records

The Defendants assert that the books and records are located

in Wisconsin.  The Plaintiffs do not dispute this assertion.
Therefore, this factor weighs in favor of transfer to Wisconsin.

### vii. Enforceability of Any Judgment

A judgment in either jurisdiction would be given full faith
and credit.  However, because these Counts are non-core, the
bankruptcy court could not issue a final ruling, but instead,
would be required to make a report and recommendation to the
District Court.  Resorts, 372 F.3d at 162; 28 U.S.C. § 157(c)(1).
This would unnecessarily delay a final resolution of the issues
if the case remained in Delaware.  Therefore, the Court concludes
that this factor weighs in favor of transfer to Wisconsin.

### viii. Practical Considerations

Currently there is a cause of action pending in Wisconsin
with facts and issues that are similar, if not duplicative, to
those raised here.  The Defendants argue that a majority of the
events, documents, witnesses, and Defendants are closer to
Wisconsin than Delaware.  The Plaintiffs do not present an
argument for why it would be more efficient to litigate the non-
core claims in Delaware as opposed to Wisconsin.  Therefore, the
Court finds that this factor weighs in favor of the transfer of
venue to Wisconsin.

### ix. Court Congestion

The Defendants concede that this factor does not favor one
jurisdiction over the other.  Therefore, the Court finds that
this factor is neutral.

x.    <u>Local Interests</u>

The Defendants argue that the Wisconsin courts have a local interest in monitoring and rectifying the harms created by its citizens and businesses.  The Plaintiffs do not argue that Delaware has a stronger local interest than Wisconsin. Therefore, the Court finds that this factor favors transfer to Wisconsin.

xi.    <u>Familiarity of the Trial Judge</u>

Neither party raises this factor as an issue and the Court finds that this factor is neutral.  This Court has no familiarity with the facts of this case other than that gleaned from consideration of the motions to dismiss.  It is not aware of the extent of the familiarity of the Wisconsin Court with the facts in that action.

After weighing the above factors, the Court finds that most favor transfer of venue to Wisconsin and that there is no compelling factor in favor of retaining jurisdiction over these Counts in Delaware.  Therefore, the Court will grant the Defendants' motion to transfer venue of Counts I through VIII of the Complaint to the United States District Court for the Eastern District of Wisconsin.  Because the Court is transferring these Counts, there is no need to address the Defendants' arguments for dismissal of these Counts of the Complaint.[7]

---

[7]    These arguments include (1) that the Plaintiff's claims are pre-empted by ERISA; (2) that the Complaint fails to state a

C.   <u>Rule 12(b)(6) Dismissal</u>

The Defendants also ask that the Court dismiss the remaining Counts of the Complaint under Rule 12(b)(6) for failure to state a plausible claim for relief.   The Plaintiffs oppose this request.

1.   <u>Standard of Review</u>

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."   Fed. R. Civ. P. 8(a)(2).

Rule 12(b)(6) governs a motion to dismiss for failure to state a claim.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face.'"   <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).   The question is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>abrogated on other grounds by</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 814-15 (1982).

The plaintiff must provide more than "threadbare recitals of

claim for aiding and abetting; and (3) that the breach of fiduciary duties claims are partially time-barred.

a cause of action's elements, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1940. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Twombly, 550 U.S. at 562.

There is a two-part analysis to determine whether to dismiss a complaint for failure to state a claim. First, the court "must accept all the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id. at 211.

a. Counts IX and XIV-XVIII Against D&Os

Counts IX and XIV through XVIII seek to avoid preferential transfers to certain D&O Defendants.[8] (Adv. D.I. 108 at ¶¶ 436-446 & 487-551.) The Counts assert that the transfers are avoidable under the Bankruptcy Code, as well as under Delaware and Wisconsin state law. 11 U.S.C. § 547; Del. Code Ann. tit. 6, § 1301 et seq; Wis. Stat. § 242 et seq.

Those D&O Defendants initially argue that these Counts fail to state a claim pursuant to state law because they generically cite to the Wisconsin and Delaware statutes and not to any

---

[8]     The D&O Defendants named in those Counts are: Ferree, Seifert, Suwyn, Murphy, Laurino, and Roberts.

23

specific section.  The Court rejects this argument because the Delaware and Wisconsin statutes cited by the Plaintiffs are not lengthy and the elements of those statutes cited by the Plaintiffs in their Complaint are easily identified.

The D&O Defendants also seek to dismiss Counts IX and XIV through XVIII to the extent they assert state law preference avoidance causes of action because, they argue, the statutes are for avoidance of fraudulent transfers, not preferences.  Since the Complaint refers to them as preferences, the D&O Defendants contend that it does not put them on notice of the actual claims and legal theories against them.

The Plaintiffs contend that the Complaint does state the elements of a claim under Delaware and Wisconsin law which provide for recovery of any transfer to an insider on account of an antecedent debt while the debtor was insolvent and the insider had reasonable cause to believe the debtor was insolvent.  Del. Code Ann. tit. 6, § 1305(b) and Wis. Stat. § 242.05(2).  The Plaintiffs assert that this is more akin to a preference claim than a fraudulent conveyance claim.  Further, the Plaintiffs argue that the Complaint states, with particularity, the dates and amounts of the transfers and references Appvion's Statement of Financial Affairs ("SOFA") thereby averring that Appvion was the transferor.  Thus, the Plaintiffs contend that the Complaint contains enough to state a plausible claim for relief under the Bankruptcy Code and state law.

24

Both statutes identify causes of action that are similar to insider preferences under the Bankruptcy Code.  It is notable that the Wisconsin Court of Appeals, in analyzing section 242.05(2), noted that the "provision addresses what is sometimes called a preferential transfer - a novel category of fraudulent transaction based on bankruptcy principles." Beck v. BidRX, LLC, 918 N.W.2d 96, 100 (Wis. Ct. App. 2018).  Whether the statutes are indeed "preferences" or "fraudulent transfers," however, is legal semantics rather than a basis to dismiss the Counts.  The issue raised by the Motion to Dismiss is whether the Complaint states a claim for relief under those statutes.

Section 1305(b) of the Delaware statute states that a transfer is avoidable "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."  Del. Code Ann. tit. 6, § 1305(b).  Similarly, section 242.05(2) of the Wisconsin statute provides that a transfer is avoidable "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."  Wis. Stat. § 242.05(2).

To survive a motion to dismiss, a complaint seeking to avoid preferential transfers under the Bankruptcy Code must provide: "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged

25

preference transfer by (i) date, (ii) name of debtor/transferor,
(iii) name of transferee and (iv) the amount of the transfer."
In re Valley Media, Inc., 288 B.R. 189, 192 (Bankr. D. Del.
2003).

In the Complaint, the Plaintiffs allege that the D&O
Defendants (1) were insiders of the Debtors; (2) received
transfers from the Debtors on account of antecedent debt, while
the Debtors were insolvent; (3) had reasonable cause to believe
the Debtors were insolvent; and (4) the transfers caused them to
receive more than under a chapter 7 liquidation. (Adv. D.I. 108
at ¶¶ 292-296, 436-551.) Each Count against the D&O Defendants
provides the amounts of the transfers and the approximate dates
they were made. (Id.) The Court finds that these allegations
are sufficient to state a claim for relief under the Bankruptcy
Code and Wisconsin and Delaware Law.

Therefore, the Court concludes that the D&O Defendants'
Motion to Dismiss Counts IX and XIV through XVIII for failure to
state a plausible claim for relief under the Bankruptcy Code and
Wisconsin and Delaware Law should be denied.

b.   <u>Count IX</u>

The D&O Defendants also assert that Count IX should be
dismissed as ambiguous because it identifies the transferor as
"PDC and/or Appvion." The Plaintiffs respond that each debtor
entity filed its own SOFA, and the Complaint specifically
references Appvion's SOFA, not PDC's, when discussing the

26

transfers to Ferree in Count IX.  (<u>See</u> Adv. D.I. 108 at ¶¶ 293-295.)  Thus, the Plaintiffs contend that the Complaint sufficiently identifies Appvion as the transferor.

The Court agrees with the Plaintiffs.  The Complaint expressly refers to Appvion's SOFA, which includes the transfers to Ferree identified by the Plaintiffs in the Complaint.  (<u>Id.</u>, <u>citing</u> D.I. 266 at 30.12.)  Therefore, the Court finds that the Complaint sufficiently identifies Appvion as the transferor of the funds transferred to Ferree.  Consequently, the Court concludes that the Plaintiffs have raised a plausible claim for relief in Count IX and will deny the Motion to Dismiss that Count.

c.   <u>Counts X Through XIII</u>

Counts X and XII assert causes of action to avoid preferential transfers to the Stout Parties and Argent under the Bankruptcy Code, Delaware and Wisconsin law.  11 U.S.C. §§ 547, 544(b) & 550; Del. Code Ann. tit. 6, § 1301 <u>et seq.</u>; Wis. Stat. § 242 <u>et seq.</u>  Counts XI and XIII assert causes of action to avoid fraudulent transfers to the Stout Parties and Argent under the Bankruptcy Code, Delaware and Wisconsin law.  11 U.S.C. §§ 544(b) & 548(a)(1)(b); Del. Code Ann. tit. 6, § 1301-13011; Wis. Stat. § 242.01-242.11.  The Defendants move to dismiss these Counts for failure to state a claim.

i.   <u>Count X</u>

The Stout Parties argue that Count X should be dismissed to

27

the extent it raises a cause of action under state law because the Delaware and Wisconsin law cited by the Plaintiffs do not provide any basis to avoid a transfer to a non-insider.  The Stout Parties also argue that Count X should be dismissed in its entirety because the Complaint demonstrates the elements of an ordinary course defense on its face.

The Plaintiffs concede that the state law causes of action apply only to insiders and stipulates to the dismissal of Count X to the extent it relates to claims under state law.  (Adv. D.I. 77 at 44.)  The Plaintiffs argue, however, that they properly pled a claim for a non-insider preference under section 547(b) of the Bankruptcy Code.  The Plaintiffs assert further that whether the Stout Parties can establish an ordinary course of business defense is a question of fact that is not appropriately decided at this stage.  They contend that such a defense requires the analysis of the timing of the preference payments in relation to the issuance of the invoices in comparison to the timing of historical payments, which are not apparent from the face of the Complaint.

The Court agrees with the Plaintiffs.  The ordinary course of business defense is an affirmative defense, which is usually not a proper basis for a motion to dismiss.  Adelphia Commc'ns Corp. v. Bank of America, N.A. (In re Adelphia Commc'ns Corp.), 365 B.R. 24, 79 (Bankr. S.D.N.Y. 2007).  It is true that a complaint may be dismissed under Rule 12(b)(6) "where an

unanswered affirmative defense appears" on the face of the
complaint.  In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir.
2005).  However, that is not the case here.  An analysis of the
ordinary course defense requires an analysis of the timing of
payments made between the transferor and transferee before and
during the preference period.  See Burtch v. Detroit Forming Inc.
(In re Archway Cookies), 435 B.R. 234, 243 (Bankr. D. Del. 2010),
aff'd sub nom. In re Archway Cookies LLC, 511 B.R. 726 (D. Del.
2013).  While the Complaint identifies when the preference
payments were made, it does not state when the historical
payments were made or the timing of the payments in relation to
the issuance of the invoices.  (See Adv. D.I. 108 at ¶¶ 293-295.)
Thus, the information in the Complaint, on its face, does not
provide the Stout Parties with an ordinary course defense under
section 547(c)(2).

Therefore, the Court will grant the Motion to Dismiss Count
X as it relates to the state law claims, but deny the Motion to
Dismiss as it relates to the claim under section 547(b) of the
Bankruptcy Code.

ii.  Counts XI and Count XIII

Count XI and Count XIII assert constructively fraudulent
conveyance claims against the Stout Parties and Argent,
respectively.  The Stout Parties and Argent argue that those
Counts should be dismissed because the Plaintiffs did not
adequately plead facts to demonstrate that Appvion received less

than reasonably equivalent value for the transfers.  They contend
that the transfers were for amounts due them for services
rendered for the benefit of the Debtors.

The Plaintiffs assert that Appvion did not receive
reasonably equivalent value for the transfers to Argent because
Argent provided services to the ESOP, not Appvion, and,
therefore, its services could not constitute reasonably
equivalent value to Appvion.  (See, e.g., Adv. D.I. 108 at ¶¶ 92-
94.)   Similarly, the Plaintiffs assert that Appvion did not
receive reasonably equivalent value for the transfers to the
Stout Parties because the Stout Parties provided services to
Argent, who independently contracted with the Stout Parties to
provide a valuation of the PDC stock.  (See, e.g., id. at ¶ 102.)
Even if the services performed by the Stout Parties and Argent
could have theoretically benefitted the Debtors indirectly, the
Plaintiffs contend that they did not because the services were
not adequately performed.

The Bankruptcy Code provides that a transfer is
constructively fraudulent if the debtor "received less than a
reasonably equivalent value in exchange for such transfer or
obligation and was insolvent on the date that such transfer was
made."  11 U.S.C. § 548(a)(1).  The Third Circuit has held that
the courts should conduct a two-part inquiry to determine whether
a debtor received reasonably equivalent value in exchange for a
transfer: (i) whether the debtor received any value for the

transfer at all, and (ii) if so, whether that value was
"reasonably equivalent" to the value of the transfer.   In re
R.M.L., Inc., 92 F.3d 139, 149 (3d Cir. 1996).   See also
Kirschner v. JP Morgan Chase Bank N.A. (In re Millennium Lab
Holdings II, LLC), No. 15-12284 (LSS), 2019 WL 1005657, at *5
(Bankr. D. Del. Feb. 28, 2019).

"Payments made on account of valid antecedent debts are
presumptively made for reasonably equivalent value. . . .
[because] [t]he Bankruptcy Code and Delaware statute both define
'value' to include satisfaction of an antecedent debt." Burtch
v. Opus, LLC (In re Opus East, LLC), 528 B.R. 30, 83 (Bankr. D.
Del. 2015) (citing 11 U.S.C. § 548(d)(2)(A) and Del. Code Ann.
tit. 6, § 1304(a)(2)), aff'd, 698 F. App'x 711 (3d Cir. 2017).
In this case, it is not clear whether the Debtors owed a debt to
the Stout Parties or Argent.   Even if the amounts due to the
Stout Parties and Argent were antecedent debts owed by the
Debtors, however, the question remains "whether reasonably
equivalent value was given in exchange for the transfer."
R.M.L., 92 F.3d at 149.   While there is a presumption that it
was, evidence may overcome that presumption.   Dismissal at this
point, before the Plaintiffs can present evidence on that point
is not appropriate.

The Third Circuit utilizes a "totality of the circumstances"
approach to determine whether a debtor received reasonably
equivalent value, including "(i) the 'fair market value' of the

benefit received as a result of the transfer, (ii) 'the existence
of an arm's-length relationship between the debtor and the
transferee,' and (iii) the transferee's good faith." In re
Fruehauf Trailer Corp., 444 F.3d 203, 213 (3d Cir. 2006).

For purposes of a motion to dismiss, claims of constructive
fraud are evaluated under the notice pleading requirement of Rule
8(a)(2). Stanziale v. Brown-Minneapolis Tank ULC, LLC (In re
BMT-NW Acquisition, LLC), 582 B.R. 846, 856 (Bankr. D. Del.
2018). To state a plausible claim for relief under this
standard, the plaintiff must allege that "there was a transfer
for less than reasonably equivalent value at a time when the
[Debtor was] insolvent" and provide facts "simply identifying the
dates, amounts, source, and the transferee of each of the alleged
transfers." Id. (citing In re AgFeed USA, LLC, 546 B.R. 318, 336
(Bankr. D. Del. 2016)). The Court is not tasked with making a
determination of whether the transfers were for reasonably
equivalent value at the motion to dismiss stage. Rather, at this
stage of the proceedings, the Court's task is to determine
whether the Complaint contains enough to put the Defendants on
notice of the Plaintiffs' claim for relief. Millennium Lab, 2019
WL 1005657, at *6.

Here, the Complaint identifies twelve transfers from Appvion
to the Stout Parties with the exact dates for seven of those
transfers and approximate dates for the remainder. (Adv. D.I.
108 at ¶ 109.) The Complaint alleges that Appvion received less

32

than reasonably equivalent value for those transfers because the Stout Parties did not adequately perform the services they were hired to do.  Specifically, the Complaint alleges that the Stout Parties consistently utilized flawed calculations to increase their FMV determinations.  (Id. at ¶¶ 190-289.)

As for the Argent transfers, the Complaint alleges that Argent received $200,000 per year from 2015 through the petition date for services rendered as the ESOP Trustee.  (Id. at ¶¶ 98 & 469.)  The Complaint asserts that Appvion did not receive reasonably equivalent value for those payments.  (Id. at ¶ 481.)

Because the question of whether the Debtors received reasonably equivalent value in exchange for these transfers is a fact-intensive inquiry, the Court concludes that a decision on that contested fact is not appropriate at this stage.  Millennium Lab, 2019 WL 1005657, at *5.  The Court finds, therefore, that the Plaintiffs have satisfied the pleading standard by stating a plausible claim for avoidance of a constructively fraudulent transfer against Argent and the Stout Parties.  Therefore, the Court will deny the motions to dismiss Counts XI and XIII.

### iii. Count XII

Count XII seeks to avoid preferential transfers to Argent totaling $35,996.  Argent argues that the Court should dismiss Count XII because the Complaint fails to identify the transferor precisely by name.  The Plaintiffs did not respond to Argent's Motion to Dismiss Count XII.  Consequently, Argent asserts that

the Plaintiffs waived the opportunity to contest its Motion to
Dismiss Count XII.

While courts may, in rare cases, grant an unopposed motion
to dismiss without an analysis of the merits, a decision on the
merits is preferred. <u>See</u> <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d
29, 30 (3d Cir. 1991). In <u>Stackhouse</u>, the Third Circuit "made
clear [its] disfavor of dismissals under Rule 12 for purpose of a
sanction, and held that a Rule 12(b)(6) motion should not be
granted without an analysis of the merits of the underlying
complaint." <u>Id.</u>

In this case, although the Plaintiff did not respond to the
Motion to Dismiss Count XII, on consideration of the merits of
that motion, the Court concludes that it should be denied. A
well-pled complaint to avoid a preferential transfer should
identify the nature and amount of each antecedent debt, each
alleged preferential transfer, the debtor/transferor, the
transferee, and the amount of the transfer. <u>Valley Media</u>, 288
B.R. at 192. Here, the Complaint identifies two transfers as
allegedly preferential: (1) $17,979 on August 10, 2017, and (2)
$18,017 on September 5, 2017. (Adv. D.I. 108 at ¶ 469.)
Further, the transferor is specifically identified as Appvion.
(<u>Id.</u>)[9] Therefore, the Court finds that Count XII states a

---

[9]     In addition, as with the transfers to the Stout Parties
and Ferree, Appvion's SOFA specifically identifies these two
transfers to Argent. (D.I. 266 at 3.44.)

plausible claim for an avoidable preference.  Accordingly, the
Court will deny Argent's Motion to Dismiss Count XII.


IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the
Defendants' motion to transfer venue of Counts I through VIII to
the District Court for the Eastern District of Wisconsin.  The
Court will grant the Motion to Dismiss Count X to the extent it
relies on state law.  The Court will deny, in all other respects,
the Defendants' Motions to Dismiss.

An appropriate Order follows.


Dated: October 23, 2019             BY THE COURT:


                                    _Mary F. Walrath_
                                    Mary F. Walrath
                                    United States Bankruptcy Judge